# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

222 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

June 21, 2005

The Honorable Sue L. Robinson                                    **REDACTED**
United States District Court
844 North Kind Street
Wilmington, DE 19801

   RE: *BTG International Inc. v. Amazon.com, Inc.*
     C.A. No. 04-1264-SLR

Dear Chief Judge Robinson:

  We represent BTG International Inc in the above-captioned action. On June 14, the Court ordered that the parties submit letter briefs regarding the common interest exception to waiver of the attorney client privilege/work product doctrine. Specifically, the Court ordered briefing on the applicability of the common interest doctrine to the exchange of otherwise attorney-client privileged or attorney work product information between BTG and Tucows, Inc., after BTG and Tucows entered into their Patent Assignment and Commercialization Agreement (PACA) (attached as Exhibit A). BTG submits that the PACA makes it clear that BTG and Tucows share an identical legal interest in the validity, enforceability, and infringement of the patents in this litigation and, therefore, the common interest exception applies.

### Background

  The patents in this lawsuit were originally assigned to Infonautics, Inc. In March 2002, Infonautics entered into a reverse merger with Tucows that resulted in a new company, still called Tucows, owning the patents. As part of that reverse merger, Infonautics' transferred business documents and records – some of which were privileged and/or attorney work product – to Tucows. The defendants admit that Infonautics' attorney-client privilege transferred to Tucows at that time. *See* D.I. 144; June 14 discovery hearing transcript, p.6 (Overstock's counsel, John Lumen, speaking on behalf of all defendants).

  On October 10, 2002, Tucows and plaintiff BTG executed a Patent Assignment and Commercialization Agreement (PACA) which, *inter alia*, assigned the patents in suit to BTG. *See* Exhibit A.[1] The PACA also contained several provisions which create a common legal

---

[1] As is typical in negotiating such agreements, prior to its execution, BTG and Tucows discussed the terms of the agreement with one another and sent drafts and correspondence back-and-forth. BTG has produced all of those

interest between BTG and Tucows with respect to the validity, enforceability, and infringement of the assigned patents, two of which are in this suit.

*See* Exhibit A, § 5.2 (emphasis added).

*See* Exhibit A, §4.1

*See* Exhibit A, Art. 8.

Pursuant to the PACA, BTG began the process of commercializing the patents in suit, by investigating their scope, contacting potential licensees, and initiating this litigation.

*See* Exhibit A, § 5.2. Of those documents that BTG received from Tucows after execution of the PACA, BTG has produced all responsive, non-privileged documents to the defendants, and withheld privileged and work product ones under the common interest doctrine. All documents so withheld from production have been logged on BTG's privilege log. Since the execution of the PACA, BTG and Tucows have also exchanged correspondence regarding the patents-in-suit and BTG's commercialization efforts. BTG has withheld those documents from production and entered them on BTG's privilege log.

In a June 14, 2005 letter to the Court (D.I. 143), defendants challenged BTG's assertion of the common interest doctrine with respect to documents exchanged between BTG and Tucows after execution of the PACA (again, all documents exchanged prior to the PACA have been produced). At a hearing that same day, the Court ordered this brief. *See* D.I. 144; June 14, 2005 discovery hearing transcript, p. 16 (ordering briefing regarding "categories 1 and 2" of defendants' June 14, 2005 letter).

---

communications to the defendants, and is not claiming the common interest doctrine applies to communications between BTG and Tucows prior to the PACA agreement.

The Honorable Sue L. Robinson
June 21, 2005
Page 3

## Legal Argument

**The common interest doctrine applies to attorney-client privileged and/or attorney work product information exchanged between BTG and Tucows after the execution of the PACA, as that agreement creates a joint and identical legal interest in the validity, enforceability, and infringement of the patents-in-suit.**

Although the attorney-client privilege or work product is usually waived when privileged information is transmitted between independent parties, the common interest doctrine creates an exception to that general rule. *In re The Regents of the University of California*, 101 F.3d 1386, 1389 (Fed. Cir. 1996); *Constar Int'l Inc. v Continental Pet Techs., Inc.*, 2003 U.S. Dist. LEXIS 21332, *4 (D. Del. 2003) (attached as Exhibit B). The disclosure of privileged information to a third party sharing an identical legal interest with respect to the subject of the privileged communication does not constitute waiver, and, instead, the information remains protected. *In re The Regents of the University of California*, 101 F.3d at 1390.

Both the Federal Circuit and this Court have applied the common interest doctrine in cases similar to this one where two independent parties have a joint legal interest in enforcing and defending patents. *See In re The Regents of the University of California*, 101 F.3d at 1390 (finding patentee and licensee had a joint legal interest in the patents being valid and enforceable to support patentee's royalty income and licensee's commercial activity); *Constar*, 2003 U.S. Dist. LEXIS 21132 at *5 (citing *Baxter Travenol Labs, Inc. v. Abbott Labs*, 1987 U.S. Dist. LEXIS 10300 (N.D. Ill. 1987)) ("A community of interest may arise between parties jointly developing patents; they have a common legal interest in developing the patents to the greatest protection and in exploiting the patents.") (attached as Exhibit C).

The PACA makes clear that BTG and Tucows share an identical legal interest in having the patents-in-suit be enforceable, infringed and not invalid.
                                                                *See* Exhibit A, §§ 5.1 to 5.3.
Courts have held that such a clear anticipation of joint litigation, although not required, supports a finding of identical legal interest. *See Hewlett-Packard Co. v. Bauch & Lomb Inc.*, 115 F.R.D. 308, 310 (N.D. Cal. 1987).
                                                                *See* Exhibit A, § 5.2.


        *See* Ex. A, §§ 8.1 to 8.3.



                                                                *See* Exhibit A, § 6.1. As Judge Brazil explained in the *Hewlett-Packard* case, examining the confidentiality expectations of the recipient may be more telling than determining whether joint litigation was anticipated at the

The Honorable Sue L. Robinson
June 21, 2005
Page 4

time of disclosure. *See* 115 F.R.D. at 311. When disclosure is voluntary, an implicit or explicit undertaking by the recipient to hold the information in confidence supports non-waiver. *Id.* Here, BTG and Tucows chose to work together and communicate with each other about commercialization of the patents-in-suit. They expected these communications would be kept confidential and all communications were made through the parties' attorneys or at their direction. That only further supports the common legal interest BTG and Tucows share.

*See* Exhibit. A, § 4.1 :

First, defendants' argument in that regard would essentially destroy the common interest doctrine, as virtually all common legal interests in civil litigation will have financial aspects to them. In any event, the *Regents* case couldn't have been clearer: "The fact that there may be an overlap of a commercial and a legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest." *In re The Regents of the University of California*, 101 F.3d at 1390 (quoting *Duplan Corp v. Deering Milliken Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1974)).[2]

For the reasons set forth above, BTG submits that the common interest doctrine applies to communications between BTG and Tucows after execution of their Patent Assignment and Commercialization Agreement. BTG submits that the defendants' challenge to the common interest doctrine should be rejected.

Respectfully,

/s/ *John G. Day*

John G. Day (I.D. #2403)

JGD: nml
Attachments
158763.1

---

[2] The defendants argument is also inconsistent with the joint defense agreement that defendants have alleged in response to BTG's discovery requests. Defendants have entered into that joint defense agreement in order to minimize the liability for damages and reduce their legal costs. Using defendants logic, their own joint defense arguments fail.

The Honorable Sue L. Robinson
June 21, 2005
Page 5


cc:  Clerk of the Court (by hand; w/attachments)
     John W. Shaw, Esquire (by hand; w/attachments)
     Rodger D. Smith, Esquire (by hand; w/attachments)
     William J. Wade, Esquire (by hand; w/attachments)
     Karen L. Pascale, Esquire (by hand; w/attachments)
     Niall A. MacLeod, Esquire (via electronic mail; w/attachments)
     Kristin L. Cleveland, Esquire (via electronic mail; w/attachments)
     Wendy J. Thurm, Esquire (via electronic mail; w/attachments)
     William W. Flachsbart, Esquire (via electronic mail; w/attachments)
     Lawrence G. Kurland, Esquire (via electronic mail; w/attachments)
     John F. Luman, III, Jr., Esquire (via electronic mail; w/attachments)