# EXHIBIT A

REDACTED

# EXHIBIT B

LEXSEE 2003 U.S. DIST. LEXIS 21132

CONSTAR INTERNATIONAL, INC., CHEVRON PHILLIPS CHEMICAL COMPANY,
LP, and CHEVRON RESEARCH & TECHNOLOGY COMPANY, Plaintiffs, v.
CONTINENTAL PET TECHNOLOGIES, INC., Defendant. CHEVRON PHILLIPS
CHEMICAL COMPANY, LP and CHEVRON RESEARCH & TECHNOLOGY
COMPANY, Cross-claim Plaintiffs, v. CONSTAR INTERNATIONAL, INC., Cross-claim
Defendant.

Civil Action No. 99-234-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

*2003 U.S. Dist. LEXIS 21132*

November 19, 2003, Decided

**PRIOR HISTORY:** *Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech. Inc., 232 F. Supp. 2d 294, 2002 U.S. Dist. LEXIS 22792 (D. Del., 2002)*

**DISPOSITION:** [*1] Motion to compel production of documents denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** Donald F. Parsons, Jr., Esquire and Karen Jacobs Louden, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware. Of Counsel: Dale M. Heist, Esquire, Kathleen Milsark, Esquire, and Joseph D. Rossi, Esquire of WOODCOCK WASHBURN LLP, Philadelphia, Pennsylvania, for Constar International, Inc., Plaintiff.

Richard L. Horwitz, Esquire and David E. Moore, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware. Of Counsel: Douglas A. Freedman, Esquire, Kenneth G. Schuler, Esquire, Sasha A. Mayergoyz, and Michael Faris, Esquire of LATHAM & WATKINS LLP, Chicago, Illinois. Glen P. Belvis, Esquire, Helen A. Odar, Esquire, and K. Shannon Mrksich, Esquire of BRINKS HOFER GILSON & LIONE, Chicago, Illinois, for Continental PET Technologies, Inc., Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

**MEMORANDUM OPINION**

Wilmington, Delaware

**Farnan, District Judge**

Pending before the Court is the Motion to Compel of Defendant Continental [*2] Pet Technologies, Inc. for the Production of Documents Subject to Constar's Assertion of the Common Interest Doctrine (D.I. 298). For the reasons discussed, the Court will deny the motion.

**BACKGROUND**

In 1999, Plaintiff Constar International, Inc. ("Constar") n1 initiated this action against Continental Pet Technologies, Inc. ("Continental") alleging that Continental was infringing upon *U.S. Patent No. 5,021,515* (the "'515 patent"). Continental has moved 1) to compel several documents on Constar's privilege log, 2) to compel documents responsive to document requests 119-120, 122-126, 128-130, and 3) to compel all other materials withheld by Constar based on the common interest doctrine.

n1 Constar was substituted for Crown Cork & Seal Technologies Corporation as the named plaintiff by stipulation of the parties on January 22, 2003. (D.I. 275).

Constar contends that all of the withheld documents are privileged communications between Constar's former counsel and PLM's former counsel. Constar responds that [*3] it is only withholding four of the documents in question based on work product privilege. Constar asserts that these documents were communications between Constar's former patent counsel and PLM's former counsel and were made "in anticipation of the present lawsuit." Constar's

Response, at 2. Constar contends that Continental has not meet its burden to obtain disclosure of work product.

Constar asserts multiple objections to Continental's general request for material responsive to requests 119–120, 122–126, and 128–130. Constar contends that some of the documents are privileged and asserts that it has not waived its attorney client or work product privilege with respect to those documents. Constar also objects to the relevance, breadth, burden, vagueness, and duplicity of the requests. Constar asserts that Continental has not addressed these objections, and therefore, its request is not ripe.

Constar further contends that Continental's request for all materials withheld under the common interest doctrine is too broad and covers materials which Constar is not required to disclose.

Continental responds that Constar has not demonstrated it is entitled to the protections of the attorney [*4] client privilege and that any possible attorney–client privilege or work product privilege related to these requests has been waived by Constar's failure to previously make a specific objection.

## DISCUSSION

### I. The Common Interest Attorney Client Privilege

If information is communicated to an attorney in the presence of a third party, usually the attorney–client privilege does not protect the disclosure of that communication. The common interest doctrine creates an exception to this general rule. Under the common interest doctrine, communications made when multiple clients consult an attorney on matters of common interest are still privileged against third parties. *Cavallaro v. U.S.*, 284 F.3d 236, 249 (1st Cir. 2002). Communications made by a party or the party's lawyer to an attorney representing another in a matter of common interest are also privileged. *Id.* The doctrine allows "attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege." *Schachar v. American Academy of Opthalmology, Inc.* 106 F.R.D. 187, 191 (D. Ill. 1985). [*5] "A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice." *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1172 (D.S.C. 1975).

### II. Application of the Common Interest Doctrine in this Case

### A. The Privilege Log Documents

"A community of legal interests may arise between parties jointly developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents." *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories, 1987 U.S. Dist. LEXIS 10300, 1987 WL 12919, 1 (N.D. Ill. 1987)*. Constar contends that documents 933, 983, 1014, 1022, 1026, and 1332 were privileged communications between Constar's counsel and counsel for PLM and dealt with "patent applications under which [Constar and PLM] shared a common legal interest under the 1988 cross–license." Constar's Response, at 2. Constar asserts that Documents 1420, 1476, 1488, and 1489 are work product created in anticipation of the present litigation and dealing [*6] with the common interest of the cross–license. Based on Constar's assertions, the Court finds that Constar's documents are privileged communications between attorneys about a common legal interest. n2

n2 If requested by Continental, the Court will conduct an in camera review of a random sampling of the documents at issue.

### B. Disputed Document Requests

Continental asserts that Constar has waived attorney–client and work product protections with respect to document requests 123–126, 128, and 130. According to Constar, because Continental only asserted that it could not disclose documents under a "common interest," and did not assert an underlying independent privilege, Constar waived the attorney–client privilege with respect to documents responsive to these requests. While a general objection may constitute a waiver of privilege, "whether a waiver has actually occurred requires the Court to consider the circumstances surrounding the assertion of [the] general objection to the production of privileged documents. [*7] " *High Tech Communications, Inc. v. Panasonic Co. 1995 U.S. Dist. LEXIS 4076, 1995 WL 133344, *2* (E.D. La. 1995). Constar made a general objection to disclosing its privileged documents, and, in response to each request, objected to the disclosing "common interest" documents responsive to that request. On this record, the Court finds that it is clear that Constar was asserting the common interest attorney–client and work product privileges, and Constar has not waived its privilege objections.

Additionally, as stated in section A, attorney communications on common legal interests between Constar and others are privileged. Privileged communications between Constar and others, even if responsive to requests 119, 120, 122, 123, 124, 125, 126, 128, 129, 130, need

not be produced.

However, communications with third parties that do not fall under the common interest doctrine are not privileged. Depending on the circumstances, negotiations can be adversarial or cooperative. See *Power Mosfet Technologies v. Siemens AG, 206 F.R.D. 422, 426 (E.D. Tex. 2000)*. For this reason, the Court is reluctant to broadly determine that either all or none of documents responsive to document requests [*8] 119 and 120 are privileged. Additionally, while parts of the other requests target legal discourse between companies and attorneys, some communications responsive to these requests may not be privileged because they may be business discourse.

Constar has raised objections unrelated to privilege with respect to Continental's requests and before any disclosure will be ordered by the Court, Continental must address these objections in order to be entitled to a log of the withheld documents.

### C. General Request for Common Interest Documents

Constar broadly contends that it is entitled to all common interest materials. For the reasons discussed previously, attorney communications on common legal interests between Constar and others are privileged, and therefore, Continental is not entitled to the requested materials.

### CONCLUSION

For the reasons discussed, the Motion to Compel of Defendant Continental Pet Technologies, Inc. for the Production of Documents Subject to Constar's Assertion of the Common Interest Doctrine will be denied.

An Order consistent with this Memorandum Opinion will be entered.

### ORDER

At Wilmington, this 19th day of November 2003, for the reasons [*9] discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Motion to Compel of Defendant Continental Pet Technologies, Inc. for the Production of Documents Subject to Constar's Assertion of the Common Interest Doctrine (D.I. 298) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE

# EXHIBIT C

LEXSEE 1987 US DIST LEXIS 10300

**Baxter Travenol Laboratories, Inc. Robert P. Popovich, and Jack W. Moncrief, Plaintiffs,
v. Abbott Laboratories, Defendant**

**No. 84 C 5103**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*1987 U.S. Dist. LEXIS 10300*

**June 17, 1987, Decided; June 19, 1987, Filed**

LexisNexis(R) Headnotes

OPINIONBY: [*1]

BUCKLO, Magistrate

OPINION:

Memorandum Decision

Before the court is Abbott Laboratories' ("Abbott") motion to compel production of documents withheld by Baxter Travenol Laboratories, Inc. ("Baxter") on the grounds of attorney–client and work–product privilege. Abbott's motion is granted in part and denied in part. n1

n1 Certain documents were not produced to the court despite my order to do so. Counsel for Baxter were also repeatedly reminded that a party claiming a privilege bears the burden of showing its existence and that they were requested to provide an explanation for a claim of privilege as to any document. Despite these reminders of basic principles in the law of attorney client privilege, Baxter failed to identify or justify a claim of privilege in many instances and identified each document in such summary fashion that hundreds of hours have been required to evaluate Baxter's claims.

Community of Interest

Abbott seeks production of the following documents on the ground that they do not contain attorney–client communications or if they do, the privilege was waived by disclosure to an adverse party:

10, 48, 49, 66, 70, 83–87, 89, 90, 98, 100–02, 105, 106, 135, 138, 139, [*2] 142, 143, 145, 147, 414, 415, 427, 430, 436, 437, 444, 467, 489, 491, 504A, 511, 523, 540, 543–45, 589, 633, 634, 648, 652, 656, 658, 660, 661, 699, 986, 995, 1100, 1102, 1103, 1288, 1297, 1303, 3001, 3002, 3012–15, 3022, 3027–29, 3038–41, 3045, 3047, 3050, 3060, 3088, 3090–3102, 3105, 3106, 3110, 3113–15, 3118, 3170, 3191, 3195, 3229, 3241, 3242.

Most of these documents contain communications between Baxter or its attorneys and Popovich or Moncrief or their attorneys. Abbott argues that Popovich and Moncrief did not have an attorney–client relationship with Baxter's attorneys, and that therefore any privilege that may otherwise have attached to these documents was waived by disclosure. Baxter resists production on the ground that Popovich, Moncrief and Baxter had a common legal interest in the successful prosecution and defense of Moncrief's and Popovich's CAPD patents, and that the work–product and attorney–client privileges are not waived by disclosures among parties with a common legal interest. *Schachar v. American Academy of Oothalmology, Inc., 106 F.R.D. 187, 191 (N.D. Ill. 1985); S.C.M. Corp. v. Xerox Corp., 70 F.R.D. 508, 514* (D. Conn.), appeal dismissed, *534* [*3] *F.2d 1031 (2nd Cir. 1976).*

Different persons or corporations have a community of interest:

where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice. . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial.

*Duplan Corp. v. Deering Milliken, Inc., 397 F.Supp. 1146, 1172 (D.S.C. 1975).* Under the consulting and option contracts, Baxter, Popovich, and Moncrief were essentially engaging in a joint program of developing patents and technology relating to peritoneal dialysis. Although a community of legal interests usually arises between parties engaged in or anticipating imminent litigation, lit-

1987 U.S. Dist. LEXIS 10300, *3

igation or impending litigation is not a prerequisite for the existence of a community of legal interests; corporations seek legal advice in order to plan their conduct and avoid litigation as well as to deal with present or impending litigation, and a community of legal interest may arise in the former situation as well as in the latter. *S.C.M. Corp. v. Xerox Corp., supra, 70 F.R.D. at 513.* A community of legal interests [*4] may arise between parties jointly developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents. *Id. at 514.*

In December, 1978, Baxter entered into consulting and option agreements with Popovich and Moncrief, under which Popovich and Moncrief were obligated to devote time and effort to developing CAPD and to promptly disclose to Baxter any ideas, inventions, discoveries or improvements they conceived in the field of peritoneal dialysis. On the request and at the expense of Baxter, they were obligated to file patent applications on such inventions; and although they would own any resulting patents and they and their attorneys would control the applications, they were required to consult with Baxter's attorneys. Baxter also could elect to maintain such inventions as trade secrets, but in that case Popovich and Moncrief could file patent applications, although at their own expense. Baxter had the option to acquire an exclusive world-wide license on any inventions, improvements, ideas, developments, patent applications, and patents of Popovich and Moncrief relating to peritoneal dialysis, and Popovich and [*5] Moncrief agreed not to grant any licenses to any third parties to make, sell, or use such inventions.

Abbott argues that at this stage, Popovich, Moncrief, and Baxter did not have a common legal interest because Baxter stood to gain if the patents were invalidated and it thus was freed from having to pay royalties. Baxter, however, also stood to gain if the patents were issued: it could then exercise its option to obtain an exclusive license in the form set out in the parties' consulting agreement. If the patents were declared invalid, Baxter would have had to compete with other corporations in the field of CAPD without the monopolistic benefit the patents would have conferred on it. Moreover, under the agreement, Baxter was not in danger of losing the benefits of any patents that issued to its competitors, since Popovich and Moncrief were prohibited from issuing licenses to such competitors. Under these circumstances, the parties' common legal interest in developing, prosecuting, and protecting the patents predominated over any speculative interest Baxter might have had in invalidating or preventing the issuance of the patents. n2

n2 A fortiori the community of interest contin-

ued after March, 1981, when Baxter exercised its rights under the consulting and option agreement and obtained licenses on the CAPD patents.

[*6]

The community of interest, however, extends only to communications relating to the prosecution and litigation of the patents, and not to those communications relating to the parties' rights among themselves in the patents. Such communications are not related to the parties' joint interest in prosecuting the patents; their adversarial interests are dominant, and the communications are not privileged. *S.C.M. Corp. v. Xerox Corp., supra, 70 F.R.D. at 513; Union Carbide Corp. v. Dow Chemical Co., 619 F.Supp. 1036, 1050 (D. Del. 1985).*

Moreover, the community of interest does not extend back to April, 1977, as Baxter asserts. In that month, Baxter entered into disclosure agreements with Popovich and Moncrief under which it agreed to hold confidential for four months certain information disclosed to it by Popovich and Moncrief in the course of their negotiations. In October, 1977, Baxter entered into a similar disclosure agreement with Popovich under which it agreed to hold confidential certain additional information for two months. These agreements are not sufficient to establish a community of interest between Popovich and Moncrief and Baxter. The parties may have hoped at [*7] this time to come to some agreement regarding patent rights, but any mutual interest they may have had was tenuous. Baxter had no obligations to Popovich and Moncrief beyond maintaining certain information in confidence for a limited period, and had no assurance of obtaining any rights in CAPD if patents issued. Popovich and Moncrief had no obligations to Baxter. Prior to December, 1978, there was no community of interest among Popovich, Moncrief, and Baxter, and communications between Baxter or its attorneys and Popovich, Moncrief, or their attorneys prior to that date are not privileged.

Of the documents whose production Baxter resists on grounds of community of interest, the following communications between Baxter or its attorneys and Popovich or Moncrief or their attorneys are not privileged because they were made before the common legal interest arose:

10, 48, 49, 135, 142, 143, 147, 656, 658, 699, 1303, 3022, 3038, 3039, 3040, 3041, 3045, 3090, 3091, 3092, 3093, 3094, 3095, 3096, 3097, 3099, 3100, 3105, 3106, 3191, 3242.

The following documents are unprivileged because they were between persons between whom no community of interest or no attorney–client relationship has been [*8] established (or evidence a conversation between

such persons), or were disclosed to such persons:

504A, 543, 544, 656, 658, 660, 661, 995, 1303, 3001, 3088, 3113, 3241.

The following documents are unprivileged because although they involve communications between Baxter or its attorneys and Popovich or Moncrief or their attorneys after December, 1978, the communications do not concern the parties' areas of common legal interest, but rather their rights in relation to one another:

589, 3012, 3013, 3014, 3047.

The following documents consist of publications and consequently are not privileged, see *Sneider v. Kimberly-Clark Corp.*, 91 F.R.D. 1, 4 (N.D. Ill. 1980):

83, 414.

Document No. 84 consists of a memorandum attached to a membership list of an organization. The membership list is not privileged because it is not confidential; it appears to be a publication. The memorandum is a request for information necessary for the attorney to perform legal services, and is privileged.

The following documents consist of cover letters, letters of transmittal or acknowledgement, or other communications neither containing nor requesting legal advice, and are therefore unprivileged, e.g. [*9] , *Detection Systems, Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y. 1982):

70, 101, 102, 105, 106, 139, 436, 444, 3114, 3118, 3170, 3195.

The following documents do not contain legal advice, relate primarily to business, rather than legal matters, or are technical rather than legal in character, and are consequently unprivileged, e.g., *Union Carbide Corp. v. Dow Chemical Co.*, supra, 619 F.Supp. at 1046:

511, 1100, 1103.

Documents 98 and 100 each consists of a cover letter from McLemore (Popovich's personal attorney) to Schuman (Baxter's in-house attorneys), with copies sent to Popovich and Moncrief, and reports of inventions in the area of CAPD. The letter is not privileged because it did not contain or request legal advice or information necessary for legal advice. The reports consist primarily of technical information, and there is no indication that they were written for the purpose of seeking legal advice or were prepared for Popovich's and Moncrief's attorneys in anticipation of litigation, or that they were even confidential. Accordingly, Documents 98 and 100

are unprivileged.

Document No. 491 consists of a draft of a patent claim. The draft is undated [*10] and its author is unknown, and there is no evidence that it was prepared in anticipation of litigation. Accordingly, it is unprivileged.

The following documents request or provide legal advice or information necessary for legal advice and are therefore privileged:

66, 85, 86, 138, 415, 427, 430, 437, 489, 523, 540, 545, 633, 634, 648, 652, 1288, 1297, 3028, 3029, 3060, 3098, 3101, 3102, 3110, 3115, 3229.

In addition to their other contents, the following documents contained handwritten notes:

48, 83, 86, 98, 106, 142, 995, 1100, 1288, 1303.

Of these documents, the notes on the following were non-legal in nature, consisting of requests that copies be sent to certain persons:

48, 142, 1288.

Of the remaining documents, the authors and dates of the notes on the following are unknown, and they are therefore unprivileged, see *Sneider v. Kimberly-Clark Corp.*, supra, 91 F.R.D. at 6:

83, 1100, 1303.

The handwritten notes on Document No. 995 contain legal advice from Schuman to Joseph, a Baxter employee, and are therefore privileged. The notes on Documents Nos. 86, 98 and 106 are directions for filing and are arguably privileged.

The following documents were not submitted:
[*11]
87, 89, 90, 145, 467, 986, 1102, 3002, 3015, 3027, 3050.

Of these documents, the following are established by affidavit to contain communications between Popovich or Moncrief and their attorneys or Baxter attorneys after the community of interest arose seeking or providing information necessary for legal advice or providing legal advice:

90, 986, 1102.

The following documents were not cross-referenced or were otherwise not established to be within the work-product or attorney-client privilege:

87, 89, 145, 467, 3002, 3015, 3027, 3050.

Business and non-lawyer communications

Abbott seeks production of the following documents which it contends are unprivileged because they only incidentally involved attorneys:

12, 13, 31, 477, 478, 482, 484, 995, 1279, 1314, 1316, 1329, 3141, 3228, 3230, 3235–39, 3248, 3256.

Abbott also seeks production of the following documents, which it asserts relate solely or primarily to business advice rather than to legal advice:

9, 14, 16, 19, 22, 24, 31–35, 43–47, 92–94, 103, 105, 106, 117A, 118, 122, 124, 135, 145, 162, 202, 203, 214, 215, 242, 244, 251, 256, 272, 285, 288–91, 308, 309, 312–14, 316, 321, 331, 347–49, 352, 377, 382, 389, 424, [*12] 430, 433, 436, 458, 477, 478, 482, 484, 491, 504A, 523, 589–92, 631, 632, 648, 651, 652, 659–61, 684, 686–88, 695, 696, 700, 799, 816, 818, 831, 908, 970, 971, 986, 993, 995, 1100–03, 1136, 1160, 1191, 1213–15, 1253, 1274, 1277, 1279, 1288, 1290, 1291, 1291A, 1293, 1296–99, 1303, 1305, 1310, 1313, 1314, 1316, 3001, 3002, 3007, 3012–15, 3022, 3023, 3025, 3027–29, 3044–47, 3050, 3058, 3059, 3074, 3090–3102, 3105, 3106, 3111–13, 3115, 3118, 3129, 3170, 3229, 3241, 3242, 3244, 3248.

The attorney-client privilege applies only where the communication:

(1) concerned the seeking of legal advice; (2) was between a client and an attorney acting in his professional capacity; (3) was related to legal matters; and (4) is at the client's instance permanently protected.

*F.T.C. v. Shaffner, 626 F.2d 32, 37 (7th Cir. 1980).* Consequently, the privilege does not apply where the communication consists largely of business or technical information or advice and is not primarily legal in nature. *Sneider v. Kimberly-Clark Corp., supra, 91 F.R.D. at 5.*

Abbott also seeks production of documents which it alleged were only incidentally sent to attorneys. The attorney-client privilege protects [*13] only communications related to the giving or seeking of legal advice; funneling other communications past an attorney will not make them privileged. *Id. at 5.* Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged. *North Carolina Electric Membership Corp. v. Carolina Power & Light Co., 110 F.R.D. 511, 514 (M.D.N.C. 1986); United States v. International Business Machines Corp., 66 F.R.D. 206, 210 (S.D.N.Y. 1974).* However, documents communicating legal advice to non-legal personnel are

within the attorney-client privilege, *Sneider v. Kimberly-Clark Corp., supra, 91 F.R.D. at 5,* as well as documents reflecting discussions among executives of legal advice. *S.C.M. Corp. v. Xerox Corp., supra, 70 F.R.D. at 519.* Thus the mere fact that a document is sent to many non-legal and few legal personnel is not determinative of whether it is privileged. The principal consideration is the nature of the document: whether it primarily requests or gives legal or business advice.

Where, however, confidentiality of a document is not maintained, [*14] the privilege is lost. *Weil Ceramics & Glass, Inc. v. Work, 110 F.R.D. 500, 503 (E.D.N.Y. 1986).* Where the client is a corporation, the privilege is waived if the communications are disclosed to employees who did not need access to the communication. *Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 609 (8th Cir. 1977); United States v. American Telephone & Telegraph Co., 86 F.R.D. 603, 620–21 (D.D.C. 1979);* cf. *Sylgab Steel & Wire Corp. v. Impro-Gateway Corp., 62 F.R.D. 454, 456 (N.D. Ill. 1974),* (Bauer, J.), aff'd mem. *534 F.2d 330 (7th Cir. 1976)* ("It is well settled that the dissemination of a communication between a corporation's lawyer and an employee of that corporation to those employees directly concerned with such matters does not waive the privilege."). Accordingly, some documents may be unprivileged if they were circulated primarily among non-attorneys and to a large number of such personnel.

Of the documents whose production Abbott seeks on the grounds that they are business communications or only incidentally involved attorneys, the following were also sought as being between parties between whom no community of interest existed or as being [*15] with foreign patent agents and in those sections have been found to be unprivileged:

105, 106, 135, 145, 436, 504A, 660, 661, 995, 1100, 1103, 1303, 3001, 3012, 3013, 3014, 3022, 3045, 3047, 3090–3097, 3099, 3105, 3106, 3113, 3118, 3170, 3241, 3242.

Of the remaining documents, the following are cover letters, letters of transmittal, or acknowledgements and therefore not privileged:

22, 215, 272, 484, 651, 993.

The following documents contained mainly technical or business matter and were not primarily legal in nature, or are otherwise unprivileged:

13, 14, 16, 19, 24, 31, 33, 34, 35, 203, 251, 285, 289, 291, 331, 433, 458, 478, 589, 591, 686, 688, 695, 818, 908, 1101, 1136, 1277, 1305, 1310, 1314, 3248.

The following documents involved communications between parties between whom there was no attorney-client relationship or community of interest, or which were not kept confidential or were disclosed to persons whose identity is unknown:

970, 971, 1279, 1296, 3002, 3129, 3141, 3235–39, 3248, 3256.

The following documents consisted of publications and are therefore unprivileged:

93, 312, 687, 1299, 1313.

The following documents were copied only incidentally to an attorney or [*16] did not involve attorneys and are therefore unprivileged:

12, 477.

The following documents request or give legal advice or information necessary for legal advice and are privileged:

9, 32, 43, 44, 45, 46, 94, 202, 214, 244, 290, 309, 349, 382, 430, 482, 523, 590, 592, 632, 648, 652, 799, 816, 831, 1160, 1253, 1274, 1288, 1290, 1297, 3028, 3029, 3074, 3098, 3101, 3102, 3115, 3229.

Document No. 47 consists of a letter requesting legal advice and a technical study. The letter is privileged, but the remaining part of the document is not.

The following documents consisted of notes, drafts, and memoranda to file prepared by Baxter attorneys and must be evaluated under the work-product privilege:

103, 118, 122, 242, 256, 313, 321, 347, 349, 352, 377, 389, 424, 491, 592, 631, 686, 696, 700, 799, 1191, 1213, 1298, 3007, 3023, 3025, 3044, 3046, 3058, 3059, 3111.

Of these documents, the following were not shown to have been produced in anticipation of litigation and are not protected by the work-product privilege:

103, 242, 256, 313, 321, 347, 389, 424, 491, 631, 632, 696, 700, 816, 1191, 1298, 3007, 3023, 3025, 3044, 3046, 3058, 3059, 3111.

The following documents were prepared in anticipation [*17] of litigation and are protected by the work-product privilege:

118, 122, 349, 352, 377, 592, 799.

The following documents, in addition to their other contents, contain handwritten notes:

9, 12, 24, 31, 43, 44, 93, 94, 106, 272, 331, 484, 687, 993, 995, 1100, 1277, 1288, 1303, 1313, 3025, 3248.

Of these documents, the notes on the following did not concern legal advice and are unprivileged:

9, 12, 24, 31, 43, 44, 93, 94, 106, 272, 331, 484, 687, 993, 1100, 1277, 1288, 1313.

The author of the notes on the following documents are not identified, and the notes therefore are not privileged:

1303, 3248.

The notes on the following documents request or provide legal advice and are privileged:

995, 3025.

The following documents were not submitted:

117A, 162, 288, 308, 314, 316, 348, 659, 684, 986, 1102, 1214, 1215, 1291, 1291A, 1293, 1316, 1329, 3027, 3050, 3112, 3228, 3230, 3244.

Of these documents, the following were established by affidavit to contain communications seeking or providing legal advice, and are protected by the attorney–client privilege:

348, 684, 986, 1102.

The following documents were not cross-referenced or were not established to be within the work-product [*18] or attorney–client privilege:

117A, 162, 288, 308, 314, 316, 659, 1214, 1215, 1291, 1291A, 1293, 1316, 1329, 3027, 3050, 3112, 3228, 3230, 3244.

Foreign Patent Agent Communications

Abbott seeks to compel production of the following documents on the grounds that they consist of communications between Baxter attorneys and foreign patent agents and are therefore unprivileged:

201, 204, 205, 241, 247, 248, 265, 403, 518–20, 526, 530–33, 538, 545–47, 553, 554, 556, 558–61, 564–68, 570–84, 588, 595–96, 608, 609, 613, 617–28, 630, 636, 641–45, 683, 694, 743, 744, 746–50, 752–58, 760, 766, 769–71, 773, 774, 776–94, 796–98, 800–84, 806, 807, 809–15, 817, 822–24, 827–30, 833–39, 843, 844, 847, 849, 851, 853–55, 858, 859 65, 872, 873, 875, 878–86, 888, 889, 893–907, 910–12, 914–16, 920–23, 925–27, 929–36, 939–69, 972–78, 1007–1015, 1017, 1018, 1020, 1021, 1024, 1028, 1030, 1031, 1033–51, 1054–

57, 1059-88, 1091-93, 1104, 1106, 1109-22, 1126-32, 1134, 1139, 1145, 1149-54A, 1158-58, 1162-65, 1168, 1169, 1171-81, 1183-90, 1193-1202, 1204, 1205, 1207, 1208, 1210-12, 1215, 1218-20, 1223-26, 1229, 1232-44, 1246-48, 1250-52, 1254-57, 1270-73, 1276, 1304, 3061-64, 3066-74, 3078, 3080-87, 3131, [*19] 3132, 3138-49, 3151-54, 3156-58, 3162-69, 3171-73, 3176, 3178, 3179, 3181-84, 3190, 3192, 3192A, 3194, 3196-3207, 3209, 3210, 3212-15, 3217-21, 3223, 3224, 3227, 3231-34, 3252-54, 3257.

Baxter asserts that communications with foreign patent agents are not relevant and in any event are protected by the attorney-client privilege.

Baxter argues that because United States patent law differs significantly from foreign patent law in its drawing, specification, and disclosure requirements, and no foreign patents are at issue in this suit, communications between Baxter and foreign patent agents are not relevant and should not be ordered produced. Thus, for example, because the standards for patentability differ from country to country, the granting of a patent in a foreign country is not evidence of non-obviousness. *Application of Dulberg, 472 F.2d 1394, 1398 (C.C.P.A. 1973); Application of Goodman, 476 F.2d 1365, 1369 (C.C.P.A. 1973).* However, instructions to foreign patent agents and representations to foreign patent offices may be relevant to the construction or validity of the United States patent, and when such communications are relevant, they must be considered. Caterpillar [*20] *Tractor Co. v. Berco, S.P.A., 714 F.2d 1110, 1116 (C.C.P.A. 1983).* "It is not ground for objection [to requests for production] that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Rule 26(b)(1), Fed.R.Civ.P.* Abbott's request for production of communications with Baxter's foreign patent counsel may lead to the discovery of relevant evidence, and therefore it should not be denied on grounds of irrelevance. Cf., *Max Daetwyler Corp. v. Input Graphics, Inc., 583 F.Supp. 446, 457 (E.D. Pa. 1984)* (Denying motion in limine to preclude defendants from referring at trial to plaintiffs' foreign patents, patent applications or proceedings because they might be relevant evidence).

Although there is some authority for the proposition that communications between attorneys and foreign patent agents are unprivileged because patent agents are not attorneys, see e.g., *Burlington Industries v. Exxon Corp., 65 F.R.D. 26, 40 (D. Md. 1974); Rayette-Faberge, Inc. v. John Oster Mfg. Co., 47 F.R.D. 524, 526-27 (E.D. Wis. 1969),* the better view is that such communications [*21] are privileged under certain circumstances. In *Mendenhall v. Barber-Greene Co., 531 F.Supp. 951 (N.D.*

*Ill. 1982),* the court concluded that if the communication is actually between the client and the foreign patent agent, and the attorney merely serves as a conduit for the information, the communication is not privileged unless under the foreign law communications between patent agents and clients are privileged. *Id. at 953.* Similarly, if the communication is actually between the attorney and the foreign patent office, and the foreign patent agent merely serves as a conduit, the communication is not privileged unless direct communication between the attorney and the foreign patent office is confidential. Id.

Where the communication consists not merely of information to be passed on to the foreign patent office, but is substantive, the result is different. If the foreign patent agent was primarily a functionary of the attorney, the communication is privileged to the same extent as any communication between an attorney and a non-lawyer working under his supervision. If the foreign patent agent is engaged in the lawyering process, the communication is privileged to the same [*22] extent as any communication between co-counsel. *Id. at 954.*

Of the documents Abbott seeks, several merely provide or request information for a foreign patent office or agent. Consequently, the existence of privilege as to these documents depends on the law of the foreign country:

873, 875: These communications from S.A. Fedit Loriot, French patent agents, request documents which will ultimately be submitted to the French Patent Office. S.A. Loriot is thus acting as a conduit to the French Patent Office, and the communications would be privileged only if direct communications between a United States attorney and the French Patent Office would be privileged. The affidavit of Levy concerning French law establishes that under French law communications between patent agents and clients are confidential, but not that communications between foreign attorneys and the French Patent Office are confidential. Accordingly, these documents are not privileged.

1081, 1082: These communications from Schuman to Dr. Reinhold Cohn & Partners consist of lists of material relied on by other patent offices, which were to be submitted to the Israeli Patent Office in connection with the Israeli patent [*23] application. The Israeli patent agents were thus serving as conduits, and Shachter's affidavit does not establish that communications between foreign patent attorneys and the Israeli patent office are confidential. Consequently, these documents are not privileged.

1154: This communication from Klunker, a German patent agent, requests from Ellis a document to be submitted to the German Patent Office. Klunker is here acting as a conduit, and Dr. Utz Kador's affidavit does not establish

that communications between foreign attorneys and the German Patent Office are confidential. Consequently, this document is not privileged.

3252, 3253: These documents consist of a request for information to be submitted to the Canadian Patent Office, and a response containing that information. Abbott has submitted no evidence of what the Canadian law is on the confidentiality of communications with the patent office. Consequently, these documents are not privileged.

The remaining documents are privileged to the extent that they are privileged under United States law. n3

n3 Copies of many of these communications were circulated to other Baxter employees, officers and attorneys. The attorney–client privilege is waived if confidentiality is not maintained. In the corporate context, whether disclosure waives the attorney–client privilege depends on whether the persons receiving the communication had a "need to know" the information. In this case, Abbott has not challenged the privilege as to these documents on this ground. Accordingly, I have assumed the privilege is valid.

[*24]

Of the remaining documents, the following involved primarily business rather than legal matters, and are therefore unprivileged:

204, 265.

The following documents consisted of cover letters, letters of transmittal, and acknowledgements and are also not privileged:

748, 760, 770, 835, 853, 862, 863, 879, 950, 965, 1007, 1039, 1075, 1079, 1113, 1171, 1172, 1173, 1174, 1189, 1211, 3063, 3132, 3138, 3152, 3153, 3167, 3169, 3197, 3206.

The following communications are not privileged because they do not seek or contain legal advice or opinion or facts necessary to the provision of such advice or opinion:

755, 851, 854, 855, 865, 872, 926, 1020, 1031, 1066, 1162, 1197, 1198, 1224, 1232, 1252, 1276, 1304, 3139, 3151, 3167, 3198.

The following documents sought or gave legal advice or opinion or facts necessary for such advice or opinion, and are therefore privileged:

201, 205, 241, 247, 403, 518–20, 526, 530–31, 533, 538, 545–47, 553, 556, 558–61, 564, 565, 567, 568, 570–84,

588, 595, 596, 608, 609, 617–27, 630, 641–45, 683, 694, 743, 774, 746, 747, 749, 750, 753, 756–58, 766, 769, 771, 773, 774, 776–94, 796–98, 800–04, 806, 809–812, 815, 817, 822–24, 827, 829, 830, 834, 836–39, 843, [*25] 844, 847, 849, 858, 859, 864, 878, 880–86, 888, 889, 893–907, 910–12, 914–16, 920–23, 925, 927, 929, 932, 933, 935, 939, 941–49, 951–64, 966–69, 972–78, 1008–15, 1017, 1018, 1021, 1024, 1028, 1030, 1033–38, 1041–51, 1054, 1055, 1057, 1059–62, 1064, 1065, 1067, 1068, 1072–74, 1077, 1078, 1080, 1083, 1084, 1085–87, 1091–93, 1104, 1106, 1109–12, 1114–22, 1126–32, 1134, 1134A, 1145, 1149–54A, 1156–58, 1163–65, 1175–77, 1179–81, 1183–88, 1190, 1193–96, 1200–02, 1204, 1205, 1207, 1208, 1219, 1220, 1226, 1229, 1235–41, 1243, 1244, 1246, 1248, 1250, 1251, 1254–57, 1270–73, 3062–64, 3066–74, 3078, 3080–85, 3087, 3131, 3144–49, 3154, 3156–58, 3168, 3171, 3172, 3178, 3179, 3181, 3182, 3184, 3194, 3197, 3201–3, 3207, 3210, 3218, 3220, 3221, 3224, 3231–34.

Document No. 1196 contained in addition to its other contents handwritten notes of a Baxter attorney providing legal advice, which are protected under the attorney–client privilege.

The following documents were prepared in anticipation of foreign litigation, and are therefore protected by the work-product privilege, *Duplan Corp. v. Deering Milliken, Inc., supra, 397 F.Supp. at 1171*:

241, 769, 771, 773, 794, 798, 804, 809, 1126–32, [*26] 1134, 1134A.

The following documents have not been submitted:

248, 566, 613, 628, 636, 752, 754, 807, 813, 814, 828, 833, 860, 861, 930, 931, 934, 940, 1040, 1056, 1063, 1069, 1069A, 1070, 1071, 1076, 1088, 1139, 1168, 1169, 1178, 1199, 1210, 1212, 1215, 1218, 1223, 1225, 1233, 1234, 1242, 1247, 3061, 3140–43, 3162–66, 3173, 3176, 3183, 3190, 3192, 3192A, 3196, 3199, 3200, 3204, 3205, 3209, 3212–15, 3217, 3219, 3223, 3227, 3254, 3257.

Of these documents, Baxter's affidavits establish that the following contain legal advice and involved communications with foreign patent agents in connection with prosecution of foreign patents, and are therefore privileged:

248, 566, 628, 752, 754, 828, 833, 861, 930, 931, 934, 940, 1040, 1056, 1063, 1069, 1070, 1071, 1076, 1088, 1168, 1169, 1178, 1199, 1210, 1212, 1223, 1225.

The following documents were not submitted but were established by affidavit to have consisted of communications with foreign representatives made in anticipation

of foreign litigation, and are therefore privileged work-product:

613, 636, 813, 814, 1139.

The following documents were not submitted and were not listed in the cross-references to the affidavits or were otherwise [*27] not established to be privileged:

807, 860, 1069A, 1215, 1218, 1233, 1234, 1242, 3061, 3140-43, 3162-66, 3173, 3176, 3183, 3190, 3192, 3192A, 3199, 3200, 3204, 3205, 3209, 3212-15, 3217, 3219, 3223, 3227, 3254, 3257.

Anticipation of Litigation

Abbott seeks production of the following documents on the grounds that they were not prepared in anticipation of litigation (and presumably also were not subject to attorney-client privilege):

66, 70, 83, 84, 92-95, 118, 121, 122, 124, 181, 182, 242, 244, 312-14, 316, 321, 347-49, 352, 377, 382, 389, 449, 523, 546, 547, 554, 558-61, 564-68, 570-84, 588, 590-92, 595, 596, 608, 613, 617-28, 630-32, 635, 636, 641-45, 652, 656, 658, 683, 684, 694, 699, 700, 743, 744, 746-50, 752-58, 760, 766, 769-71, 773, 774, 776-94, 796-804, 806, 807, 809-18, 822-24, 827-31, 833-39, 843, 844, 847, 849, 851, 853-55, 858, 861-65, 872, 873, 875, 878-86, 888, 889, 893-908, 910-12, 914-17, 920-23, 925-27, 929-36, 939-57, 959-78, 1007-15, 1017, 1018, 1020, 1021, 1024, 1028, 1030, 1031, 1033-51, 1054-57, 1059-88, 1091-93, 1104, 1106, 1107A, 1108-22, 1126-32, 1134, 1136, 1139, 1145, 1149-54A, 1156-58, 1160, 1162-65, 1168, 1169, 1171-81, 1183-91, 1193-1202, 1204, [*28] 1205, 1207, 1208, 1210-15, 1218-20, 1223-26, 1229, 1232-44, 1246-48, 1250, 1251, 1253-57, 1270-74, 1276, 1277, 1279, 1288, 1290, 1291, 1298, 1304, 3007, 3023, 3025, 3044-47, 3050, 3055.

The work product doctrine protects against disclosure mental impressions, conclusions, opinions or legal theories of an attorney concerning litigation, and all documents prepared by or for an attorney in anticipation of litigation. *Schachar v. American Academy of Opthalmology, Inc., supra, 106 F.R.D. at 191.* Documents may be protected under this privilege even if prepared several years prior to the initiation of litigation, if it is clear that they concerned the threatened litigation. *Sneider v. Kimberly-Clark Corp., supra, 91 F.R.D. at 6; Sigvlab Steel & Wire Corp. v. Imoro-Gateway Corp., supra, 62 F.R.D. at 457.* Moreover, documents prepared in anticipation of one lawsuit retain their privilege in subsequent litigation. *Panter v. Marshall Field & Co., 80 F.R.D. 718, 724-25 (N.D. Ill. 1978).* For the documents to be protected, however,

there must have been more than a remote possibility of litigation: there must have been an identifiable prospect of litigation because of specific [*29] claims that have arisen. *Id. at 725 n. 6.* Documents prepared in anticipation of ex parte patent proceedings are protected if the attorney's primary concern is with claims that may arise in future litigation, but not if his primary concern is with issues arising in the prosecution of the patent. *Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 152 (D. Del. 1977); cf. Detection Systems, Inc. v. Pittway Corp., supra, 96 F.R.D. at 155* (Work product immunity does not extend to patent proceedings); *Natta v. Zletz, 418 F.2d 633, 637-38 (7th Cir. 1969)* (Applying work product privilege to documents prepared in connection with an interference proceeding).

Of these documents, the following have previously been found to be protected by the attorney-client privilege, and thus it is unnecessary to determine whether or not they are protected by the work-product privilege:

66, 94, 244, 349, 382, 523, 546, 547, 554, 558-61, 564, 565, 567, 568, 570-84, 588, 590, 592, 595, 596, 608, 617-27, 630, 632, 641-45, 652, 683, 694, 743, 744, 746, 747, 749, 750, 753, 756-58, 766, 769, 771, 773, 774, 776-94, 796-804, 806, 809-12, 815-17, 822-24, 827, 829-31, 834, 836-39, 843, 844, [*30] 847, 849, 858, 864, 878, 880-86, 888, 889, 893-907, 910-12, 914-16, 920-23, 925, 927, 929, 932, 933, 935, 939, 941-49, 951-57, 959-64, 966-69, 972-78, 1008-15, 1017, 1018, 1021, 1024, 1028, 1030, 1033-38, 1041-51, 1054, 1055, 1057, 1059-62, 1064, 1065, 1067, 1068, 1072-74, 1077, 1078, 1080, 1083-87, 1091-93, 1104, 1106, 1109-12, 1114-22, 1026-32, 1134, 1145, 1149-54A, 1156-58, 1160, 1163-65, 1175-77, 1179-81, 1183-88, 1190, 1193-96, 1200-02, 1204, 1205, 1207, 1208, 1219, 1220, 1226, 1229, 1235-41, 1243, 1244, 1246, 1248, 1250, 1251, 1253-57, 1270-74, 1288, 1290.

Of the remaining documents, the following are not protected by the work-product privilege because they were prepared before the present litigation began (or their date cannot be determined), and they have not been shown to have been prepared in anticipation of litigation:

70, 83, 84, 92, 93, 95, 242, 313, 321, 347, 389, 449, 591, 631, 635, 656, 658, 748, 755, 760, 818, 835, 851, 853-55, 862, 863, 865, 872, 873, 875, 879, 908, 917, 926, 936, 950, 965, 970, 971, 1007, 1020, 1031, 1039, 1066, 1075, 1079, 1081, 1082, 1107A, 1108, 1113, 1136, 1162, 1171-74, 1189, 1191, 1197, 1198, 1211, 1213, 1224, 1232, 1276, 1277, 1298, 1304, [*31] 3023, 3025, 3044, 3046, 3047, 3055.

Document No. 3045 is unprivileged because it was

1987 U.S. Dist. LEXIS 10300, *31

disclosed to a party with an adverse interest.

The following documents are protected by the work-product privilege:

118, 121, 122, 181, 182, 352, 377, 699, 700, 770, 3007.

The following document is protected by the attorney-client privilege:

635.

The following documents have not been submitted to the court:

124, 312, 314, 316, 348, 566, 613, 628, 636, 684, 752, 754, 807, 813, 814, 828, 833, 861, 930, 931, 934, 940, 1040, 1056, 1063, 1069–71, 1076, 1088, 1139, 1168, 1169, 1178, 1199, 1210, 1212, 1214, 1215, 1218, 1223, 1225, 1233, 1234, 1242, 1247, 1279, 1291, 3050.

Of these documents, the following were sought by Abbott as communications with foreign patent agents and were not submitted; they are dealt with in the previous section of this order:

566, 613, 628, 636, 752, 754, 807, 813, 814, 828, 833, 861, 930, 931, 934, 940, 1040, 1056, 1063, 1069–71, 1076, 1088, 1139, 1168, 1169, 1178, 1199, 1210, 1212, 1215, 1218, 1223, 1225, 1233, 1234, 1242, 1247.

The following documents are established by the affidavits to be privileged attorney–client communication:

348, 684.

The following documents [*32] were not cross-referenced or were otherwise not established by the affidavits to be within the attorney-client or work-product privilege:

124, 312, 314, 316, 1214, 1279, 1291, 3050.

## Prior Art

Abbott seeks production of the following documents on the ground that they were requests for, lists of, or studies of prior art, and that such requests, lists, and studies are not privileged:

15, 17, 26, 70, 78, 83, 84, 88, 95, 328, 329, 332, 439, 442, 446, 447, 449–51, 455, 457, 539, 612, 662, 663, 706–09, 1264, 1268, 1269, 1316.

The attorney-client privilege applies to communications related to the legal aspects of preparing and prosecuting patent applications. *Union Carbide Corp. v. Dow Chemical Co., supra, 619 F.Supp. at 1046.* However, com-munications consisting merely of technical information, and not calling for legal opinion or advice but meant primarily to aid the attorney in completing the patent application, are not privileged. *Id. at 1047; Sneider v. Kimberly-Clark Corp., supra, 91 F.R.D. at 5.* Abbott contends that under this "conduit theory", requests for, lists of and studies of prior art are also not privileged. A person applying for a patent is required [*33] to disclose to the patent office not only technical information concerning the invention, but also material prior art. *A.B. Dick Co. v. Burroughs Corp., 798 F.2d 1392, 1397 (Fed. Cir. 1986).* Communications containing such prior art, Abbott argues, should similarly be unprivileged.

Lists and studies of prior art are arguably not analogous to technical information. Prior art must be disclosed to the patent office only if it is material, and determining what prior art is material involves the application of rules of law to facts, a function protected by the attorney-client privilege. However, the courts that have considered the issue have concluded that lists and studies of prior art are not protected by the attorney–client privilege. *Detection Systems, Inc. v. Pittway Corp., supra, 96 F.R.D. at 155; Sneider v. Kimberly-Clark Corp., supra, 91 F.R.D. at 5; Handguards, Inc. v. Johnson & Johnson, 69 F.R.D. 451, 453–54 (N.D. Cal. 1975).* Most prior art is a matter of public record, consisting of publications and public patents; lists and studies of such material do not involve confidential information of the client. Moreover, although there may be some legal component [*34] to such lists and studies, they consist largely of technical, rather than legal matters. Accordingly, requests for, lists of, and studies of prior art are unprivileged, except to the extent of studies of prior art in which the legal aspects predominate.

A number of these documents consist of communications between Baxter attorneys and Woolcott & Company, a patent search firm retained by Baxter. Schuman's Aff., para. 6. Ordinarily, communications between a client or its attorneys and third parties are not privileged, because they are not confidential. *Sneider v. Kimberly-Clark Corp., supra, 91 F.R.D. at 6* (patent search firms). Communications with persons acting under the direct supervision of the attorney, and who are necessary for the attorney to provide legal services adequately, such as investigators, consultants, or office personnel, however, are privileged. *Mendenhall v. Barber-Greene Co., supra, 531 F.Supp. at 953, n. 4 954.* Accordingly, to the extent Woolcott & Co. was acting as the agent of Baxter's attorneys in the rendition of legal services, the fact that it received communications in connection therewith, would not render the communications non-privileged. [*35]

The following documents are unprivileged lists of, requests for, or studies of prior art:

15, 26, 328, 329, 332, 442, 446, 447, 449, 457, 539, 662, 663, 707, 709, 1264, 1269.

The following documents are unprivileged cover letters, acknowledgements, or other communications not giving or requesting legal advice or information concerning which legal advice is sought:

26, 450, 451, 455, 706, 708.

The following documents are communications with persons whose identity has not been established, and are therefore unprivileged for lack of confidentiality:

70, 78.

The following document is an unprivileged publication:

83.

Document No. 84 consists of a privileged memorandum attached to an unprivileged publication.

The following documents are unprivileged technical documents, patent applications, or other non-privileged material:

328 (attachment), 662, 663, 709 and attachment.

The following documents are privileged attorney-client communications:

17, 95, 612, 1268.

None of these documents were made in anticipation of litigation, and therefore none are protected by the work-product privilege.

The following documents also contain handwritten notes or markings:

17, 26, 78, 662, 663, [*36] 706, 707, 709.

Of these documents, the notes on the following did not involve legal matters and were not prepared in anticipation of litigation, and are not protected by the attorney-client or work-product privileges:

17, 26, 78, 662, 706, 707.

The authors of the notes on the following documents are not identified, and accordingly the documents are not protected by the work-product or attorney-client privilege:

663, 709.

The following documents were not submitted:

88, 439, 1316.

Document No. 88 was established by affidavit to contain communications from Popovich or Moncrief relating to the 1976 ASAIO abstract made for the purpose of receiving legal advice, and is therefore protected by the attorney-client privilege.

Document Nos. 439 and 1316 are not established to have been privileged or were not cross-referenced.

Draft Agreements

Abbott seeks production of the following documents on the ground that they relate primarily to draft agreements and are therefore not privileged:

110, 347-50, 659-61, 3017, 3018, 3022-25, 3044-49, 3051, 3052, 3088, 3093-3106, 3109A, 3110, 3241, 3258.

Abbott argues that drafts of agreements and contracts are not privileged simply because they [*37] are drafts. The cases cited by Abbott do not so hold. Drafts of documents by attorneys are covered by the work-product privilege if prepared in anticipation of litigation. *Jack Winter v. Koratron, 54 F.R.D. 44 (N.D. Cal. 1971).* To the extent a draft reflects client communications, it may also be covered by the attorney-client privilege. The court has conducted a review of the documents submitted in this category and it is apparent that numerous of them are not privileged for other reasons.

Of these documents, the following are unprivileged because they were disclosed to adverse parties, persons with whom no community of interest existed at the time, evidence unprivileged conversations, or have otherwise not been shown to be subject to the attorney-client privilege at this time:

660, 661, 3017, 3018, 3022, 3023, 3025, 3044, 3045, 3046, 3047, 3048, 3049, 3051, 3052, 3088, 3093, 3094, 3095, 3096, 3097, 3100, 3104, 3105, 3106, 3109A, 3241.

The following documents are attorney notes or memoranda that were not prepared in anticipation of litigation and are therefore not protected by the work-product privilege:

110, 347, 348, 659, 660, 661, 3017, 3018, 3023, 3024, 3025, 3044, 3046, [*38] 3048, 3049, 3051, 3052, 3104, 3109A.

The following documents are unprivileged cover letters, letters of acknowledgement, or other communications not involving legal advice:

3094, 3095, 3099, 3258.

The following documents are privileged work product:

349, 350.

The following documents are privileged attorney-client communications:

110, 347, 348, 350, 659, 3024, 3098, 3101, 3102, 3103, 3110.

Waiver

In an order issued on December 19, 1985, the court ruled that the plaintiffs had waived the attorney-client privilege:

to the extent of discussions between Popovich and attorney Snyder respecting the impact of the abstract or the need for an immediate filing of the patent application.

Id. at p. 2. Abbott contends that under that order the following

documents are unprivileged:

3035-37, 3042, 3053, 3089, 3107-9, 3112, 3244, 3245.

Of these documents, the following are unprivileged communications between Popovich and Snyder concerning the abstract:

3036, 3037, 3108, 3109, 3112, 3244, 3245.

The following document was disclosed to a party with whom there was no community of interest, and is therefore unprivileged:

3089.

The following document is a letter from Baxter's Schuman [*39] to Karl Nolph, dated April 14, 1981. Schuman has not been shown to represent Nolph and the document at any rate does not relate to a community of interest in the enforcement of patent rights (it concerns how Nolph is to be paid — a business and not legal issue); *Duolan Corp. v. Deering Milliken, Inc., supra,* 397 *F.Supp. at 1172:*

3047.

The following documents are otherwise privileged attorney-client communications not within the scope of the waiver:

3035, 3042, 3107.

None of these documents was produced in anticipation of litigation and therefore none is protected by the work-product privilege.

The following document was not submitted to the court and its privileged or non-privileged status cannot be determined. It is therefore not privileged:

3053.

Remaining Documents

Abbott seeks production of the remainder of the 1500-odd documents listed in Appendix B of its memorandum in support of its motion to compel. Baxter has submitted affidavits of its attorneys claiming that all of these documents are privileged. Whatever the merits of that contention, Abbott has made no specific challenges to Baxter's assertion of privilege as to any of these documents; instead, it wants [*40] the court to examine each document and see if it might fall within any exception to the privilege. The court is disinclined to undertake this burdensome task, and in the absence of any specific challenge, the remaining documents are privileged.

Despite the already burdensome task put upon the court by this motion and the numbers of documents as to which plaintiffs claim privilege, or perhaps as a result, I recognize that genuine mistakes may have been made in categorizing documents. Accordingly, as other courts have done, this order will issue as an interim order as to those documents found not to be privileged. With regard to these, Baxter may have two weeks to file any objection as to the classification of particular documents. The objection is to include all of the following in easily readable form (I will not again traverse through the multitude of different memos, appendices, etc. necessary to even determine who the document was written by and who it went to, let alone why it is claimed to be privileged):

1. The name and position of the person who wrote the document, (no initials will be accepted as identifying any individual).

2. The name, position, and responsibilities [*41] of each person receiving the document.

3. The date of the document.

4. The privilege being claimed.

5. The factual and legal basis for the claim of privilege.

Following Baxter's objection, Abbott may have two weeks to respond. The court will hold an evidentiary hearing and argument with regard to any documented objec-

1987 U.S. Dist. LEXIS 10300, *41

tion after Abbott has filed its response, pursuant to the suggestion in *Natta v. Zletz, supra, 418 F.2d at 636*. In this connection, I note that many of the documents reviewed — e.g., routine cover letters, drafts of consulting agreements — do not appear to have any possibility of bearing on the outcome of this litigation. As to such documents, the parties will be asked to justify any request that the court spend additional time on this motion.

I will not reconsider a holding that a document is unprivileged if it was not produced for in camera inspection pursuant to my earlier order.

ELAINE E. BUCKLO, United States Magistrate

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2005, the attached **REDACTED LETTER MEMORANDUM IN SUPPORT OF COMMON INTEREST DOCTRINE** was served upon the below-named defendants at the address and in the manner indicated:

John W. Shaw, Esquire                                                    HAND DELIVERY
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Kristin L. Cleveland, Esquire                                    VIA FEDERAL EXPRESS
Klarquist, Sparkman, LLP
One World Trade Center, Suite 1600
121 S.W. Salmon Street
Portland, OR  97204

Rodger D. Smith, Esquire                                                 HAND DELIVERY
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899

Jeffrey R. Chanin, Esquire                                       VIA FEDERAL EXPRESS
Keker & Van Nest, L.L.P.
710 Sansome Street
San Francisco, CA  94111

William J. Wade, Esquire                                                 HAND DELIVERY
Richards Layton & Finger
One Rodney Square
Wilmington, DE  19801

William W. Flachsbart, Esquire                                   VIA FEDERAL EXPRESS
Niro Scavone Haller & Niro
181 West Madison, Suite 4600
Chicago, IL  60602

Lawrence G. Kurland, Esquire                    <u>VIA FEDERAL EXPRESS</u>
Bryan Cave, LLP
1290 Avenue of the Americas
New York, NY  10104

Karen L. Pascale, Esquire                       <u>HAND DELIVERY</u>
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE  19801

John F Luman, III, Esquire                      <u>VIA FEDERAL EXPRESS</u>
Bracewell & Giuliani LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002-2781

*/s/ John G. Day*
_____
John G. Day