**BOUCHARD MARGULES & FRIEDLANDER**
A PROFESSIONAL CORPORATION
SUITE 1400
222 DELAWARE AVENUE
WILMINGTON, DELAWARE 19801
(302) 573-3500
FAX (302) 573-3501

ANDRE G. BOUCHARD
JOEL FRIEDLANDER
DAVID J. MARGULES

June 24, 2005

JOANNE P. PINCKNEY
COUNSEL
KAREN L. PASCALE
JOHN M. SEAMAN
DOMINICK T. GATTUSO

*Via Electronic Filing*

**FILED UNDER SEAL**

The Honorable Sue L. Robinson
United States District Court
844 North King Street
Wilmington, DE 19801

REDACTED VERSION
FOR PUBLIC INSPECTION

RE:  *BTG International, Inc. v. Amazon.com, Inc.*,
     D. Del., C.A. No. 04-1264-SLR

Dear Chief Judge Robinson:

On behalf of all Defendants in this matter, this letter brief responds to Plaintiff BTG International's June 21, 2005 letter brief (D.I. 146)("BTG Letter Brief") in support of Plaintiff's assertion that the common interest privilege applies to numerous documents previously in the files of the original assignee of the patents-in-suit (Infonautics Corp.) and subsequent purchaser of Infonautics' assets (Tucows), as well as documents created and exchanged between Tucows and Plaintiff after Tucows sold the patents-in-suit to Plaintiff. As detailed below, neither the attorney-client privilege, nor the common interest privilege protect such documents from production.

## BACKGROUND

As discussed during the June 14, 2005 discovery conference, Plaintiff has provided Defendants with a 474-page privilege log, alleging 2246 documents are covered by one or more privileges.[1] Prior to the conference, Overstock.com sent Plaintiff a letter detailing its issues with Plaintiff's claims of privilege, as reflected in Plaintiff's privilege log. *See* Exhibit A. The Court ordered this briefing on two issues raised by Defendants: (1) documents belonging to Infonautics/Tucows that have been disclosed to BTG, and (2) communications by and between Infonautics, Tucows, BTG, and other parties. *See* Exhibit B, and Exhibit C at 8-15.

The two patents-in-suit were filed on September 20, 1995 and issued in 1998. The only company involved during the prosecution phase of the patents was Infonautics, the original assignee. In a reverse merger between Infonautics and Tucows, the surviving entity (d/b/a Tucows) acquired all Infonautics' assets and liabilities after the patents-in-suit issued. In 2002,

---

[1] By contrast, Plaintiff only produced fewer than 3500 documents (excluding the 900 file folders/labels). Therefore, Plaintiff asserts that nearly 40% of its responsive documents are protected from disclosure.

The Honorable Sue L. Robinson
June 24, 2005
Page 2

Plaintiff only purchased the patents-in-suit from Tucows; Plaintiff did not purchase any other assets of Tucows. *See* BTG Letter Brief Ex. A, *Patent Assignment and Commercialization Agreement* ("Patent Assignment").

In its privilege log, Plaintiff withheld approximately 270 documents, pursuant to a claim of attorney client privilege, that were prepared by or for Infonautics or Tucows in the 1994-98 timeframe, well before the Patent Assignment in 2002. *See* Exhibit A at 2, and Exhibit D (selected pages from BTG's Privilege Log corresponding to list found in Exhibit A). While Tucows may have had a claim of attorney-client privilege to these documents prior to the Patent Assignment to Plaintiff, the privilege was waived once Tucows disclosed the documents and communications to BTG. Now, Plaintiff claims that a "common interest" protects these documents.[2] However, no common interest assertion can save Tucows' waiver.

Plaintiff also withheld approximately 95 documents, pursuant to a claim of attorney client privilege and/or common interest privilege, which were created by and exchanged between Tucows and Plaintiff after the Patent Assignment. *See* Exhibit A at 2, and Exhibit D. As demonstrated below, the common interest privilege does not apply to these documents either.

## ARGUMENT

The only basis under which Plaintiff raises in its letter to the Court for not producing the questioned documents is the common interest privilege.[3] The common interest privilege is an

---

[2] In its voluminous privilege log, Plaintiff "only" asserted a common interest privilege with respect to 95 documents, all of which were dated after the Patent Assignment. Because Plaintiff failed to assert the common interest privilege for all of the documents dated prior to the Patent Assignment, it recently sent a letter to Overstock.com indicating the additional documents it wished to protect using the common interest privilege. *See* Exhibit E. For no apparent reason (other than to be difficult), Plaintiff chose not to list these 270 documents in numeric order but instead listed them randomly. *See id.*

[3] During the June 14 discovery conference, and during the parties' prior meet-and-confer on June 10, Plaintiff also asserted that the Patent Assignment transferred not only the patents-in-suit, but also the attorney-client privilege. Because this was not discussed in Plaintiff's Letter Brief, presumably Plaintiff has dropped this argument, recognizing that the law is clear that the attorney client privilege does not pass with a mere patent assignment. *See Telectronics Proprietary Ltd. v. Medtronic, Inc.* 836 F.2d 1332, 1336 (Fed. Cir. 1988) (affirming district court holding that assignment of a patent does not transfer attorney-client relationship); *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, No. 01 C 4366, 2003 U.S. Dist. LEXIS 13816 (N.D. Ill. Aug. 7, 2003) (Exhibit H hereto); *In re In-Store Advertising Sec. Litig.*, 163 F.R.D. 452, 458 (S.D.N.Y. 1995). Indeed, the "authority to assert and waive the corporation's attorney-client privilege follows the passage of control of the corporation." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985). During the June 10 meet-and-confer, Plaintiff cited only *Graco Children's Products, Inc. v. Regalo International LLC*, 1999 US Dist. LEXIS 11392 (E.D. Penn. 1999) (Exhibit I hereto), as authority for the proposition that Plaintiff acquired the attorney-client privilege via the Patent Assignment. *Graco* is readily distinguishable, because in that case an entire division of the assignor was transferred, including patents, all assets and liabilities (such as goodwill, IP rights, several factories in the US and Mexico, working capital and brand names). Here, by contrast, Plaintiff did not receive control over Tucows or any division of Tucows—Plaintiff merely received an assignment of patents.

The Honorable Sue L. Robinson
June 24, 2005
Page 3

exception to the general rule that disclosure to a third party waives the attorney-client privilege. *Corning, Inc. v. SRU Biosystems, L.L.C.*, 223 F.R.D. 189, 190 (D. Del. 2004).

Importantly, it is undisputed that there was no common interest prior to the Patent Assignment, and therefore none of the pre-Patent Assignment documents can be protected by the common interest privilege. Documents and communications created before the common interest existed are not covered by the common interest privilege. *See Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 U.S. Dist. LEXIS 10300 at * 6-7 (N.D. Ill. June 17, 1987) (Ex. C to BTG Letter Brief). Further, "only communications made in the course of an ongoing legal enterprise ... are protected." *In re Application of the FTC for Order Compelling Avrett Free & Ginsberg*, No. M18-304, 2001 U.S. Dist. LEXIS 5059 at * 9 (S.D.N.Y. Apr. 19, 2001) (Exhibit J hereto). Thus, all of the Tucows documents and communications made before the Patent Assignment (including at least Nos. 1-264 on Plaintiff's privilege log) are discoverable without having to even address whether a common legal interest exists.

Moreover, BTG's and Tucows' relationship and interests simply do not constitute a "common interest." As Plaintiff admits in its brief, "BTG and Tucows chose to work together and communicate with each other about **commercialization** of the patents-in-suit." *See* Plaintiff Brief at 4 (emphasis added). For the common interest privilege to apply, the interests must be "identical, not similar, and be legal, **not solely commercial**." *Corning, Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004)(emphasis added); *In re Application of the FTC for Order Compelling Avrett Free & Ginsberg*, No. M18-304, 2001 U.S. Dist. LEXIS 5059 at * 9 ("The parties among whom information is shared must have a common legal interest--they must have demonstrated cooperation in formulating a common legal strategy. ").

Here, Plaintiff admits that its relationship with Tucows is based on the commercialization of the patents.

*See* Patent Assignment at 4.

*Id.* at § 9.2.



*See* Patent Assignment at § 5.2. This is hardly a joint defense agreement, and the extent of Tucows' participation in litigation is minimal at best. Plainly, the controlling purpose of the document is commercializing the patents (as Plaintiff admits), not joint litigation. Under these circumstances, the common interest privilege does not apply because for the privilege to be invoked, "the commercial aspect shall not be controlling purpose," and "if the common enterprises embarked on a business mission, though there is concern about the presence of litigation, the common interest privilege will not be applicable." *Lugosh v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003); *In re Application of the FTC for Order Compelling Avrett Free &*

The Honorable Sue L. Robinson
June 24, 2005
Page 4

*Ginsberg*, No. M18-304, 2001 U.S. Dist. LEXIS 5059 at * 9 ("The rule does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation.").

Plaintiff attempts to assert the common interest privilege by claiming that the shared interest is not solely commercial (despite the fact that Plaintiff explicitly states otherwise in its Letter Brief) because Tucows has an interest in the patents being valid. Plaintiff is attempting to stretch the common interest privilege too far. Tucows' only interest is commercial since its only interest is to get a percentage of what Plaintiff takes in from commercializing the patents. In fact, the seminal common interest privilege case, *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1175 (D.S.C. 1974), holds that disclosure of confidential information to an exclusive licensee of a patent constitutes waiver because such a licensee holds a purely commercial interest. REDACTED Because an exclusive licensee holds only a commercial interest, Plaintiff only holds a commercial interest, and the common interest privilege does not apply.

The cases cited by Plaintiff do not provide any legal basis for the Court to uphold Plaintiff's claim of privilege. In alleging that Tucows has the same legal interest as Plaintiff in having the patents be valid and enforceable, Plaintiff relies on *In re the Regents of the University of California*, 101 F.3d 1386 (Fed. Cir. 1996); *Constar Int'l, Inc. v. Continental Pet Techs., Inc.*, 2003 U.S. Dist. LEXIS 21132 (D. Del. Nov. 19, 2003) (Ex. B to BTG Letter Brief); and *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 U.S. Dist. LEXIS 10300 (N.D. Ill. June 17, 1987) (Ex. C to BTG Letter Brief). In each of these cases, however, the courts ruled a common interest existed where the parties were developing and seeking to obtain patents, not where the patents issued long before the parties had a relationship, and the parties relationship relates solely to the commercialization of those existing patents. Thus, these three cases do not support Plaintiff's claims of privilege.

Plaintiff also relies on *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987). In this case, however, the court found a common interest existed where the parties "anticipated joint litigation." *Id.* at 310. REDACTED *See* Patent Assignment at § 5.1. In fact, Plaintiff has strenuously resisted any attempts by Defendants to name Tucows as a party to this litigation. Plaintiff cannot possibly now claim that it is conducting a joint defense with Tucows since Plaintiff has insisted that Tucows is not a necessary party to the suit

REDACTED

None of the cases cited by Plaintiff support its position. Moreover, Plaintiff has admitted in no uncertain terms that "BTG and Tucows chose to work together and communicate with each other about **commercialization** of the patents-in-suit" REDACTED

The Honorable Sue L. Robinson
June 24, 2005
Page 5

REDACTED

Because Tucows' interest is purely commercial, the common interest privilege cannot apply. *See Corning, Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004). All documents and communications shared between BTG and Tucows are therefore discoverable. This applies not only to documents created before the Patent Assignment (at least entry Nos. 1-264), but also to any documents created afterwards and shared by Plaintiff and Tucows, as well as all communications between Plaintiff and Tucows. A complete list of such documents (in numeric order) is included on page 2 of Exhibit A.

## OTHER BTG PRIVILEGE LOG ISSUES

At the June 14, 2005 hearing, Defendants also raised several other issues with the Court regarding Plaintiff's privilege log. Plaintiff has also asserted privilege for the following classes of documents: (1) emails and other documents that do not appear to have been sent by or to an attorney; and (2) communications between BTG and some third party as well as documents created by third parties. *See* Exhibit A, and Exhibit C at 12:5-12. Plaintiff's privilege log contained many documents that were not created by or sent to an attorney. For example, entry No. 574 is a presentation created by a non-attorney and the listed addressee is "File." Based on this information, Defendants cannot deduce how this document can possibly be privileged. Plaintiff agreed with the Court at the hearing that it would update its privilege log with additional information allowing Defendants to determine whether the documents are in fact privileged. *See* Exhibit C at 12:2-22. On June 16, 2005, Plaintiff informed Overstock.com that, despite its promise to the Court, it would not provide this information unless Overstock.com could guarantee that the other Defendants would perform the same exercise. *See* Exhibit F. Defendants agreed to provide such information, yet Plaintiff has failed to indicate its willingness to provide this additional information. *See* Exhibit G. Therefore, Defendants request that the Court conduct an in camera review of the documents listed on pages 2-3 of Exhibit A.

Plaintiff's privilege log also contained a number of documents and communications with third parties. *See* Exhibit A. For example, documents 765, 817, and 2229 are communications sent from or to *Forbes* magazine. These documents, plus the others identified on page 3 of Exhibit A, cannot possibly be privileged. During the June 14 discovery conference, Plaintiff agreed to review its claims of privilege on documents that went to or it received from third parties. *See* Exhibit C at 10:12-17. To date, Plaintiff has provided no explanation for the asserted privilege with respect to these documents and communications with third parties. Defendants therefore request that these documents also be inspected in camera to determine if such documents are in fact privileged.

Respectfully submitted,
/s/ *Karen L. Pascale*
Karen L. Pascale (#2903)

cc: All Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2005, I caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
John G. Day, Esquire [jday@ashby-geddes.com]
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
  *Attorneys for Plaintiff, BTG International, Inc.*

John W. Shaw, Esquire [jshaw@ycst.com]
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
  *Attorneys for Defendant Amazon.com, Inc. and Amazon Services, Inc.*

Rodger D. Smith, Esquire [rsmith@mnat.com]
MORRIS NICHOLS ARSHT & TUNNELL
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
  *Attorneys for Defendant Netflix, Inc.*

William J. Wade, Esquire [wade@rlf.com]
Steven J. Fineman, Esquire [fineman@rlf.com]
RICHARDS LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899
  *Attorneys for Defendant Barnesandnoble.com, Inc.*

I further certify that on July 1, 2005, I caused a copy of the foregoing sealed document to be served by hand on the above-listed counsel, and that a copy was served on the following non-registered participants on the date and in the manner indicated:

*By E-mail on July 1, 2005*

Niall A. MacLeod, Esquire [NAMacLeod@rkmc.com]
Michael A. Collyard, Esquire [MACollyard@rkmc.com]
ROBINS, KAPLAN, MILLER & CIRESI, LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
  *Attorneys for Plaintiff, BTG International, Inc.*

Kristin L. Cleveland, Esquire [kristin.cleveland@klarquist.com]
KLARQUIST SPARKMAN LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
  *Attorneys for Defendant Amazon.com, Inc. and Amazon Services, Inc.*

Wendy J. Thurm, Esquire [wjt@KVN.com]
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
  *Attorneys for Defendant Netflix, Inc.*

William W. Flachsbart, Esquire [flachsbart@nshn.com]
NIRO, SCAVONE, HALLER & NIRO
181 West Madison, Suite 4600
Chicago, IL 60602
  *Attorneys for Defendant Barnesandnoble.com, Inc.*

Lawrence G. Kurland, Esquire [lgkurland@bryancave.com]
BRYAN CAVE LLP
1290 Avenue of the Americas
New York, NY 10104
  *Attorneys for Defendant Barnesandnoble.com, Inc.*

BOUCHARD MARGULES & FRIEDLANDER, P.A.

Dated: July 1, 2005

/s/ Karen L. Pascale
David J. Margules (#2254)
Karen L. Pascale (#2903) [kpascale@bmf-law.com]
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500
  *Attorneys for Defendant Overstock.com, Inc.*