IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTG INTERNATIONAL INC.,<br>INFONAUTICS CORPORATION AND<br>TUCOWS, INC. | ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 04-1264-SLR |
| AMAZON.COM, INC., AMAZON<br>SERVICES, INC., AND<br>OVERSTOCK.COM, INC. | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## CROSS NOTICE OF RULE 30(B)(6) DEPOSITION OF
## PLAINTIFF BTG INTERNATIONAL, INC.

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 30(b)(6),

Defendants Amazon.com, Inc. and Amazon Services, Inc., intend to take the oral and videotaped

deposition of Plaintiff BTG International ("Plaintiff") by stenographic means through the

officers, directors, or managing agents, or other persons who consent to testify on its behalf, and

designated by BTG as having knowledge of the subjects described on Attachment A, beginning

at 9:00 a.m. on Tuesday, November 8, 2005, at the offices of Robins, Kaplan, Miller & Ciresi

L.L.P., 2800 LaSalle Plaza, 800 LaSalle Avenue, Minneapolis, MN 55402.

The deposition will take place before a notary public or other office duly authorized to

administer oaths and take testimony, and will be recorded by stenographic and videographic

means. The deposition will continue from day to day until completed. This deposition will be

taken under the Federal Rules of Civil Procedure for the purposes of discovery, for use at trial,

and for other such purposes as permitted by law.

    All counsel are invited to attend this deposition.

Date: October 27, 2005

*Karen E. Keller*

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Rolin P. Bissell (No. 4478)
Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
P.O. Box 391
Wilmington, DE  19801-0391
(302) 571-6600
jshaw@ycst.com


       -and-

Kristin L. Cleveland
Jeffrey S. Love
Todd Siegel
KLARQUIST SPARKMAN, LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, Oregon 97204
(503) 595 5300

*Attorneys for Defendants Amazon.com, Inc. and Amazon
Services, Inc.*

## ATTACHMENT A

### INSTRUCTIONS AND DEFINITIONS

1.      As used herein, the term "Defendants" refers to one or more of the Defendants Overstock.com, Inc., Amazon.com, Inc., Amazon Services, Inc. Barnesandnoble.com, Inc., and Barnesandnoble.com, L.L.C., their successors-in-interest, predecessors-in-interest, officers, directors, trustees, employees, representatives and others acting on behalf of one or more of the Defendants.

2.      As used herein, the terms "Plaintiff" or "BTG" refer to BTG International, Inc., its successors-in-interest, predecessors-in-interest, officers, directors, trustees, employees, representatives, and others acting on behalf of BTG.

3.      As used herein, the term "this Lawsuit" refers to the above styled and numbered cause and all claims or defenses asserted in it.

4.      As used herein, the term "Complaint" refers to the Second Amended Complaint filed by Plaintiffs against Defendants on or about August 3, 2005.

5.      As used herein, the terms "Patents-in-Suit" refers to United States Patent Nos. 5,717,860 and 5,712,979 entitled respectively "Method and Apparatus for Tracking the Navigation Path of a User on the World Wide Web" which issued on February 10, 1998 to Terry E. Graber, Joshua Kopelman, Edwin Howell Watkeys, III, and Marvin I. Weinberger and "Method and Apparatus for Attaching Navigational History Information to Universal Resource Locator Links on a World Wide Web Page" which issued on January 27, 1998 to Terry E. Graber, Joshua Kopelman, Edwin Howell Watkeys, III, and Marvin I. Weinberger.

6.      As used herein, the term "'860 patent" refers to U.S. Patent No. 5,717,860.

7.      As used herein, the term "'979 patent" refers to U.S. Patent No. 5,712,979.

8.    As used herein, the terms "Asserted Claim" or "Asserted Claims" refers to any claim of the Patents-in-Suit that Plaintiffs contend is infringed in any way by any of the Defendants.

9.    As used herein, the term "Infonautics" refers to Infonautics, Inc., Infonautics Corporation, its successors-in-interest, predecessors-in-interest, affiliated entities, any joint venture to which it may be a party, and/or each of its officers, directors, trustees, employees, representatives, and others acting on behalf of Infonautics.

10.    As used herein, the term "Tucows" refers to Tucows Inc. f/k/a Infonautics, Inc., Tucows.com, Tucows.com, Inc., its successors-in-interest, predecessors-in-interest, affiliated entities, any joint venture to which it may be a party, and/or each of its officers, directors, trustees, employees, representatives, and others acting on behalf of Tucows.

11.    As used herein the term "Overstock.com" refers to Overstock.com, Inc., its successors-in-interest, predecessors-in-interest, officers, directors, trustees, employees, representatives, and others acting on behalf of Overstock.com, Inc.

12.    As used herein the term "Amazon" refers to Amazon.com, Inc., Amazon Services, Inc., their successors-in-interest, predecessors-in-interest, officers, directors, trustees, employees, representatives, and others acting on behalf of Amazon.com, Inc. and Amazon Services, Inc.

13.    As used herein the term "BarnesandNoble.com" refers to Barnesandnoble.com, Inc., Barnesandnoble.com, L.L.C., their successors-in-interest, predecessors-in-interest, officers, directors, trustees, employees, representatives, and others acting on behalf of Barnesandnoble.com, Inc. and Barnesandnoble.com, L.L.C.

14.    As used herein the term "Netflix" refers to Netflix, Inc., its successors-in-interest, predecessors-in-interest, officers, directors, trustees, employees, representatives, and others acting on behalf of Netflix, Inc.

15.    As used herein, the term "assignee of the Patents-in-Suit" refers to any company, association, partnership or individual(s), including, but not limited to, Infonautics, Tucows, and BTG, who has or had any rights to the Patents-in-Suit.

16.    As used herein, the term "relating to" in reference to a subject means making a statement about, referring to, mentioning, discussing, describing, reflecting, dealing with, consisting of, constituting, comprising, recording, or in any way pertaining to the subject, whether in whole or in part and either directly or indirectly.

17.    The use of the singular form of any word includes the plural and vice versa.

18.    As used herein, the term "user navigation path tracking system" refers to any method or apparatus of tracking the navigation path of a user on the World Wide Web of the general type described in the Patents-in-Suit.

19.    As used herein, the term "communication" means every manner or method of disclosure or transfer or exchange of information of facts, ideas, inquiries or otherwise, whether oral or by document, and whether face-to-face, by telephone, mail, personal delivery or otherwise.

20.    The term "concerning" means relating to, referring to, describing, evidencing or constituting.

21.    As used herein, the words "and" and "or" shall be construed in the conjunctive and disjunctive, whichever makes the request more inclusive.

22.    As used herein, the word "any" shall mean one or more, and the word "each" shall mean "each and every."

## TOPICS ON WHICH TESTIMONY IS REQUESTED

1.    The nature and terms of the relationship between BTG, Infonautics, and Tucows, including, but not limited to, how it relates to each of the following: (a) the subject matter of this Lawsuit; (b) the '860 patent; (c) the '979 patent; and (d) ownership of any rights with respect to, or interest in, any of the claims asserted by Plaintiff in this Lawsuit.

2.    All valuations performed by or for any assignee of the Patents-in-Suit by any person or entity, including, but not limited to, valuations of the Patents-in-Suit, relating to any corporate financing, stock offering, stock sale, or transaction with any venture capital fund that was offered or considered by any assignee of the Patents-in-Suit.

3.    All valuations performed by or for Infonautics or Tucows by any person or entity, including, but not limited to, valuations of the Patents-in-Suit, relating to the merger transaction between Infonautics and Tucows.

4.    The ownership of the Patents-In-Suit.

5.    The nature and terms of any past, expired, canceled, live, or current reversionary interest in the Patents-in-Suit held by Tucows, Infonautics, or any third party.

6.    The circumstances under which BTG became aware of the Patents-in-Suit.

7.    The nature and terms under which BTG became the assignee of the Patents-in-Suit.

8.    The substance of BTG's due diligence investigation relating to the Patents-in-Suit prior to becoming the assignee of the Patents-in-Suit.

9.    The conception, reduction to practice, diligence between such conception and such reduction to practice, and the best mode of practicing the alleged inventions claimed or described in the Patents-in-Suit.

4

10. The investigation, research, conception, evaluation, or development of the alleged inventions claimed or disclosed by the Patents-in-Suit.

11. All testing, analysis, trials, experiments or other work performed by BTG, or of which BTG is aware, to build any user navigation path tracking system.

12. The design, structure, and operation of the alleged inventions described in the Patents-in-Suit.

13. Inventorship of the Patents-in-Suit, including the identity of any inventor of the alleged inventions disclosed in the Patents-in-Suit, and their individual contributions to the subject matter and alleged inventions disclosed in the Patents-in-Suit, and the factual bases, if any, for BTG's assertions that Terry E. Graber, Joshua Kopelman, Edwin Howell Watkeys, III, and Marvin I. Weinberger invented or contributed to the alleged invention of the subject matter of the Patents-in-Suit.

14. All prior art relevant to the Patents-in-Suit, including all prior art considered during the prosecution of the Patents-in-Suit, whether disclosed to the U.S. Patent and Trademark Office or not, and all prior art cited to BTG, Infonautics, or Tucows, or identified or disclosed by any person or entity during or prior to this Lawsuit.

15. The prosecution of each and every patent or patent application related to the '860 patent, including, but not limited to, the patents applications filed in the United States and all correspondence to and from the U.S. Patent and Trademark Office for each application related to the '860 patent. "Related to" is used herein as being (1) any application filed in the U.S. Patent and Trademark Office, or any foreign patent office, claiming the earliest filing date of the '860 patent and all foreign counterpart applications thereto; and (2) any application filed in the U.S. Patent and Trademark Office, or any foreign patent office, wherein the specification of the

application is substantial similar, including without limitation, to the '860 patent, the '979 patent, U.S. Patent No. 5,819,285, or U.S. Patent No. 5,812,769.

16.    The prosecution of each and every patent or patent application related to the '979 patent, including, but not limited to, the patents applications filed in the United States and all correspondence to and from the U.S. Patent and Trademark Office for each application related to the '979 patent. "Related to" is used herein as being (1) any application filed in the U.S. Patent and Trademark Office, or any foreign patent office, claiming the earliest filing date of the '860 patent and all foreign counterpart applications thereto; and (2) any application filed in the U.S. Patent and Trademark Office, or any foreign patent office, wherein the specification of the application is substantial similar, including without limitation, to the '860 patent, the '979 patent, U.S. Patent No. 5,819,285, or U.S. Patent No. 5,812,769.

17.    All efforts, if any, to exploit, attempt to exploit, commercialize, or attempt to commercialize the Patents-in-Suit, including, but not limited to, any sale, offer to sell, license, or offer to license any technology, product or service relating to the subject matter of the Patents-in-Suit.

18.    All licensing of rights or attempted licensing activities to date, if any, under the Patents-in-Suit, including the identities of all persons or entities who have been contacted or offered a license to the Patents-in-Suit, or any alleged inventions disclosed therein, and all responses or proposals by any person or entity to those licensing efforts.

19.    All licenses granted by BTG to any third party for use of the alleged inventions disclosed in the Patents-in-Suit, including: (a) the identity and number of licenses entered into; (b) royalties or other consideration received by BTG; (c) the nature, scope and terms of the licenses

6

offered; (d) BTG's policies concerning licenses; and (e) BTG's position regarding royalty rates in the industry.

20. All licenses granted by Infonautics to any third party for use of the alleged inventions disclosed in the Patents-in-Suit, including: (a) the identity and number of licenses entered into; (b) royalties or other consideration received by Infonautics; (c) the nature, scope and terms of the licenses offered; (d) Infonautics' policies concerning licenses; (e) Infonautics' position regarding royalty rates in the industry; and (f) whether or not this license and its rights and obligations were given, sold, assigned, or otherwise transferred to BTG.

21. All licenses granted by Tucows to any third party for use of the alleged inventions disclosed in the Patents-in-Suit, including: (a) the identity and number of licenses entered into; (b) royalties or other consideration received by Tucows; (c) the nature, scope and terms of the licenses offered; (d) Tucows' policies concerning licenses; (e) Tucows' position regarding royalty rates in the industry; and (f) whether or not this license and its rights and obligations were given, sold, assigned, or otherwise transferred to BTG.

22. All inquires, proposals or offers to purchase the Patents-in-Suit.

23. BTG's first awareness of any Defendants' accused infringing product, service or activity.

24. BTG's investigation of any Defendants' products, services, or activity prior to the filing of this Lawsuit, including, but not limited to, the identity of who performed the investigation and when it occurred.

25. BTG's explanation or identification of each Defendants' products, services or activity, and each element or component thereof, that BTG contends infringe any element of any Asserted Claim.

26.  The damages, if any, allegedly sustained by BTG as a result of any action of Defendants as alleged by BTG in this Lawsuit including the elements, amounts and methods for calculation thereof.

27.  BTG's gross monthly revenues, if any, derived from any product or service covered by one or more claims of the Patents-in-Suit.

28.  All revenue generated by BTG relating to the Patents-in-Suit.

29.  BTG's financial performance (actual and projected) since inception including, but not limited to, capital investment, revenue, costs and expenses, amortization, gross and net profit or loss, cash flow, return on investment, the profits earned or losses suffered or expected by BTG.

30.  All revenues, profits, sales, and license fees that BTG has received, or expects to receive, as a result of making, selling, offering for sale, or licensing any user navigation path tracking system.

31.  All revenues, profits, sales, and license fees that BTG has received, or expects to receive, as a result of making, selling, offering for sale, or licensing any alleged invention claimed in the Patents-in-Suit.

32.  Cost information concerning any user navigation path tracking system, including costs or expenses (fixed and variable) that BTG has incurred, is incurring, or expects to incur as a result of the lease, use, transfer, manufacture, offer for sale, providing to customers or sale of any such system.

33.  Cost information concerning any method, product or service claimed or disclosed in the Patents-in-Suit, including costs or expenses (fixed and variable) that BTG has incurred, is incurring, or expects to incur as a result of the lease, use, transfer, manufacture, offer for sale, providing to customers or sale of any method, product or service.

8

34.  Cost information concerning any alleged invention disclosed in the Patents-in-Suit, including costs or expenses (fixed and variable) that BTG has incurred, is incurring, or expects to incur as a result of the lease, use, transfer, manufacture, offer for sale, providing to customers or sale of any such alleged invention.

35.  Any monies, fees, royalties, payments or other consideration provided to any third party to develop all or any part of any alleged invention disclosed in the Patents-in-Suit.

36.  Any monies, fees, royalties, payments or other consideration provided or promised to any third party based on any award of damages as a result of this Lawsuit, or any license entered into by BTG relating to the Patents-in-Suit.

37.  BTG's licensing practices for any BTG licensed technology, method, product, or service including without limitation:

    a.  the percentage of BTG license agreements that require a running royalty payment;

    b.  the percentage license agreements that require a lump sum payment;

    c.  the percentage of BTG license agreements that provide for a flat rate royalty payment;

    d.  the percentage of BTG license agreements with a lump sum payment that require a lump sum payment under $1,000,000; and

    e.  the percentage of BTG license agreements with a lump sum payment that require a lump sum payment over $1,000,000.

38.  The terms of all lump sum or flat rate license agreements entered into by BTG for any BTG licensed technology, method, product, or service.

39. All knowledge and information obtained by or for BTG prior to becoming an assignee of the Patents-in-Suit relating to any licensing activity, license terms, licenses offered, or licenses granted by Infonautics or Tucows.

40. Any non-infringing substitute or alternative to any alleged invention claimed or disclosed in the Patents-in-Suit of which BTG is aware or has been made aware of by any person or entity.

41. BTG's awareness of any third party's promotion or sale of any user navigation path tracking system or service.

42. BTG's manufacturing, marketing, and distribution capacity to meet the demand for any user navigation path tracking system or any alleged invention claimed or disclosed in the Patents-in-Suit.

43. Market demand for any user navigation path tracking system or alleged invention claimed or disclosed in the Patents-in-Suit.

44. BTG's search for and efforts to produce any documents or information in this Lawsuit.

45. The locations searched for any documents or information requested from BTG by each of the Defendants in this Lawsuit.

46. Information relating to any person(s) or entity(ies) who searched for documents or information on BTG's behalf in this Lawsuit.

47. The nature and basis for any assertion of privilege or protection for any document or information listed on BTG's privilege log.

48. Information relating to any person(s) or entity(ies) who prepared BTG's answers to Defendants' interrogatories in this Lawsuit.

49.   All correspondence and communications between Plaintiff, and those acting on Plaintiff's behalf, and any potential licensee or purchaser of Plaintiff related to the Patents-in-Suit.

50.   The identification of any current or former employee of BTG with knowledge relating to the Patents-in-Suit.

51.   All information relating to the formation, structure, and organizations of BTG.

52.   All information relating to any person(s) or entity(ies) who researched, investigated, suggested, determined, or approved filing this Lawsuit against each of the Defendants.

53.   The basis, if any, that provided support for, or was reviewed or relied upon by any person(s) or entity(ies) who researched, investigated, suggested, determined, or approved filing this Lawsuit against each of the Defendants.

54.   All information related to BTG or any related or affiliated entity that has ever tracked the navigation path of a user on the Internet.

55.   All information related to BTG or any related or affiliated entity that has ever tracked the navigation path of a user on the Internet prior to September 1995.

56.   All information related to any entity funded by BTG to perform research, investigate, study, analyze, develop, or commercialize the tracking of the navigation path of a user on the Internet.

57.   All correspondence and communications between Plaintiff, and those acting on Plaintiff's behalf, and each of the following individuals relating to this Lawsuit:

   a.   Terry E. Graber;

   b.   Joshua Kopelman;

   c.   Edwin Howell Watkeys;

   d.   Marvin I. Weinberger;

11

    e.  Daniel H. Golub;

    f.  Madeleine Campbell;

    g.  Steven Laird;

    h.  Bruce Bernstein;

    i.  Anthony Lando;

    j.  Alice Burt;

    k.  Winfred Treese;

    l.  Sheryl F. Namoglu;

    m.  Thomas Damico;

    n.  James T. Beattie;

    o.  Lawrence A. Husick;

    p.  Michael S. Krupit;

    q.  Howard Morgan;

    r.  any current or former employee of Infonautics;

    s.  any current or former employee of Tucows; or

    t.  any current or former employee of Patent Logistics.

"Relating to the Lawsuit" as used herein shall include communications about the Lawsuit itself, about the facts relating to the Lawsuit, or about the Patents-in-Suit.

    58.  The basis, if any, for BTG's assertion that the prior art referenced, identified, or disclosed by the Defendants does not: (1) invalidate on an element by element basis each of the claims of the Patents-in-Suit; (2) make obvious any alleged invention claimed or disclosed in the Patents-in-Suit; (3) anticipate any alleged invention claimed or disclosed in the Patents-in-Suit; (4) make the Patents-in-Suit invalid because the alleged invention was known or used by others in

this country prior to investigation, research, conception, evaluation, and development of the alleged inventions claimed or disclosed by the Patents-in-Suit; (5) make the Patents-in-Suit invalid because the alleged invention was patented or described in a printed publication in any country prior to investigation, research, conception, evaluation, and development of the alleged inventions claimed or disclosed by the Patents-in-Suit; (6) make the Patents-in-Suit invalid because the alleged invention was patented or described in a printed publication in any country prior to September 20, 1994.

59.   The basis, if any, for Plaintiff's allegations of infringement by any of the Defendants of any Asserted Claim.

60.   BTG's construction of the claimed alleged inventions of the Patents-in-Suit, including, but not limited to, any limitations or required elements of the claimed alleged inventions.

61.   The substance and factual support of BTG's answers to Defendants' interrogatories in this Lawsuit.

62.   The claims and allegations set forth in the Complaint, including, but not limited to, BTG's claims that Defendants infringe the Patents-in-Suit, and whether and how such infringement is direct, contributory, through active inducement, or combination thereof.

63.   Whether BTG's construction used to determine if any Defendants' products, processes, methods or systems infringe any claimed alleged inventions of the Patents-in-Suit changed, been amended, or altered during the course of litigation.

64.   The basis, if any, for BTG construing the Patents-in-Suit in a manner that any Defendants' products, processes, methods, or systems infringe the claimed alleged inventions of the Patents-in-Suit.

65.   The substance and factual support for BTG's contention(s) that any Defendants' infringement is willful, deliberate, or intentional.

66.   The basis, if any, for Plaintiff's contention that the '860 patent is valid and/or enforceable.

67.   The basis, if any, for Plaintiff's contention that the '979 patent is valid and/or enforceable.

68.   All efforts undertaken by any assignee of the Patents-in-Suit to comply with the marking requirements of 35 U.S.C. § 287(a) for the Patents-in-Suit or any patent related to the Patents-in-Suit. "Related to" is used herein as being (1) any application filed in the U.S. Patent and Trademark Office, or any foreign patent office, claiming the earliest filing date of the '860 patent and all foreign counterpart applications thereto; and (2) any application filed in the U.S. Patent and Trademark Office, or any foreign patent office, wherein the specification of the application is substantial similar, including without limitation, to the '860 patent, the '979 patent, U.S. Patent No. 5,819,285, or U.S. Patent No. 5,812,769

69.   All efforts undertaken by BTG to comply with the marking requirements of 35 U.S.C. § 287(a) for the Patents-in-Suit.

70.   The substance of BTG's due diligence investigation relating to compliance with the marking requirements of 35 U.S.C. § 287(a) for the Patents-in-Suit prior to BTG becoming the assignee of the Patents-in-Suit.

14

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on October 27, 2005, I caused to

be electronically filed a true and correct copy of the foregoing document with the Clerk of the

Court using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

Steven J. Balick, Esquire
John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801

Karen L. Pascale, Esquire
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801

I further certify that copies of the foregoing document were served by hand

delivery on the above-listed counsel and on the following counsel in the manner indicated:

### BY CM/ECF & FEDERAL EXPRESS

Glenn A. Ballard, Jr., Esquire
John F. Luman, III, Esquire
Bracewell & Giuliani LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002-2781

Ronald J. Schutz, Esquire
Niall A. MacLeod, Esquire
Robins, Kaplan, Miller & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015

Karen E. Keller (No. 4489)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com