## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTG INTERNATIONAL INC., | ) | |
| INFONAUTICS CORPORATION, AND | ) | |
| TUCOWS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 04-1264 SLR |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC., AMAZON | ) | |
| SERVICES, INC., NETFLIX, INC., | ) | |
| BARNESANDNOBLE.COM INC., | ) | |
| BARNESANDNOBLE.COM LLC, AND | ) | |
| OVERSTOCK.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF DEPOSITION TO AMAZON.COM, INC. AND AMAZON SERVICES, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)

PLEASE TAKE NOTICE that beginning at 9:00 a.m., on December 12, 2005 at the offices of Klarquist, Sparkman, L.L.P., One World Trade Center, 121 S.W. Salmon Street, Suite 1600, Portland, OR 97204, or at another mutually agreeable time, date and location, Plaintiffs, pursuant to Fed. R. Civ. P. 30(b)(6), will take the testimony of Defendants Amazon.com, Inc. and Amazon Services, Inc. on the matters listed in Schedule A, attached hereto.

Pursuant to Rule 30(b)(6), Amazon.com, Inc. and Amazon Services, Inc. are requested to designate one or more persons who "shall testify to matters known or reasonably available to" them on each of the subjects set forth in Schedule A. The deposition will be taken before an officer authorized to administer oaths and will be recorded by stenographic and videotape means, and Plaintiffs expect that the deposition will take several days until completed. You are invited to attend and cross-examine.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

_____
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
Telephone: 302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs*

*Of Counsel:*

Ronald J. Schutz
Jake M. Holdreith
Niall A. MacLeod
Michael A. Collyard
Stephanie L. Adamany
ROBINS, KAPLAN, MILLER &
  CIRESI, LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500

Dated: November 7, 2005

163256.1

**SCHEDULE A**

**DEFINITIONS**

For purposes of this notice, the following terms shall have the meaning set forth below.

1.      The term "Plaintiff" or "BTG" shall mean BTG International Inc. and its officers, agents, employees, and representatives, and all of its predecessors, successors, assigns, parents and their employees.

2.      The term "Infonautics" shall mean Infonautics Corporation and its officers, agents, employees, and representatives, and all of its predecessors, successors, assigns, parents and their employees.

3.      The term "Tucows" shall mean Tucows Inc. and its officers, agents, employees, and representatives, and all of its predecessors, successors, assigns, parents and their employees.

4.      The terms "Defendant(s)," "Amazon," "you," or "your" shall refer to named Defendants Amazon.com, Inc. and Amazon Services, Inc., and includes, without limitation, its divisions, subsidiaries, affiliates, successors, assigns, parents, directors, agents, representatives, attorneys and employees and any predecessor in interest.

5.      The phrase "referring or relating to" as used herein, includes, but is not limited to, the following meanings: bearing upon, concerning, constituting, discussing, describing, evidencing, identifying, in connection with, pertaining to, respecting, regarding, responding to, or in any way logically or factually relevant to the matter described in the request.

6.      The term "Person" means any individual, partnership, incorporated or unincorporated association, and any other legal or commercial entity.

7.      The term "Date" shall mean the exact day, month and year, if ascertainable, or, if not, the best available approximation, including relationship to other events.

8.      The term "Document" shall mean all writings, drawings, graphs, charts, photographs, recordings, source code, build logs, change logs, web pages, archived web pages, CGI scripts, HTML documents, electronic documents, PDFs, e-mails, database documents, TCP/IP documents, notebooks, engineering documents, invention disclosures, patent applications, drawings, schematics, specifications, manuals, computer code, or other data compilations, including the originals and all non-identical copies, whether different from the originals by reason of any notation made on such copies or otherwise as contemplated by Fed. R. Civ. P. 26 in any form, whether on paper, in electronic form, on tape, video, film or microfilm, or otherwise.

9.      The term "Identify" when used in reference to a person means to provide the following information:

    a.      Full name;

    b.      Present or last known address; and

    c.      Present or last known telephone number.

10.    The terms "BTG's patents," "BTG patents," "BTG patent(s)-in-suit" and "patent(s)-in-suit" shall mean the United States patent or patents asserted against Defendants, whether it be United States Patent No. 5,712,979 ("'979 patent") entitled "Method and Apparatus for Attaching Navigational History Information to Universal Resource Locator Links on a World Wide Web page" or United States Letters Patent No. 5,717,860 ("'860 patent") entitled "Method and Apparatus for Tracking the Navigation Path of a User on the World Wide Web" or both the '979 and '860 patents.

11.    The term "WWW" shall mean the World Wide Web.

12.    The terms "online advertisement" or "online advertising" shall mean any advertisement placed on a World Wide Web ("WWW") site other than Defendants' WWW site including, but not limited to, banner ads, button ads, pop-ups, interstitials, e-mails, text links, HTML banners, rich media, video, audio, advertorials, toolbars, ad words, or screensavers that can direct a WWW user to one of Defendants' WWW sites and identify a portion of the WWW navigation path of the WWW user.

13.    "Affiliate Program(s)" shall mean the affiliate program(s) and/or associate program(s) described on any of Defendants' WWW sites, and any similar such programs currently or previously operated by Defendants.

14.    The term "Third Party Agencies" shall mean parties with whom Defendants have contracted to provide services related to Defendants' online business including, but not limited to, online advertising management companies, affiliate management companies, web measurement companies, LinkShare, BeFree and web auditor companies.

15.    The term "electronic commerce" shall mean commerce or commercial transactions conducted over the WWW, and shall include any features or technology of a WWW site, server, or database used to conduct commerce or commercial transactions.

16.    The phrase "transfer mechanism" means a hyperlink, an HTML meta refresh command, and/or a HTTP redirect command stored on a web site's computer or transmitted to a computer user's computer, so configured that after one is activated, clicked, or executed, Amazon WWW site content or an Amazon WWW page is delivered to the computer user's computer, without requiring any further action by the user.

17.    As used herein, the term "user navigation path tracking system" refers to any method or apparatus of tracking the navigation path of a user on the World Wide Web of the general type described in the Patents-in-Suit.

## Matters for Examination

Pursuant to Fed. R. Civ. P. 30(b)(6), AMAZON is requested to designate one or more officers, directors, managing agents, or other persons (including non-AMAZON employees) who consent to testify on AMAZON's behalf with respect to the following matters known or reasonably available to AMAZON:

1.   Defendants' document collection and production efforts including the following:

   a.   Defendants' search for and efforts to produce any documents or information in this lawsuit.

   b.   The location and search for any documents or information requested from Defendants by plaintiffs in this lawsuit.

   c.   The storage, location and manner in which Defendants' documents are kept;

   d.   The retention and destruction of Defendants' documents;

   e.   The identity of persons having Defendants' documents;

   f.   The Bates numbers or ranges of Defendants' documents, if such documents have been produced.

   g.   Defendants' efforts to find and produce emails.

   h.   Defendants' efforts to find and produce patent licenses, and all documents relating to those licenses including documents sufficient to show any royalties or compensation transferred or received by Defendants pursuant to any such licenses.

   i.   Defendants' efforts to find and produce documents that contain, refer or relate to narrative and/or technical descriptions of Defendants' systems, methods or apparatus (including software and/or computer programs) for:

      (i)   identifying a WWW site through any means (including but not limited to name of the site, the ownership information, numeric data, account information or any other identifying information) that refers or directs a WWW user to one of Defendants' WWW sites, or that provides a link to a WWW user to one of Defendants' WWW sites; and

> (ii) identifying information pertaining to referring WWW sites (or other information relating to WWW sites that contain a link to one of Defendants' WWW sites) or referring URLs or hypertext links;
>
> (iii) identifying information related to collecting, capturing, or gathering of information related to referrals or WWW traffic from a WWW site containing an online advertisement or from an Affiliate's WWW site to one of Defendants' WWW sites.

j.   Defendants' efforts to find and produce documents that contain, refer or relate to user manuals, software specifications, system specifications, or other documentation related to, or describing the operation of, software, computer code, source code, object code, or CGI scripts.

k.   Defendants' efforts to find and produce documents referring or relating to the operation of any databases or servers comprising or storing (a) information related to WWW traffic directed to any of Defendants' WWW sites, (b) information related to WWW sites comprising Defendants' online advertisements, and (c) information related to Defendants' Affiliate's WWW sites including, but not limited to, manuals and database specifications.

l.   Defendants' efforts to find and produce documents referring or relating to the systems, methods and apparatus by which (a) WWW sites (or identifying information related to the WWW sites) comprising Defendants' online advertising or (b) Defendants' Affiliate's WWW sites or Affiliate members, are identified by Defendant.

m.   Defendants' efforts to find and produce all documents referring or relating to exemplar logs of information logged on its web servers.

n.   Defendants' efforts to find and produce documents generated, created, or referred to by Defendant dated February 1998 to present.

o.   Information related to any person(s) or entity(ies) who searched for documents or information on Defendants' behalf in this lawsuit.

p.   Information relating to any person(s) or entity(ies) who prepared Defendants' answers to Plaintiffs' interrogatories and request for documents in this lawsuit.

2.   The following studies, analyses, research, or reports conducted by or for Defendants including, but not limited to:

a.   The success, benefits, advantages, features or efficacy of Affiliate Programs;

b.    The successes, advantages, benefits, features or efficacy of Defendants' online advertising, including, but not limited to, comparison of online advertising to other advertising methods or mediums.

c.    Any comparison of Defendants' Affiliate Program(s) to third party Affiliate Programs, including, but not limited to, any comparisons of features or technology.

d.    Any comparison of Defendants' online advertising to third parties' online advertising including but not limited to, any comparisons of features or technology used to track WWW traffic from an online advertisement to one of Defendants' WWW sites.

e.    The need, ability, benefits or value to track WWW traffic from an online advertisement, WWW site, or any other person, place or thing to one of Defendants' WWW sites.

3.    The steps or acts taken to:

a.    Prepare the source code, computer, object code, cgi scripts, manuals, software specifications, system specifications, server logs, and database logs produced in this litigation, including the identity of persons who performed those steps, and the identity of the sources from where the source code, server logs, and database logs came from.

b.    Prepare the user manuals, software specifications, system specifications, and other documentation related to, or describing the operation of, Defendants' software.

c.    Document and describe source code, object code or cgi scripts performed by Amazon, or by Amazon's employees and agents.

d.    Search for documents in Defendants' custody or control that describe or document Defendants' source code, object code and cgi scripts, including but not limited to any documents contained in Defendants' e-mail systems, servers, or clients.

4.    All the procedures Defendants use/have used to:

a.    Create performance requirements for software.

b.    Convert performance requirements into software specifications.

c.    Create software/source code.

5.    Steps and actions taken to:

      a.      Preserve, maintain and back up performance requirements for software.

      b.      Preserve, maintain and back up software specifications.

      c.      Preserve, maintain or back up software/source code.

6.      Steps and actions taken to:

      a.      Change or modify performance requirements for software.

      b.      Change or modify software.

      c.      Change or modify software/source code.

7.      For each of the actions in paragraphs 4, 5 and 6 above, whether they were performed internally or by third parties and the identity of the internal personnel and the third parties involved in the particular actions including dates when such personnel or third parties were involved in the particular actions.

8.      With respect to Defendants' online advertisements including, but not limited to, online advertisements on the Microsoft Shopping Network ("MSN"), American Online ("AOL") and Yahoo.com ("Yahoo"):

      a.      How Defendants track WWW traffic from an online advertisement to one of Defendants' WWW sites.

      b.      How Defendants' systems, methods and apparatus determine that a WWW user was referred, directed or linked to one of Defendants' WWW sites from another WWW site or other location on the WWW.

      c.      How Defendants' systems, methods and apparatus identify a WWW site that refers or directs or provides a link to a WWW user to one of Defendants' WWW sites.

      d.      How Defendants' systems, methods and apparatus identify any information relating to a WWW site (including but not limited to the name of the site, the owner of the site, account information, numeric data or any other identifying information) that refers or directs a WWW user to one of Defendants' WWW sites or that provides a link to a WWW user to one of Defendants' WWW sites.

      e.      How Defendants' systems, methods and apparatus monitor, identify, receive, evaluate, collect, capture, determine or gather information related to Defendants' online advertisements including, but not limited to, information related to who or what referred, directed or linked the WWW user to one of the Defendants' WWW sites, information related to the WWW site on which Defendants' online

advertisements are placed, or any other identifying or affiliation information related to the WWW site on which Defendants' online advertisements are placed.

f.  How Defendants' systems, methods and apparatus monitor, identify, receive, evaluate, capture, determine or gather information pertaining to who or what referred, directed or linked the WWW user from an online advertisement to one of Defendants' WWW sites, information relating to from where the WWW user was directed, referred or linked before arriving at one of Defendants' WWW sites, and any other identifying information relating to referring WWW sites or referring URLs and/or hypertext links.

g.  How Defendants and their systems, methods and apparatus identify, calculate and determine amounts of compensation, commissions, referral fees, bounties, or any other payments or monies owed for the cost of its online advertisements.

h.  How Defendants' databases or servers comprise or store:

   (i)   information related to WWW traffic directed to any of Defendants' WWW sites,

   (ii)  information related to tracking where a WWW user at one of Defendants' WWW sites came from, and

   (iii) information related to WWW sites comprising Defendants' online advertisements.

i.  The identity of any WWW sites comprising directories that list Defendants' online advertisements.

j.  Any articles, including webpage articles, authored by or for Defendants referring to Defendants' online advertising.

9.  With respect to the operation of Defendants' Affiliate Program(s) including, but not limited to, Affiliate, associate, or bounty programs:

a.  How Defendants track WWW traffic from a WWW site, an Affiliate member, or any person, place or thing to one of Defendants' WWW sites.

b.  How Defendants' systems, methods and apparatus determine that a WWW user was referred, directed or linked to one of Defendants' WWW sites from another WWW site, Affiliate member, or any other person, place, thing or location on the WWW.

c.  How Defendants' systems, methods and apparatus identify a WWW site (or any other information pertaining to a WWW site) or an Affiliate member that refers or

7

directs a WWW user to one of Defendants' WWW sites or that provides a link to a WWW user to one of Defendants' WWW sites.

d.    How Defendants' systems, methods and apparatus receive, identify, monitor, evaluate, collect, capture, determine or gather information related to a WWW site, Affiliate member or other person place or thing that referred, directed or linked a WWW user to one of Defendants' WWW sites, and information related to referrals or WWW traffic from a WWW site or an Affiliate member to one of Defendants' WWW sites.

e.    How Defendants' systems, methods and apparatus receive, identify, monitor, evaluate, collect, capture, determine or gather information pertaining to who or what referred, directed or linked a WWW user from a WWW site, Affiliate member or other person, place or thing to one of Defendants' WWW sites, information relating to from where the WWW user was directed, referred or linked before arriving at one of Defendants' WWW sites, and any other identifying information or referring URLs and/or referring hypertext links.

f.    How Defendants' systems, methods and apparatus identify referring Affiliate members, referring WWW sites, referring URLs and/or referring hypertext links.

g.    How Defendants' databases or servers comprise or store:

(i) information related to WWW traffic directed to any of Defendants' WWW sites,

(ii) information related to WWW sites comprising Defendants' Affiliate member links or Defendants' online advertisements, and

(iii) information related to Defendants' Affiliate members.

h.    The identity of any WWW sites comprising directories that list or identify Defendants' Affiliate Program(s).

i.    How Defendants and their systems, methods and apparatus identify, calculate and determine amounts of compensation, commission, referral fees bounties or any other type of payment owed to its Affiliate Program members.

j.    How Defendants identify, calculate or determine the amount of monies owed to Affiliate Program members.

10.    With respect to Defendants' online advertising and Affiliate Program(s) describe and identify in detail (including any actions taken by the listed items):

a.    The conception, reduction to practice, and diligence by Defendants for their online advertising and Affiliate Program(s).

b.      The conception, reduction to practice, and diligence for implementing, running and maintaining Defendants' systems, methods and apparatus for its online advertising and Affiliate Program(s).

c.      The investigation, research, conception, evaluation and development for Defendants' systems, methods and apparatus used in connection with its online advertising and Affiliate Program(s).

d.      All testing, analysis, trials, experiments or other work performed by Defendants, or of which Defendants are aware, to build any user navigation path tracking system or to track WWW traffic to one of Defendants' WWW sites.

e.      The substance of Defendants' due diligence investigation relating to the patents-in-suit prior to and after launching its Affiliate Program(s) and its online advertising.

f.      The substance of Defendants' due diligence investigation relating to any systems, methods or apparatus for tracking WWW traffic to one of Defendants' WWW sites or to build any user navigation path tracking system.

g.      Transfer mechanisms not stored on Defendants' computers, including the actions and processes that define or create such transfer mechanisms.

h.      Transfer mechanisms not stored on Defendants' computers, including the actions and processes that are carried out by Defendants' computers in response to the use of such transfer mechanisms.

i.      All database tables, records, queries, and joins that contain or refer to both of the following:

        (i)      any string contained in URLs received by your web servers, and

        (ii)     any information associated with any non-Amazon web site (including but not limited to MSN, Yahoo, AOL and any Affiliate member of Amazon), including but not limited to that non-Amazon WWW site's URL, its account information, its postal address, its IP address and its e-mail address.

j.      Every component of URLs received by your web servers and what each component represents and what they are used for.

k.      Every component of composite URLs received by your web servers and what each component represents and what they are used for.

11.     All steps and processes regarding:

a. How Defendants determine or determined, compute or computed, or reckon or reckoned any and all payments and credits to third parties, including without limitation MSN, AOL, Yahoo, and Affiliate members relating to online advertising or Affiliate Programs, and how Defendant determines the address or bank account to which to deliver any such payment or credit.

b. How Defendants generate e-mail messages to its Affiliates, including but not limited to generating or looking up of e-mail addresses of Defendants' Affiliates.

c. With respect to paragraph b. above, how Defendants customize any e-mail based on any characteristic of an Affiliate member, including but not limited to sending an e-mail message:

(i) to Affiliates whose rate of referring users to Defendants' websites has changed when compared to the Affiliate's historical norm, and

(ii) to Affiliates who have received a payment or credit significantly above or below payments representing the historical norm for the Affiliate's history.

12. With respect to Defendants' online advertising and Affiliate Program(s),

a. How and why Defendants review or police the WWW sites where Defendants' on-line advertisements are placed, and how and why Defendants review or police the websites of Defendants' Affiliate members.

b. How Defendants determine which of their on-line advertising campaigns are relatively more or less profitable than other online advertising campaigns.

c. How Defendants determine if their Affiliate Program(s) are profitable.

d. Why do Defendants place on-line advertisements?

e. Why do Defendants solicit or use Affiliate members?

f. The methods by which a "cid" (possibly also called a "campaign ID") is generated, assigned to a "campaign," and transmitted or delivered to Defendants' Affiliate members and/or to the WWW sites upon which Defendants' online advertisements are placed.

13. How Defendants use information related to the identity of any WWW site (or any other identifying information related to the WWW site including but not limited to name of the site, ownership information, numeric data, account information, or any other identifying information) that a user visited before arriving at Defendants' WWW sites to select the page content to be delivered to the user's web browser.

14.     Any computer processing performed by Defendants' computers in response to its HTTP referer field.

15.     Defendants' computer system, including but not limited to:

a.     The location, operation of, and model or version of each of Defendants' WWW servers involved in serving Defendants' web pages, and the core software operating system utilized by each WWW server.

b.     The operation of all software, computer code, source code, object code, or CGI scripts (collectively "software") related to or involved in tracking WWW traffic from an online advertisement, WWW site, Affiliate member, or other person, place, thing or location on the WWW to one of Defendants' WWW sites, or related to or involved in the monitoring, evaluating, collecting, receiving, capturing, determining, identifying or gathering of information related to tracking the WWW traffic including, but not limited to, tracking software, database software, commission or bounty software, identification software, traffic analysis software, WWW or web reimbursement software, advertising reimbursement software, and enrollment software.

c.     The operation of all software, computer code, source code, object code, or CGI scripts (collectively "software") related to or involved in identifying a WWW site that refers or directs a WWW user to one of Defendants' WWW sites, or related to or involved in the monitoring, evaluating, collecting, capturing, determining or gathering of information related to the referring WWW site including, but not limited to, tracking software, database software, commission or bounty software, identification software, traffic analysis software, WWW or Web measurement software, advertising management software, and enrollment software.

d.     The operation of all software, computer code, source code, object code, or CGI scripts (collectively "software") related to or involved in identifying any information related to a WWW site (including but not limited to the name of the site, ownership information, numeric data, account information, or any other identifying information) that refers or directs a WWW user to one of Defendants' WWW sites, or related to or involved in the monitoring, evaluating, collecting, receiving, capturing, determining or gathering of information related to the referring WWW site or other person, place or thing, including, but not limited to, tracking software, database software, commission or bounty software, identification software, traffic analysis software, WWW or Web measurement software, advertising management software, and enrollment software.

e.     The operation of all software, computer code, source code, object code, or CGI scripts (collectively "software") related to or involved in identifying an Affiliate member or any other identifying information related to a person, place or a thing that refers or directs a WWW user to one of Defendants' WWW sites, or related to or involved in the monitoring, evaluating, collecting, receiving, capturing,

determining or gathering of information related to the referring Affiliate member or other person, place or a thing, including, but not limited to, tracking software, database software, commission or bounty software, identification software, traffic analysis software, WWW or Web measurement software, advertising management software, and enrollment software.

f.      The systems, methods and apparatus by which (i) WWW sites comprising Defendants' online advertising or (ii) Defendants' Affiliate WWW sites (or Affiliate members), are identified by Defendant including, but not limited to, assigning identifying information to such WWW sites and Affiliate members and comparing that identifying information with information received at any of Defendants' WWW sites.

g.      The systems, methods and apparatus by which WWW sites comprising Defendants' online advertising, Defendants' Affiliate WWW sites, Defendants' Affiliate members, or any other information related to a person, place or thing are identified by Defendant including, but not limited to, assigning identifying information to such WWW sites, Affiliate members or person, place or thing and comparing the identifying information with information received at any of Defendants' WWW sites.

h.      The conception, design, development, reduction to practice, testing, or beta testing of Defendants' systems, methods and apparatus for identifying a WWW site, an Affiliate member or any other information related to a person, place or thing that refers or directs a WWW user to one of Defendants' WWW sites or that provides a link to a WWW user to one of Defendants' WWW sites including, but not limited to, Defendants' decision to develop, implement, or launch such systems, methods, and apparatus and Defendants' online advertising and Affiliate Program(s).

i.      The date Defendants' Affiliate Program(s) became commercially available, and the date Defendant first began identifying WWW sites, Affiliate members or any other information relating to a person, place or thing that refers or directs a WWW user to one of Defendants' WWW sites or that provides a link to WWW users to any of Defendants' WWW sites.

j.      The date Defendants first began identifying online advertisements, or any other information relating to a person, place or thing that refers or directs a WWW user to one of Defendants' WWW sites or that provides a link to WWW users to any of Defendants' WWW sites.

k.      Modifications, changes, or amendments to Defendants' systems, methods and apparatus for identifying a WWW site (or any other information relating to a WWW site including but not limited to the name of the site, ownership information, numeric data, account information, or any other identifying information), Defendants' online advertisements, Defendants' Affiliate Program

12

members, or any other identifying information related to a person, place or thing that refers or directs a WWW user to one of Defendants' WWW sites or provides a link to WWW users to any of Defendants' WWW sites.

16.    Defendants' communication with third parties, including:

a.    Communications between Defendants and third parties regarding Defendants' decision to pay to place online advertisements including, but not limited to, manuals, policies, mass mailings, agreements, contracts, brochures, formatting of links, formatting of URLs, and  know how.

b.    Communications about enrollment in Defendants' Affiliate Program(s) including, but not limited to, WWW pages on any of Defendants' WWW sites related to Affiliate Program's enrollment procedures, fees, commissions or other compensation.

c.    Communications about Defendants' online advertisements that refer or direct a WWW user to one of Defendants' WWW sites or that provide a link to WWW users to any of Defendants' WWW sites including, but not limited to, enrollment procedures, fees, commissions or other costs and compensation paid for such online advertisements.

d.    Defendants' advertising of its Affiliate Program(s) including, but not limited to recruitment and enrollment of Affiliate Program(s) members.

e.    Press releases, bulletins, videos, brochures, web pages, including archived web pages, promotional materials, commercial advertisements, announcements, materials produced, distributed, or used in connection with any in-house seminar, meeting or training session, articles, speeches, videos, presentations or interviews, both internal and external, that have been written and/or given by your employees, officers, directors or other of your representatives or agents, that refer or relate to Defendants' online advertising and Affiliate Program(s).

17.    Defendants' revenue, sales, profit, payments and/or expenditures associated, or reported in, with the following:

a.    Monthly, quarterly or semi-annual yearly expenditures regarding Defendants' online advertising and its Affiliate Program(s).

b.    The amount of royalties, commissions, bounties, or fees that Defendants have paid and expect to pay for (i) online advertising including but not limited to, payments made to MSN, AOL, and Yahoo and (ii) to Affiliate Program members.

c.    Revenue and profitability of Defendants' Affiliate Programs on a monthly, quarterly, and annual basis including, but not limited to sales volume, revenue, gross profit, operating profit, and net profit.

d.      Revenue and profitability of Defendants' online advertising on a monthly, quarterly, and annual basis including, but not limited to sales volume, revenue, gross profit, operating profit, and net profit.

e.      Defendants' accounting methods for sales, costs, cost allocations, and profits related to Defendants' WWW sites, its online advertising, and its Affiliate Program(s).

f.      Profit and loss statements, printouts, presentations, or other information setting forth or including gross profit figures for any of Defendants' online advertising.

g.      Profit and loss statements, printouts, presentations, or other information setting forth or including gross profit figures for any of Defendants' Affiliate Program(s).

h.      All revenues, profits, sales, and other compensation that Defendants have received, or expects to receive, as a result of its online advertising and Affiliate Program(s).

i.      Cost information concerning any user navigation path tracking system used by Defendants, including cost or expenses (fixed and variable) Defendants have incurred, is incurring, or expect to incur as a result of using, maintaining, running, operating and owning such system.

j.      Cost information concerning any system, method or apparatus Defendants used to track WWW traffic to one of Defendants' sites, including costs or expenses (fixed and variable) Defendants have incurred, is incurring, or expect to incur as a result of the use, maintenance, operation or ownership of them.

k.      Cost information concerning any system, method or apparatus Defendants used in connection with their online advertising and Affiliate Program(s), including costs and expenses (fixed and variable) that Defendants have incurred, is incurring or expect to incur as a result of using, maintaining and owning them.

l.      Any monies, fees, royalties, payments or other consideration provided to any third party or Third Party Agency to develop, run or maintain any system for tracking WWW traffic to one of Defendants' WWW sites or any user navigation path tracking system.

18.    Defendants' analyses of sales made to customers subsequent to a referral of a customer to one of Defendants' WWW sites from a WWW site containing Defendants' online advertisement.

a.      Budgeting and preparing with respect to online advertising or Affiliate Program(s).

      b.      Projections, forecasts, market share reports, business plans, financial plans, strategic plans, fiscal plans, marketing strategies and plans, sales strategies and plans, and advertising strategies and plans which refer or relate to the actual or anticipated sales or profits from any online advertising or Affiliate Program(s).

19.    Defendants' analysis of sales made to customers subsequent to a referral of a customer to one of Defendants' WWW sites from a WWW site containing a link from Defendants' Affiliate Program(s) or members.

      a.      Budgeting and preparing with respect to online advertising or Affiliate Program(s).

      b.      Projections, forecasts, market share reports, business plans, financial plans, strategic plans, fiscal plans, marketing strategies and plans, sales strategies and plans, and advertising strategies and plans which refer or relate to the actual or anticipated sales or profits from any online advertising or Affiliate Program(s).

20.    Defendants' online advertising and Affiliate Program(s) including the following objects, occurrences or transactions or subjects:

      a.      Agreements with Third Party Agencies or publishers of WWW sites, other than Affiliate WWW sites, regarding placement of Defendants' online advertising.

      b.      Agreements or contracts between Defendants and Third Party Agencies related to online advertising, Affiliate Programs, web tracking or navigation, web measurement, server management, or bounty or commission payments and the terms of those agreements and the services provided to Defendants.

      c.      The pricing or purchasing of online advertisements, and online advertisement pricing or purchasing models including, but not limited to cost per view, cost per impression, cost per thousand, CPM, price per rotation, keyword pricing, cost per click, price per click-through, price or percentage per purchase or sale, commission and flat fee models.

      d.      Any analyses or reports regarding pricing or purchasing of online advertising.

      e.      The types of online advertising utilized by Defendants including, but not limited to, banner ads, button ads, pop-ups, interstitials, e-mails, text links, HTML banners, rich media, video, audio, advertorials, toolbars, ad words, or screensavers.

      f.      The number and identity of WWW sites upon which Defendants' online advertisements have been placed, or are expected to be placed, other than that utilized in Affiliate Programs, and the number of such online advertisements placed.

g.    Defendants' decisions to place online advertising on WWW sites including, but not limited to, decisions to pay WWW sites for online advertising and communications between Defendant and Third Party Agencies related to targeting of online advertising.

h.    Defendants' online advertising strategies and plans.

i.    The cost of each of Defendants' online advertisements on an annual basis since January 1995 and exactly how that cost is determined including but not limited to "cost per click" and commissions based on sales.

j.    The amount of fees, commissions, or other compensation you paid to third parties, Third Party Agencies or publishers of WWW sites for online advertising since January 1, 1995.

k.    The number of items sold through, via, or as a result of Defendants' online advertising on a monthly, and annual basis.

l.    The amount of fees, commissions or other compensation you paid to Third Party Agencies for the work they provided or are expected to provide relating to your online advertising and Affiliate Programs.

m.    Every step, process, procedure, task, and service Third Party Agencies perform or provide you with respect to your online advertising and Affiliate Program(s).

21.    Defendants' financial condition as described in the following documents:

a.    Defendants' annual reports, prospectuses, proxy statements and Form 10-K and Form 10-Q reports from January 1, 1995 to the present.

b.    General ledgers of Defendants from 1998 to the present.

22.    Defendants' Affiliate Program(s) including the following objects, occurrences or transactions or subjects:

a.    Whether the Affiliate Program(s) are managed, run, and controlled internally or by third parties and exactly what any third parties do to assist with the programs.

b.    The number of Defendants' Affiliates on a monthly, annual, and quarterly basis since the inception of its programs to present.

c.    The number of items sold through, via, or as a result of Defendants' Affiliate Programs on a monthly, quarterly, and annual basis.

    d.    The amount of fees, commissions, or other compensation you paid members of your Affiliate Program(s), since January 1, 1995, on an annual, semiannual, quarterly, or monthly basis.

    e.    The cost of Defendants' Affiliate Program(s) on an annual basis since January 1995 and exactly how that cost is determined.

23.    Defendants' knowledge and awareness of BTG, Tucows or Infonautics and their technologies including, but not limited to:

    a.    Defendants' knowledge and awareness of the patents-in-suit, including:

        i.    The date and circumstances upon which Defendants first became aware of the patents-in-suit; and

        ii.    Analyses by Defendants of the invalidity, unenforceability or infringement/non-infringement of the patents-in-suit, including any analysis performed prior to the filing of this lawsuit;

    b.    Defendants' attempts or plans to design around the claims of the patents-in-suit;

    c.    Communications or correspondence between Defendant and BTG, Tucows, or Infonautics related to Affiliate Programs, online advertising or licensing of the patents-in-suit; and

    d.    Any acts or actions taken or performed by BTG, Tucows, or Infonautics that Defendants have relied on with respect to BTG, Tucows, or Infonautics' technologies or patents, including the person(s) relying on such acts or actions and the subsequent acts or actions taken or performed by such person(s).

    e.    Articles, press releases, web pages, or bulletins referring or relating to BTG, including but not limited to those referring or relating to BTG's, Infonautics' or Tucows' interest in the patent(s)-in-suit in Defendants' possession.

    f.    Communication made to any third parties regarding this litigation including, but not limited to, communications with Third Party Agencies, brokers, investors, potential investors, investment bankers, auditors, accountants, state or federal regulatory agencies, or analysts, former employees of Defendants and Plaintiffs.

    g.    Any opinions of counsel, including draft or preliminary opinions, obtained with respect to the infringement, validity or enforceability of the BTG patents-in-suit.

    h.    The features or qualities of the patents-in-suit as compared to products, software or technologies used by Defendants, any of its competitors or any other third party.

    i.      The results of any enforceability searches, infringement searches, prior art searches or other searches or studies relating to the patents-in-suit, including any copies of patents, publications or prior art.

    j.      Any communications or opinions of officers, directors and/or employees of yours with respect to infringement, validity or enforceability of the patents-in-suit.

    k.      Defendants' affirmative defenses and counterclaims set forth in your Answer and/or Counterclaim to the Complaint in the above-referenced action.

24.    Any United States or foreign patents, and patent applications owned, controlled or filed by you that relate to electronic commerce technologies including, but not limited to, patents, patent applications and prior art searches relating to (a) Affiliate Programs, (b) WWW tracking or navigation, (c) features of any of Defendants' websites, (d) online advertising, or (e) bounty payments.

25.    Defendants' policies on licensing or cross-licensing patents related to electronic commerce or WWW sites and any (i) patent licenses, cross-licenses, offers to license, agreements, or contracts ("licenses") related to electronic commerce, Affiliate Programs, online advertising, WWW sites, web navigation or web tracking, (ii) amendments to those licenses, (iii) documents referring or relating to negotiations of those licenses, and (iv) royalties or other compensation transferred or received by Defendant pursuant to any such licenses.

26.    Any technical information, know how, software, or source code exchanged between Defendants and Third Party Agencies including, but not limited to: (a) material referring or relating to Defendants' WWW sites, Defendants' online advertisements and Defendants' Affiliate Program(s).

27.    With respect to Defendants' current and former employees:

    a.      The identification of former and current employees with knowledge of how Defendants tracked/track WWW traffic to one of Defendants' WWW sites.

    b.      The identification of any current or former employees of Defendants with knowledge relating to the patents-in-suit.

    c.      The identification of any current or former employees of Defendants with knowledge of any navigation path tracking system used by or on behalf of Defendants.

    d.      The identification of any current or former employees who managed Defendants' online advertising and Affiliate Program(s).

    e.      The identification of any current or former employees of Defendants who was involved with creating, maintaining, and using any methods, systems and

apparatus used by Defendants in connection with its online advertising and Affiliate Program(s).

f.   The identification of any current or former employees of Defendants with knowledge of the services that Third Party Agencies provided to Defendants in connection with its online advertising and Affiliate Program(s).

g.   Any investigation, research or analysis done by current or former employees of Defendants pertaining to the inventions claimed or disclosed by the patents-in-suit.

28.   Any non-infringing substitute or alternative to any alleged invention claimed or disclosed in the patents in suit of which Defendants are aware or have been made aware of by any person or entity.

29.   Defendants' awareness of any third party's promotion or sale of any user navigation path tracking system or service.

30.   Defendants' awareness of any third party's promotion or sale of any system, method or apparatus to track WWW traffic to a WWW site.

31.   Defendants' awareness of any third party who has used or is using any system, method or apparatus to track WWW traffic to a WWW site or who has used or is using any user navigation path tracking system or service.

32.   All information related to Defendants' knowledge, claims or contentions that any third party tracked the navigation path of a user on the Internet or tracked WWW traffic to another WWW site prior to September 20, 1995.

33.   All information related to any entity funded by Defendants to perform research, investigate, study, analyze, develop or commercialize the tracking of the navigational path of a user on the Internet or to track WWW traffic to another WWW site.

34.   The substance and factual support of Defendants' answers to Plaintiff's interrogatories in this lawsuit.

35.   The claims, allegations and defenses set forth in your Answer to the Complaint and your Counterclaims including but not limited to Defendants' claims that it does not infringe the patents in suit (either directly, contributorily, or through active inducement or combination thereof).

36.   The substance and factual support for Defendants' contentions and defenses that Defendants' infringement is not willful, deliberate, or intentional.

37.   The basis, if any for Defendants' contentions that the '860 or '979 patents are invalid and/or unenforceable.

38.    Defendants' advertising strategy and factors considered in evaluating and making decisions relating to advertising.

39.    All efforts by Defendants to advertise, market, promote or recruit for its Associates Program.

40.    All public statements that Defendants, its employees, or representatives, have made that its Associates Program was the first on the WWW.

41.    All public statements that Defendants, its employees, or representatives, have made that its Associates Program is the largest on the WWW.

42.    All public statements that Defendants, its employees, or representatives, have made regarding the success of its Associates Program and online advertising.

43.    The success of Defendants' Associate Program and online advertising.

44.    Whether Defendants construction used to determine if any of Plaintiff's products, processes, methods, systems or apparatus do not infringe any claimed alleged inventions of the patents-in-suit or that the patents-in-suit are invalid or unenforceable changed, amended, or altered during the course of this litigation.

45.    The basis, if any, for Defendant construing the patents-in-suit in a manner that any Defendants' products, processes, methods, apparatus or systems do not infringe the claimed inventions of the patents in suit.

46.    Any investigation, research or analysis pertaining to the inventions claimed or disclosed by the patents-in-suit.

47.    Defendants' U.S. Patent No. 6,029,141 (the '141 patent) and all related patents and patent applications including, but not limited to:

    a.    Defendants' decision to file the '141 patent application(s);

    b.    The preparation, filing and prosecution of the '141 patent application(s);

    c.    Defendants' licensing of the '141 patent, including all negotiations or attempts to license the '141 patent;

    d.    The identification of all Defendants' computers systems, software, hardware, products or processes that are covered by one or more claims of the '141 patent;

    e.    The conception and reduction to practice of the invention disclosed in the '141 patent;

     f.       Any valuation or other analysis of the value or worth of the '141 patent; and

     g.      Defendants' knowledge and awareness of the references cited, disclosed or referenced during the prosecution of the '141 patent application including, but not limited to analysis of those references.

     h.      The location and identity of all files and documents related to the '141 patent.

     i.       The location and identify of all files and documents related to the prosecution of the '141 patent.

     j.       All prior art identified, reviewed, consulted, and discussed during the prosecution of the '141 patent.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of November, 2005, the attached **NOTICE OF DEPOSITION OF AMAZON.COM, INC. AND AMAZON SERVICES, INC. PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)** was served upon the below-named defendants at the address and in the manner indicated:

Josy W. Ingersoll, Esquire                                    <u>HAND DELIVERY</u>
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Jeffrey S. Love, Esquire                                    <u>VIA FEDERAL EXPRESS</u>
Klarquist, Sparkman, LLP
One World Trade Center, Suite 1600
121 S.W. Salmon Street
Portland, OR  97204

David J. Margules, Esquire                                    <u>HAND DELIVERY</u>
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE  19801

John F. Luman, III, Esquire                                    <u>VIA FEDERAL EXPRESS</u>
Bracewell & Giuliani LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002-2781


                                    */s/ Tiffany Geyer Lydon*
                                    _____
                                    Tiffany Geyer Lydon