# ASHBY & GEDDES

**ATTORNEYS AND COUNSELLORS AT LAW**

**222 DELAWARE AVENUE**

**P. O. BOX 1150**

**WILMINGTON, DELAWARE 19899**

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

November 15, 2005

The Honorable Sue L. Robinson
United States District Court
844 North Kind Street,
Wilmington, DE 19801

> RE:  *BTG International Inc. v. Amazon.com, Inc.*
>      C.A. No. 04-1264-SLR

Dear Chief Judge Robinson:

At the discovery conference on November 2, 2005, the defendants challenged BTG's assertion of privilege as to two categories of documents. The first category involves communications between non-lawyers undertaken at the instruction of an attorney. For BTG, these communications were made either to seek legal advice, or at the direction of an in-house counsel for the purpose of giving legal advice to BTG. The second category involves communications between a party and third-party consultants. With respect to this category, two of the third-parties listed on BTG's privilege log are non-testifying experts who were hired to assist counsel with an infringement analysis of the patents-in-suit. The other third-parties were hired to assist BTG with its public relations strategy for this lawsuit.

After hearing from the parties, the Court directed them to submit a short letter providing one or two cases addressing each of the two categories of documents described above. The Court also advised the parties that the same standard should apply to each party: "But I just want to make sure that we're playing on a level playing field and that we all treat the same kind of documents the same way." (11/2/05 Transcript at 26)

The cases cited below (and enclosed for the Court's convenience) demonstrate that BTG's assertion of privilege was proper. And, since Amazon.com included documents from both categories on its own privilege log (as described below), the Court should deny the defendants' challenge to BTG's assertion of privilege as to documents in each category in order to maintain a "level playing field."[1]

---

[1] The Court also requested that the parties further develop the facts pertaining to documents that may have been held at a Tucows facility in the King of Prussia, Pennsylvania area. Plaintiffs are investigating these facts and hope to be able to provide them to the Court by Tuesday, November 22, 2005.

The Honorable Sue L. Robinson
November 15, 2005
Page 2

## Communications between Non-Lawyers at BTG [2]

The primary purpose of the BTG privileged communications between non-lawyers was to seek legal advice from BTG's in-house counsel and to assist counsel in giving legal advice with respect to BTG's licensing, commercialization and enforcement efforts for the patents-in-suit (the project related to these communications was known internally at BTG as "Web Nav"). The BTG employees identified on its privilege log all worked on the Web Nav project and, at times, worked at the direction of BTG's in-house attorney, Brad Ditty. Many of the withheld communications relate to BTG's investigations of potential licensees or infringers, licensing strategy, acquisition of the patents-in-suit, potential damages theories, and information to be presented to BTG's Board of Directors in order to obtain approval to file this lawsuit. Each of the non-lawyers participated in gathering and relaying such information necessary for BTG's counsel to give effective legal advice regarding the project. These communications are privileged because they were made specifically for the purpose of obtaining legal services for the corporation and were subsequently conveyed to BTG's in-house counsel. *See Eutectic Corp v. Metco, Inc.*, 61 F.R.D. 35, 39 (E.D.N.Y. 1973).

Moreover, in gathering and relaying such information to BTG's in-house counsel, the Web Nav team sought legal advice regarding the Web Nav project. These communications demonstrate an ongoing implied request for legal advice relating to the project. Indeed, Delaware has recognized that communications intended to keep in-house counsel apprised of continuing business developments can constitute an implied request for legal advice and may be privileged without even having explicit direction from counsel. *See Hercules, Inc. v. Exxon Corp.*, 434 F. Supp. 136, 144 (D. Del. 1977). As such, all of the withheld documents on BTG's log between non-lawyers are privileged.

## Communications with Third Party Consultants [3]

1. BTG's communications with its non-testifying experts

BTG's in-house counsel hired expert consultants Patent Logistics and Serissa Research to provide technical analyses of the claims of the patents with potentially infringing

---

[2] This is the second time Defendants have raised this issue with the Court. On July 6, the Court ordered that all of the parties to this suit (at that time there were four defendants) amend their privilege logs to identify the attorney implicated in any communications between non-lawyers. In accordance with that order, BTG revised its log to identify the particular attorneys implicated in all such communications. Amazon attempted to make the same revisions, but to date has failed to properly identify on its log the particular attorneys implicated in its non-lawyer communications. Despite Amazon's failure, and the fact that it claims its own identical category of communications is privileged, it now joins Overstock in claiming that BTG's non-lawyer communications should be treated differently from its own. Overstock has been spearheading this argument because it only has five entries on its privilege log—all of which are internal memoranda that do not even identify a recipient of the communication—and knows it largely is immune from any potential adverse ruling on the issue as a result of its minimal entries.

[3] Amazon also logged privileged communications with third-party consultants, including (1) emails from a non-lawyer to third-parties at Stanford and Columbia University that were copied to a lawyer; and (2) communications between a lawyer and an "Amazon agent."

The Honorable Sue L. Robinson
November 15, 2005
Page 3

systems/programs. Both of these experts were hired by BTG with written and executed retainer agreements. Moreover, they worked at the direction and under the supervision of BTG's in-house attorneys.[4]  The infringement analyses were necessary for BTG's in-house counsel to provide legal advice to BTG relating to licensing, commercialization and enforcement of the patents-in-suit. Delaware has recognized that such communications with an agent employed by attorneys are privileged. *See Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F. Supp. 1429, 1446 (D. Del. 1989). Furthermore, these non-testifying experts were hired by BTG in anticipation of litigation and, as such, communications between them and BTG are protected under the work product doctrine. Fed. R. Civ. P. 26(d).

2.    BTG's communications with its public relations consultants

Taylor Rafferty and Firefly are public relations consultants who have been on retainer with BTG for several years and are bound by nondisclosure agreements. Here, BTG communicated with them to assist with legal advice regarding communications about this lawsuit. Specifically, these consultants assisted BTG's attorneys and the Web Nav team (as an extension of BTG's in-house counsel) with preparing press releases, statements for release, talking points and Q & A models. In assisting with these matters, Taylor Rafferty and Firefly participated in many communications with BTG's in-house and outside litigation counsel (Robins, Kaplan, Miller & Ciresi L.L.P.) and members of the Web Nav team. They also assisted BTG's counsel in giving legal advice on the timing of bringing suit, statements that could be made about the claims of the patents, statements that could be made about potential damages and statements about potential defendants. All of these communications are protected under both the attorney-client privilege and the work product doctrine because they were made to facilitate the rendition of legal services to BTG for the sole purpose of this lawsuit. *See Copper Market Antitrust Litigation v. Sumitomo Corp.*, 200 F.R.D. 213 (S.D.N.Y. 2001).

For the foregoing reasons, each of the communications between non-lawyer BTG employees and the communications between BTG and its third-party consultants are protected by either the attorney-client privilege, the work product doctrine, or both.

Respectfully,

/s/ *John G. Day*

John G. Day (I.D. #2403)

JGD: nml
Enclosures
160081.1

---

[4] At the November 2, 2005 hearing, counsel for Overstock suggested that while communications between an in-house attorney and an in-house technical expert may be privileged, communications between an in-house counsel and an outside technical expert retained to help in-house counsel grasp technical issues for the purpose of providing legal advice regarding those technical issues, can never be privileged solely because they are "outside" communications. That argument is inherently legally incorrect, and also exalts form over substance.