# TAB 1

## JDay

| | |
|---|---|
| **From:** | SBalick |
| **Sent:** | Tuesday, January 25, 2005 3:04 PM |
| **To:** | 'slr_civil@ded.uscourts.gov' |
| **Cc:** | 'jingersoll@ycst.com'; 'jshaw@ycst.com'; 'kkeller@ycst.com'; 'kristin.cleveland@klarquist.com'; 'jeffrey.love@klarquist.com'; 'james.geringer@klarquist.com'; 'rsmith@mnat.com'; 'khealey@mnat.com'; 'jrc@kvn.com'; 'wjt@kvn.com'; 'wade@rlf.com'; 'fineman@rlf.com'; 'rniro@nshn.com'; 'gasey@nshn.com'; 'greenspoon@nshn.com'; 'flachsbart@nshn.com'; 'lgkurland@bryancave.com'; 'dmargules@bmf-law.com'; 'kpascale@bmf-law.com'; 'glenn.ballard@bracepatt.com'; 'john.luman@bracepatt.com'; 'rjschutz@rkmc.com'; 'namacleod@rkmc.com'; 'macollyard@rkmc.com'; JDay |
| **Subject:** | BTG International Inc. v. Amazon.com, Inc., et al., C.A. No. 04-1264-SLR |

Dear Chief Judge Robinson:

I represent the plaintiff ("BTG") in the above action, in which Ms. DiMeo indicated on January 6, 2005 that rather than conduct a teleconference concerning the parties' protective order dispute, the Court would prefer to receive e-mails from the parties setting forth "their version of the dispute." Counsel accordingly agreed to submit simultaneous two-page e-mails to the Court on January 18, 2005. I am writing with a follow-up request in response to defendants' e-mail -- which was submitted in a manner contrary to our understanding of the parties' agreement -- as well as to make certain that the Court was not confused by defendants' incorrect characterization of one aspect of BTG's position.

1.      When the parties conferred concerning the manner and timing of our submissions, defense counsel said they planned to submit supporting attachments with their e-mail -- specifically, a few unreported cases and one other unidentified document. We responded that aside from courtesy copies of unreported cases, which easily could be dealt with simply by offering to provide copies if the Court wanted them, we thought it inappropriate to include substantive attachments -- both because Your Honor's web site expressly forbids it, and because of our belief that the whole point of e-mail submissions is for the parties to succinctly provide their positions and not burden the Court with more voluminous submissions unless specifically requested/authorized to do so. Defense counsel checked the Court's web site, agreed that attachments are impermissible, and thanked us for pointing out the prohibition. There were no further conversations concerning the issue, and we believed that the parties had an agreement as to what would be submitted. In any event, we never received any follow-up communication from defense counsel suggesting otherwise.

On January 18, BTG submitted a two-page explanation of its position on the issues, with no attachments or extrinsic supporting documents. Defendants, however, in addition to their two-page e-mail, also filed a supporting appendix with the Clerk of the Court containing: (i) an order from <u>MLMC v. Airtouch</u>; (ii) a transcript from <u>Matsushita v. Cinram</u>; (iii) a declaration from an employee of defendant Amazon.com; (iv) an order from <u>Pitney Bowes v. Stamps.com</u>; and (v) a draft protective order. We were surprised at being blind-sided this way, since we believed we had an understanding that the parties would be submitting simultaneous stand-alone submissions; since we never heard a word to the contrary from defendants after they thanked us for pointing out the Court's "no attachments" rule; and since it is difficult to believe that the Court ever intended for its prohibition against attachments to be easily evaded simply by detaching the attachments and separately filing them with the Clerk of the Court.

It is not BTG's goal to embarrass the defendants or to further complicate the resolution of these two disputes, and we do not intend to move to strike defendants' supporting papers or otherwise make an issue of their filing. However, it is important to us that the Court understand why BTG's submission appears so "thin" by comparison, and that Your Honor not incorrectly conclude that we took the matter lightly. Additionally, we respectfully would like to make one request in connection with defendants' extraneous submissions.

We do not read defendants' authorities as suggesting that Your Honor intended therein to announce a bright-line, objective standard for determining on an automatic basis whether a given individual should or should not be permitted access to confidential materials. Rather, we assume that each case turns on its own facts, taking into account, *inter alia*: the proposed designee; the nature of his or her duties; the nature of his or her employer's business, staffing, and resources; the interrelationship of the producing and receiving companies, including whether and to what extent they are competitors; and a balancing of the companies' respective interests, including prejudice to the producing company, the receiving company's level of need, and the availability of reasonable alternatives or adequate safeguards/limitations.

In the <u>Matsushita v. Cinram</u> transcript submitted by defendants, Your Honor described having found it beneficial to make a decision about a proposed designee after conducting an hour-long "mini-trial" that offers an opportunity to observe

1

the designee's demeanor and hear him or her subjected to cross-examination (D.I. , . at tab 2, pages 48-49). In light of the importance to BTG of having Mr. Ditty be permitted access to confidential information in this case, we respectfully request that the Court convene such a hearing in order to evaluate the appropriateness of our proposal.

2.      Defendants complain in their e-mail that BTG's proposal "seems to allow BTG to sue defendants about current processes and systems just one year after this litigation concludes." Defendants have misread our proposal, and we respectfully want to make certain that they have not misled the Court as to what we were offering.

BTG's e-mail to the Court stated, in pertinent part, that "[i]f Mr. Ditty prosecutes any patent applications in the area of worldwide web ... tracking after any such confidential information has been disclosed to him, then BTG will be precluded from asserting any patents resulting from such applications against defendants in connection with any activities by defendants which occur during the pendency of this lawsuit and for a period of one year thereafter." In other words, if Mr. Ditty prosecutes web tracking patents after being given access to "outside counsel eyes only" information, then as to all conduct by defendants at any time during the pendency of this lawsuit and for a full year thereafter, BTG would be ***forever precluded*** from asserting the resulting patents against defendants.

\*      \*      \*      \*      \*

We appreciate Your Honor's consideration of this response, and we will be available at the Court's convenience in the event Your Honor wishes to discuss it further.

Respectfully,

Steven J. Balick
Ashby & Geddes
302-654-1888
sbalick@ashby-geddes.com