*DOCUMENT NO. 298*
*REDACTED VERSION FOR PUBLIC INSPECTION*

November 15, 2005

<u>*Via Electronic Filing*</u>                                                                                      <u>**FILED UNDER SEAL**</u>

The Honorable Sue L. Robinson
United States District Court
844 North King Street
Wilmington, DE 19801

        RE:    *BTG International, Inc., et al. v. Amazon.com, Inc., et al.,*
                  D. Del., C.A. No. 04-1264-SLR

Dear Chief Judge Robinson:

      On behalf of Defendants Amazon.com, Inc., Amazon Services, Inc., and Overstock.com, Inc., we submit this letter in connection with the additional briefing you requested at the November 2, 2005 discovery conference on several issues related to Plaintiffs' privilege log assertions.

1. **The Tucows' Documents Left in the Possession of a Third Party, Alacritude, Are *Not* <u>Entitled to Protection Under BTG's Asserted Attorney-Client Privilege</u>**

      Plaintiffs have asserted that the documents shared between Plaintiff BTG and Infonautics/Tucows, are protected as "attorney client privilege" material subject to the common interest doctrine. This assertion, however, requires that the underlying attorney-client privilege be maintained. In the course of discovery, Defendants found out what BTG must have known all along: Infonautics/Tucows did not maintain physical possession of the allegedly "privileged" documents. Instead, it left them in the possession of a third party, Alacritude, for more than a year. *See* Exhibit A, Tucows' Brenda Lazare's ("Lazare") uncertified Dep. Tr. at 23:14-24:13; *see also* Exhibit B, BTG's Scott Williams' ("Williams") uncertified Dep. Tr. at 81:8-16.

      In August 2002, Infonautics/Tucows sold the "eLibrary" and related businesses of the former Infonautics entity to a company called Alacritude. Included in the sale were physical equipment, human resources, and a sublet to the Infonautics' King-of-Prussia facility. *See* Exhibit A at 29:13-20; *see also* Exhibits C (introduced as deposition Exhibit 101) and D (introduced as deposition Exhibit 110). As testified to by several of the named inventors, the patents-in-suit relate to the eLibrary technology. BTG recognized as much in an August 16, 2002 email between BTG's Bryan Yearwood and Scott Williams commenting on the sale of the eLibrary and other technology to Alacritude: "I hope they did not sell the patents too." Exhibit D.

      In October 2002, BTG and Infonautics/Tucows entered into a commercialization agreement regarding the patents in suit. At some point thereafter BTG requested that Infonautics/Tucows

REDACTED VERSION – PUBLICLY FILED

The Honorable Sue L. Robinson
November 15, 2005
Page 2

documents, because they were in the possession of Alacritude – maintained in a file room accessible to Alacritude employees. *See* Exhibit B at 81:8-86:24. Tucows worked with an Alacritude employee to allow BTG employees access to the Alacritude King of Prussia Facility. *Id.* In late summer or fall 2003, <u>more than a year after Tucows sold the technology to Alacritude</u>, BTG employees were given access to the Alacritude King of Prussia facility and the documents by Scott Bergberg, an Alacritude employee, and allowed to take about two carloads of documents. *See id.*; Exhibit E (introduced as deposition Exhibit 132)(showing December 12, 2003, email communication from BTG's Brad Ditty to Scott Bernberg at Alacritude email address sbernberg@alacritude.com); Exhibit F (introduced as deposition Exhibit 133) at 2 (showing Scott Bernberg under the heading "Key Personnel" at Alacritude during 2002-03 and his email address as sbernberg@alacritude.com); Exhibit G, BTG's Brady Ditty's ("Ditty") uncertified Dep. Tr. at 129-133 (discussing exhibits 132 and 133 and his trip to Alacritude to collect documents).

By leaving the documents in the possession of a third party, Alacritude, Infonautics/Tucows waived the underlying attorney client privilege.[1] As a result, the documents cannot now be protected under a "common interest" doctrine. *See United States v. Bay State Ambulance and Hosp. Rental Serv. Inc.*, 874 F.2d 20, 28 (1st Cir. 1989) (stating that for the common interest privilege to apply, the party asserting the privilege must show that the underlying privilege has not been waived).

The attorney-client privilege "has its basis in the confidential nature of the communication and the reason for the privilege ordinarily ceases to exist if confidentiality is destroyed by voluntary disclosure to a third person." 8 C.A. Wright, A.R. Miller & R.L. Marcus, FEDERAL PRACTICE AND PROCEDURE § 2024 (2d Ed. 1994); *see also In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir. 1989) ("If a client wishes to preserve the privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crown jewels."); *Jarvis, Inc. v. American Tel. & Tel. Co.*, 84 F.R.D. 286 (D.C. Colo. 1979) (holding that documents kept in files to which third parties routinely had access were not privileged). A party waives any attorney-client privilege that might attach to documents by leaving the documents in the possession of a third party. *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2003 U.S. Dist. LEXIS 10001 at 16 (W.D.N.Y. 2003) (Exhibit I) (ruling that the defendants could not claim the attorney-client privilege or work-product protection with respect to the documents that were left in the possession of the defendants' former subsidiary after it was purchased by the plaintiff); *see also In re Grand Jury*, 734 F. Supp. 1207, 1213 (E.D. Va. 1990) (holding that by leaving documents in the possession of a subsidiary after the subsidiary was sold, the movant waived the attorney-client privilege with respect to those documents).

In *Robbins & Myers, Inc. v. J.M. Huber Corp.*, Robbins & Myers ("R&M") purchased the stock of Flow Control Equipment, Inc. ("FCE") from J.M. Huber Corporation ("Huber"). *Robbins & Myers, Inc.*, 2003 U.S. Dist. LEXIS 10001 at 3. At the time of the sale, FCE was a wholly-owned subsidiary of Huber. *Id.* at 4 n.2. Subsequently, R&M filed suit against Huber alleging that Huber

---

[1] Based on the discovery developed to date, Defendants believe that the record of waiver is clear. During the 30(b)(6) deposition of Tucows, on October 28, 2005, Defendants requested the agreement between Tucows and Alacritude reflecting the sale of assets. To date, Plaintiffs have not produced it. Furthermore, during a meet and confer on this issue, Plaintiffs claimed that they needed an additional week to have a sufficient opportunity to explore the facts related to this issue. To the extent Plaintiffs come up with any "new" facts over the next week, Defendants request the opportunity to supplement this letter.

The Honorable Sue L. Robinson
November 15, 2005
Page 3

had fraudulently induced R&M to purchase FCE. *Id.* at 3-4. Huber attempted to assert the attorney-client privilege with respect to any documents it may have left in the possession of FCE after it had been purchased by R&M, and R&M filed a motion to compel such documents. *Id.* at 8. The court held that Huber waived any attorney-client privilege that otherwise might have attached by leaving the documents in the possession of FCE after FCE was no longer affiliated with Huber. *Id.* at 16.

The facts present in this case are analogous to the facts in *Robbins & Myers, Inc.* In this case, Tucows/Infonautics stored documents relevant to the patents-in-suit in their offices located in King of Prussia, Pennsylvania. On August 16, 2002, Tucows/Infonautics sold the technology for its research and reference services eLibrary and Encyclopedia.com to Alacritude, L.L.C., a company with no affiliation to Tucows/Infonautics. *See* Exhibit C at 1; *see also* Exhibit A at 23:14-24:13. As part of the sale, Alacritude agreed to maintain the online services in the former Tucows/Infonautics offices in King of Prussia, the same offices that housed the documents in dispute. *Id.* Indeed, Ms. Lazare testified that Tucows/Infonautics' offices in King of Prussia were transferred to Alacritude as follows:

> Q. I know. It does sound bad. I was – did you discuss in the negotiations, whether physical offices and/or the lease for those physical offices would be included in the sale?
>
> A. Yes.
>
> Q. And were they included in the sale?
>
> A. There was a lease in the – there was a sub lease in the sale, if I recall correctly.

*See* Exhibit A at 29:13-20. Accordingly, as of August 16, 2002, Tucows/Infonautics was no longer in possession of the documents in dispute. Instead, those documents were in the possession and control of Alacritude.

After transferring possession of the office space in King of Prussia, Tucows/Infonautics made no attempt to retrieve the documents from Alacritude. *See* Exhibit B at 81:8-16 (noting that the documents in dispute were located in Alacritude's King of Prussia office until almost a year after Tucows/Infonautics sold the patents-in-suit to BTG). In fact, these documents sat in Alacritude's King of Prussia office until the summer or fall of 2003 when BTG, after acquiring the patents-in-suit from Tucows/Infonautics, sent its representatives to Alacritude's King of Prussia offices to retrieve the documents, *see id.*, where Scott Bernberg, an employee of Alacritude, assisted BTG in retrieving the documents from Alacritude's offices. *See id.* at 83:11-84:16 (stating that Scott Bernberg gave Mr. Williams access to the documents in dispute); *see also* Exhibits E (132) and F (133) (demonstrating that Scott Bernberg was an employee of Alacritude, not Tucows/Infonautics). The documents in dispute were in the control of Alacritude, a third party, for nearly a year before BTG retrieved the documents from Alacritude's offices. Consequently, Tucows/Infonautics, like the defendants in *Robbins & Myers, Inc.*, waived the attorney-client privilege with respect to those documents.

Further, waiver of the attorney-client privilege extends to all other documents and communications relating to the same subject matter. *Mineba Co., Ltd. v. Papst*, 228 F.R.D. 34, 35

The Honorable Sue L. Robinson
November 15, 2005
Page 4

(D.D.C. 2005). Thus, the documents that were left in Alacritude's possession must be produced as well as all other documents relating to the same subject matter.

2. **Plaintiffs Have Not Shown that Internal Communications Are Privileged**

The Court may recall that Defendants challenged a number of Plaintiffs' privilege log entries that were communications between non-attorney BTG employees. In response, BTG simply added the phrase "performed at the direction of Bradley Ditty, Esq." to these log entries.[2] While Defendants concede that communications between non-lawyer employees can be privileged, the attorney-client privilege applies only where legal advice was actually being sought and the communication was not made for purely business purposes. *First Wis. Mortgage Trust v. First Wis. Corp.*, 86 F.R.D. 160, 174 (E.D. Wis. 1980) ("[T]he attorney-client privilege does not extend...to inter-client communication designed to communicate only business or technical data."). Likewise, the work product privilege does not apply to documents generated in the ordinary course of business. *See Naguin v. Unocal Corp.*, 2002 U.S. Dist. LEXIS 15722 (E.D. La. Aug. 12, 2002) (Exhibit J) ("If a party or its attorney prepares a document in the ordinary course of business, it will not be protected from discovery even if the party is aware that the document may also be useful in the event of litigation.").

Aside from copying and pasting a boilerplate phrase into their privilege log, BTG has failed to provide any evidence whatsoever that the documents and communications were made in anticipation of litigation or served a legal rather than business purpose. For example, one of the typical privilege log entries contains the following:

> No. 1459
>
> Date: 4/10/2003
>
> Author: Williams, Scott—Assoc. VP Strategic Development
>
> Addressee: Chandler, Mark—Licensing Exec.
>
> Copied:
>
> Doc Type: email
>
> Description: Confidential communications from person acting at direction of attorney regarding finders fee agreement; Confidential communication of ongoing legal advice and consultation re: commercialization of patents-in-suit and associated patents. Performed at the direction of Bradley Ditty, Esq.
>
> Designation: A/C

From the description given, it is impossible for Defendants to know if this document is actually covered by the attorney-client privilege. Therefore, Defendants request the Court inspect these documents (listed on page 1 of Exhibit H) in camera to determine if they are in fact privileged.

---

[2] There are approximately 80 documents, which are listed on page 1 of Overstock.com's September 16, 2005 letter to Plaintiffs. This letter is attached hereto as Exhibit H.

The Honorable Sue L. Robinson
November 15, 2005
Page 5

3.  **Communications with Third-Party Marketing Companies Are Not Privileged**

BTG has withheld communications between it and its third-party marketing companies Firefly and Taylor Rafferty, claiming such documents to be protected by the attorney-client and work product privileges. The documents include privilege log entries 1034, 1362-63, 1470-, 1801, 1807, 1812, 1814, 1817, 1819, 1821, 1824, 1830, 1877, 1951, and 1954. The Court requested several cases discussing whether such communications are actually privileged, and Defendants offer the following authority supporting Defendants' position that such documents are not privileged:

*Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53 (S.D. N.Y. 2000)—Plaintiff's attorney hired a public relations firm in anticipation of filing what promised to be a high profile suit. The court rejected the attorney-client privilege with respect to communications with the public relations firm because (1) few, if any, of the documents contained or revealed confidential communications from the underlying client made for the purpose of obtaining legal advice; (2) the public relations firm was simply providing ordinary public relations advice; and (3) the court found no justification for broadening the privilege to cover functions not materially different from those that any ordinary public relations firm would have performed if they had been hired directly by plaintiffs. Furthermore, the court found that public relations advice, even if it bears on the anticipated litigation, falls outside the ambit of protection of the work product doctrine.

*Occidental Chemical Corp. v. Ohm Remediation Servs. Corp.*, 175 F.R.D. 431 (W.D. N.Y. 1997)—Plaintiff claimed attorney-client privilege with respect to documents generated by a design consultant. It was clear to the court that the work performed by the consultant served purposes other than to assist plaintiff's attorneys in litigation. The court found it notable that the assistance rendered by the consultant was based on factual and scientific evidence obtained through studies and observation, and not through client confidences.

At the November 2, 2005, hearing on this matter, Plaintiffs cited to *In Re Copper Market*, 200 F.R.D. 213 (S.D. N.Y. 2001). This case involves very different facts than those present with BTG. In *Copper Market*, in anticipation of potential litigation, the defendant, a Japanese company, hired an American public relations firm to handle public relations in the United States. Due to the defendant's lack of experience with the American media, the public relations firm became the functional equivalent of an in-house department of the company and part of the "client," and therefore performed numerous business functions for the company. The court found that the attorney's and client's communications with the public relations firm were privileged. In BTG's case, however, BTG is not a foreign company and Firefly and Taylor Rafferty have not become an in-house department of BTG.

The communications shared with third-party marketing companies are therefore not privileged. Defendants therefore request an order from the Court requiring BTG to produce privilege log entries 1034, 1362-63, 1470-, 1801, 1807, 1812, 1814, 1817, 1819, 1821, 1824, 1830, 1877, 1951, and 1954. Alternatively, these documents should be presented for in camera inspection to allow the Court to determine whether legal advice is actually being sought as opposed to marketing or public relations advice. *See Blumenthal v. Drudge*, 186 F.R.D. 236, 243 (D.D.C. 1999) (holding

The Honorable Sue L. Robinson
November 15, 2005
Page 6


that communications with "litigation consultant" offering media and political consulting were not privileged).

4.    **Communications with Third-Party Technical Experts Are Not Privileged**

Plaintiffs have also refused to produce communications with Serissa Research and Patent Logistics, both patent research firms, claiming that documents 646, 649, 653, 791, 1114-15, 1128-71, 1175-82, 1275-76, 1304, 1410-11, 1421, 1659, 1661-68, 2053-63, and 2085-86 are protected by the attorney-client privilege. Plaintiffs did not assert the work product privilege. The Court requested case law discussing whether the privilege applies:

*United States Postal Service v. Phelps Dodge Refining Co.*, 852 F. Supp. 156 (E.D. N.Y. 1994)—Engineering firms were hired as consultants to conduct environmental studies and to develop a remedial program. The court stated:

> [T]hese consultants based their opinions on factual and scientific evidence they generated through studies and collected through observation of the physical condition of the Property, information that did not come through client confidences. Such underlying factual data can never be protected by the attorney-client privilege and neither can resulting opinions and recommendations. There are few, if any, circumstances where a scientist or engineer employed to gather data should be considered an agent within the scope of the privilege since the information collected will generally be factual, obtained from sources other than the client.

*Id.* at 162. Here, Serissa and Patent Logistics presumably did not get information from BTG; rather, they conducted research to gather information unavailable to BTG. The factual research and resulting conclusions are not protected by the attorney client privilege. "Information obtained by an expert from sources other than the client's confidential communications (or from the lawyer relaying confidential information from the client) is not privileged...." 3 Weinstein's Evidence § 503.12[5][6]. As a result, Plaintiffs should produce the documents listed above, or at the very least the Court should inspect them in camera.

Respectfully submitted,

*/s/ Karen L. Pascale*

Karen L. Pascale (#2903)
[kpascale@bmf-law.com]

cc:  All counsel

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2005, I caused the foregoing sealed document, ***Letter Brief to the Honorable Sue L. Robinson***, to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
John G. Day, Esquire [jday@ashby-geddes.com]
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
   *Attorneys for Plaintiffs, BTG International, Inc., Infonautics Corporation, and Tucows Inc.*

John W. Shaw, Esquire [jshaw@ycst.com]
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
   *Attorneys for Defendants Amazon.com, Inc. and Amazon Services, Inc.*

I further certify that on November 15, 2005, I caused a copy of the foregoing sealed document to be served by e-mail on the above-listed counsel, and that a copy was served on the following non-registered participants by e-mail:

Niall A. MacLeod, Esquire [NAMacLeod@rkmc.com]
Michael A. Collyard, Esquire [MACollyard@rkmc.com]
ROBINS, KAPLAN, MILLER & CIRESI, LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
   *Attorneys for Plaintiffs, BTG International, Inc., Infonautics Corporation, and Tucows Inc.*

Kristin L. Cleveland, Esquire [kristin.cleveland@klarquist.com]
KLARQUIST SPARKMAN LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
   *Attorneys for Defendants Amazon.com, Inc. and Amazon Services, Inc.*

BOUCHARD MARGULES & FRIEDLANDER, P.A.

/s/ *Karen L. Pascale*

Dated: November 15, 2005

David J. Margules (#2254) [dmargules@bmf-law.com]
Karen L. Pascale (#2903) [kpascale@bmf-law.com]
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500
   *Attorneys for Defendant Overstock.com, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2005, I caused the foregoing document – **_REDACTED VERSION of Defendants' November 15, 2005 Letter Brief to the Honorable Sue L. Robinson_**–to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
John G. Day, Esquire [jday@ashby-geddes.com]
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
   *Attorneys for Plaintiffs, BTG International, Inc., Infonautics Corporation, and Tucows Inc.*

John W. Shaw, Esquire [jshaw@ycst.com]
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
   *Attorneys for Defendants Amazon.com, Inc. and Amazon Services, Inc.*

I further certify that on November 22, 2005, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel, and that a copy was served on the following non-registered participants by e-mail:

Niall A. MacLeod, Esquire [NAMacLeod@rkmc.com]
Michael A. Collyard, Esquire [MACollyard@rkmc.com]
ROBINS, KAPLAN, MILLER & CIRESI, LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
   *Attorneys for Plaintiffs, BTG International, Inc., Infonautics Corporation, and Tucows Inc.*

Kristin L. Cleveland, Esquire [kristin.cleveland@klarquist.com]
KLARQUIST SPARKMAN LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
   *Attorneys for Defendants Amazon.com, Inc. and Amazon Services, Inc.*

|  |  |
|---|---|
| Dated: November 15, 2005 | BOUCHARD MARGULES & FRIEDLANDER, P.A.<br><br>*/s/ Karen L. Pascale*<br>_____<br>David J. Margules (#2254) [dmargules@bmf-law.com]<br>Karen L. Pascale (#2903) [kpascale@bmf-law.com]<br>222 Delaware Avenue, Suite 1400<br>Wilmington, Delaware 19801<br>(302) 573-3500<br>   *Attorneys for Defendant Overstock.com, Inc.* |