IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTG INTERNATIONAL INC., INFONAUTICS CORPORATION, AND TUCOWS INC., | ) ) ) ) | **REDACTED PUBLIC VERSION** |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 04-1264 SLR |
| AMAZON.COM, INC. AMAZON SERVICES, AND OVERSTOCK.COM, INC. | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION
FOR LEAVE TO BE HEARD AND FOR CLARIFICATION
REGARDING THE COURT'S DECEMBER 2, 2005 ORDER**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
Telephone: 302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*                                   *Attorneys for Plaintiffs*

**ROBINS, KAPLAN, MILLER & CIRESI LLP**
Ronald J. Schutz
Jake M. Holdreith
Niall A. MacLeod
Michael A. Collyard
Stephanie L. Adamany
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500

Dated: January 11, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BTG INTERNATIONAL INC., INFONAUTICS CORPORATION, AND TUCOWS INC., <br><br>Plaintiffs, <br><br>v. <br><br>AMAZON.COM, INC. AMAZON SERVICES, AND OVERSTOCK.COM, INC., <br><br>Defendants. | Civil Action No. 04-1264 SLR |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO BE HEARD AND FOR CLARIFICATION REGARDING THE COURT'S DECEMBER 2, 2005 ORDER

Plaintiffs BTG International Inc. ("BTG"), Infonautics Corporation ("Infonautics") and Tucows Inc. (Tucows) (collectively "BTG") submit this reply to Defendants' Response to Plaintiffs' Motion for Leave to Be Heard and for Clarification Regarding the Court's December 2, 2005 Order (D.I. 348; "Defendants' Response").

## INTRODUCTION

Prior to filing their motion for leave to be heard on December 14, 2005 (D.I. 336), the plaintiffs did not have a full and fair opportunity to respond to the defendants' argument that Tucows waived its attorney/client privilege as to documents stored at a sub-let facility in King of Prussia, Pennsylvania.

Defendants' argument was first presented at the November 2, 2005 discovery dispute conference without benefit of any "meet and confer" beforehand, as required by the Local Rules and this Court's practice, and without including the issue in its agenda letter to the Court. (See

November 2, 2005 Discovery Hearing Transcript 8-13, and Exhibit A hereto) Because defendants had not previously raised the issue, the Court told the parties that the issue was "not quite ripe for a decision from me" (11/2 tr. 13) and explained that "I'm trying to figure out how you will all make sure that you are grasping the facts well enough to give them to me because I think it's a factual issue." (11/2 tr. 34). The Court then advised the parties "[i]f you are prepared to offer your version of the facts [on November 15th], that's fine. If there needs to be a different mechanism than this letter memorandum your going to send me [concerning the other issues that had been addressed at the conference], then you should contact my office and let me know so we can have a telephone conference and determine how we're going to address [the "stored documents"] issue." (11/2 tr. 35).

Following the Court's instructions, BTG began investigating the facts relevant to defendants' "stored documents" argument. In contrast, the defendants did not. When it became apparent that BTG's investigation could not be completed before the November 15th letter memoranda on other issues was due, BTG's counsel advised defendants of that fact. Rather than cooperating with BTG to develop a "different mechanism" as the Court had suggested, however, defendants instead unilaterally submitted the issue to the Court in their November 15th letter memorandum, and have continued to press for a decision on the issue before BTG can be heard, even going so far as to misrepresent to the Court in their December 15th "Opposing Counsel's Response to Email Request for Emergency Relief" that: "On 11/2/05, the Court directed the parties to submit letters on the "Alacritude privilege issue" by 11/15/05." (D.I. .346)

Now, in Defendants' Response, defendants resort to misrepresenting the facts about Alacritude employees and complaining about the time it has taken for BTG to complete its factual investigation into this issue. Defendants have continuously misrepresented to the Court

the facts about who had access to the King of Prussia documents. Indeed, they say five different times in their response that 16 Alacritude employees accessed the privileged documents—even though defendants have absolutely no evidence of this happening. To the contrary, the only facts in the record show that Tucows took reasonable measures to maintain its documents as confidential and that no Alacritude employee obtained privileged information from the documents at the King of Prussia facility—not even the former Infonautics/Tucows employees who became Alacritude employees. Further, the documents were kept in a separate portion of the King of Prussia facility, which Alacritude employees were restricted from using under the Shared Facilities Agreement.

Additionally, defendants' cannot now claim that they were prejudiced by BTG's factual investigation. After first learning about the issue at the November 2, 2005 discovery conference, BTG conducted its own investigation at the Court's direction, and completed it in under six weeks, despite the Thanksgiving holiday.

Lastly, defendants argue that categories of documents on their privilege logs should be treated differently than the same categories of documents on BTG's log, which goes directly against this Court's "level playing field" statements at the November 2 discovery conference. The Court clearly stated that all of the same kinds of documents should be treated the same way and that BTG should not be held to a different standard than defendants. (11/2/05 Tr. 25). Defendants' arguments that their documents should be treated differently should likewise be disregarded.

## ARGUMENT

### I. Defendants make multiple misrepresentations to the court that Alacritude accessed the documents at issue.

Defendants misrepresent at least five times in their response brief that 16 Alacritude employees actually accessed Tucows' privileged documents. *See* Defendants' Response at p. 8, 9 and 11. There is absolutely no evidence that this happened. As Scott Bernberg testified in his declaration:

- "To the best of my knowledge, no other Alacritude employees ever accessed the documents in the storage room described in paragraph 5."

- "Furthermore, to the best of my knowledge, nobody was granted access to the storage room described in Paragraph 5 without direct instruction from Tucows. In fact, the only persons, other than myself and that I am aware of, that Tucows gave direct instruction to access the storage room were BTG employees."

See Bernberg Decl. ¶¶ 6-7.

As explained in BTG's motion (D.I. 336), Tucows restricted the use of the of the King of Prussia facility to sixteen authorized Alacritude personnel whose internal use of the facility was also limited. Indeed, under the Shared Facilities Agreement, their internal use of the facility was limited to the portions used for the eLibrary business, which was separated from the secure file room where Tucows stored its confidential documents.

The purpose of these restrictions was to maintain the confidentiality of the documents kept there. Defendants take this fact out of context and attempt to mislead the court by claiming that sixteen Alacritude employees must have obtained privileged information from the documents simply because they had access to the facility. There is no evidence, however, that any Alacritude employee obtained privileged information from these documents. Moreover, defendants cite no case law to support their argument that access to a facility under a subleasing

agreement equals access to privileged documents. Defendants' argument of waiver in this instance therefore fails on its face.

### II. The assistance of former Infonautics/Tucows employees Kevin Gillian did not constitute waiver.

Defendants' only new assertion, which is actually based on BTG's own investigation, is that privilege was waived because former Infonautics/Tucows employee Kevin Gillan was asked to and did assist Tucows employee Maria Raponi in determining types of certain Infonautics documents in some boxes and labeling them so they could be sent to Tucows' Toronto office. Even without considering Mr. Gillian's status as a former Infonautics/Tucows employee, there can be no waiver in this instance because Mr. Gillian did not substantively review the documents. *See* Raponi Decl. ¶ 5. Indeed, the mere fact that an individual has an opportunity to access documents, without having substantive knowledge of the documents, does not waive privilege. *Chubb Integrated Systems Ltd. v. National Bank of Washington*, 103 F.R.D. 52, 63 (D.D.C. 1984). A document is disclosed only when a third party has learned the "gist" of the privileged documents' contents. *Id.* Thus, Mr. Gillan's assistance here did not waive privilege because he did not substantively review the documents, much less learn their "gist."

### III. Defendants were not prejudiced by the timing of BTG's factual submission to the court on the waiver issue.

Defendants now also baselessly argue that they have somehow been prejudiced by BTG's investigation into the facts of the waiver issue. Defendants' arguments are not only meritless, they are completely unfair in light of defendants' past actions and the fact that the entire burden was placed on BTG.

BTG did not delay its investigation. Defendants raised this waiver issue for the first time at the recent November 2 discovery conference without even meeting and conferring with BTG.

In fact, defendants were so focused on blind-siding BTG with this issue that they didn't even raise it in their November 2 pre-hearing letter to the court in which they outlined their discovery disputes. *See* Exhibit A. Additionally, defendants chose not to take any discovery on this issue before they raised it with the court.[1] They could have determined the same facts BTG was able to discover had they chosen to do so.

Even further, the Court invited the parties to complete their factual investigation and submit their fully developed facts on November 15th if possible, or by a "different mechanism" if they couldn't develop the record that quickly. BTG told defendants on November 13, 2005 (and the Court on November 15, 2005) that it needed more time to properly complete its factual investigation. At no time during that conversation did defendants claim they would be prejudiced by BTG's investigation. Instead, the attempted to ambush BTG by unilaterally submitting the issue to the Court anyway. Thus, it is BTG - not defendants – who has been prejudiced.

### IV. Defendants' documents should be treated the same as BTG's documents, with respect to the categories set forth in paragraph 2 of this Court's December 2, 2005 Order.

Defendants dispute the Court's statement at the Hearing that the parties should be "playing on a level field" and "that we treat all of the same kind of documents the same way" with respect to the categories of documents identified for in camera review. (11/2 Tr. 26). Amazon has consistently played both sides of this issue, despite the fact that the Court asked defendants to identify whether Amazon had a "consistent view of the world, as [BTG] does" and noted that BTG should not be held to a different standard than defendants. (11/2 Tr. 25).

---

[1] Defendants also misrepresent to the court that BTG somehow intentionally delayed the 30(b)(6) deposition of Tucows for purposes related to this waiver issue. Defendants' argument makes no sense because the documents stored at the King of Prussia facility were not even listed as a 30(b)(6) topic so any timing issues surrounding this deposition are irrelevant. *See* Exhibit B.

**REDACTED**

Amazon should not be able to contend that a document category is privileged for <u>its</u> documents but not for <u>BTG's</u> documents. They now argue that their vigor in pursuing this issue should excuse them from being subject to the ordered in camera review. *See* Defendants' Response at p. 10. Their assertion is absurd. Amazon should also be required to provide documents for in camera review because its documents fall within the categories listed in the December 2 Order, and this Court has acknowledged that the parties should be treated equally with respect to those categories.

## CONCLUSION

There is no evidence that any Alacritude employee obtained privileged information from the documents stored at Tucows' King of Prussia facility. To the contrary, the record shows that no Alactritude employee obtained privileged information from Tucows' King of Prussia facility and Tucows took reasonable measures to maintain the confidentiality of its documents kept there. Thus, the Court should rule that BTG's privilege has not been waived as to the "stored documents."[3]

---

[2] Exhibit C contains excerpts from Amazon's privilege log. Entries containing communications between non-lawyers and third parties have been highlighted.

[3] Resolution of the present issue does not render the common interest issue moot, as defendants misleadingly claim, as there are additional communications between BTG and Tucows/Infonautics that are protected by the common interest exception. Defendants assert that that this Court has not yet ruled on the common interest issue, which is not the case. Both sides have fully briefed this issue and based on that briefing this Court ruled that the common interest applied if certain conditions were met. Despite the ruling, defendants raised the issue yet again at the November 2

Moreover, defendants' documents should be treated the same as BTG's documents with respect to the categories identified in this Court's December 2 Order, and defendant Amazon should be required to produce up to 12 documents selected by BTG falling within the three categories identified by this Court for in camera review, as BTG has done.

ASHBY & GEDDES

By: */s/ John G. Day (I.D. #2403)*
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
Telephone: 302-654-1888
Attorneys for Plaintiffs

*Of Counsel:*

**ROBINS, KAPLAN, MILLER & CIRESI LLP**
Ronald J. Schutz
Jake M. Holdreith
Niall A. MacLeod
Michael A. Collyard
Stephanie L. Adamany
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  5540
Telephone: 612-349-8500

Dated: January 3, 2006

---

Hearing and Your Honor remarked that she was not inclined to go back over that issue again. Hearing Transcr. 8: 18-19.

# CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of January, 2006, the attached **REDACTED PUBLIC VERSION OF PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION FOR LEAVE TO BE HEARD AND FOR CLARIFICATION REGARDING THE COURT'S DECEMBER 2, 2005 ORDER** was served upon the below-named defendants at the address and in the manner indicated:

| | |
|---|---|
| Josy W. Ingersoll, Esquire<br>Young Conaway Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801 | HAND DELIVERY |
| Jeffrey S. Love, Esquire<br>Klarquist, Sparkman, LLP<br>One World Trade Center, Suite 1600<br>121 S.W. Salmon Street<br>Portland, OR 97204 | VIA FEDERAL EXPRESS |
| John M. Seaman, Esquire<br>Bouchard Margules & Friedlander, P.A.<br>222 Delaware Avenue, Suite 1400<br>Wilmington, DE 19801 | HAND DELIVERY |
| John F. Luman, III, Esquire<br>Bracewell & Giuliani LLP<br>711 Louisiana Street, Suite 2300<br>Houston, TX 77002-2781 | VIA FEDERAL EXPRESS |

*/s/ John G. Day*
_____
John G. Day