IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTG INTERNATIONAL, INC., | § | |
| INFONAUTICS CORPORATION, | § | |
| and TUCOWS INC., | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| vs. | § | C.A. No. 04-1264-SLR |
| | § | |
| AMAZON.COM, INC., AMAZON | § | **REDACTED** |
| SERVICES, INC., NETFLIX, INC., | § | **PUBLIC VERSION** |
| BARNESANDNOBLE.COM, INC., | § | |
| BARNESANDNOBLE.COM LLC, and | § | |
| OVERSTOCK.COM, INC. | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' BRIEF ON THE COMMON INTEREST PRIVILEGE

BOUCHARD MARGULES & FRIEDLANDER, P.A.
David J. Margules (#2254)
[dmargules@bmf-law.com]
John M. Seaman (#3868)
[jseaman@bmf-law.com]
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
*Attorneys for Defendant*
*Overstock.com, Inc.*

OF COUNSEL:

Glenn A. Ballard, Jr.
John F. Luman, III
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002-2781

Dated: February 3, 2006

YOUNG CONWAY STARGATT & TAYLOR LLP
John W. Shaw, Esquire
[jshaw@ycst.com]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391
(302) 571-6600
*Attorneys for Defendants Amazon.com, Inc.*
*and Amazon Services, Inc.*

Kristin L. Cleveland, Esquire
KLARQUIST SPARKMAN LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ..............................................................................................................1

FACTUAL BACKGROUND ...............................................................................................1

I.      Ownership of the Patents-In-Suit .................................................................................1

II.     BTG's Commercialization Efforts ...............................................................................4

III.    Plaintiffs' Assertion of Privilege ...............................................................................5

ARGUMENT .....................................................................................................................6

I.      Scope of the Common Interest Privilege ......................................................................6

II.     The Common Interest Privilege Does Not Apply ......................................................7

        A.      The PACA Does Not Create a Common Interest ..........................................7

        B.      The Reversionary Interest Created in the PACA
                No Longer Exists ...........................................................................................9

        C.      BTG's Previous Arguments Are Not Persuasive ........................................10

III.    The Attorney-Client Privilege Was Not Transferred to BTG .................................11

IV.     Other Privilege Issues ...............................................................................................12

CONCLUSION ................................................................................................................13

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*In re Application of the FTC for Order Compelling Avrett Free & Ginsberg,*
    No. M18-304, 2001 U.S. Dist. LEXIS 5059 (S.D.N.Y. Apr. 19, 2001)........................6, 8

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,*
    160 F.R.D. 437 (S.D.N.Y. 1995)........................................................................................9

*Baxter Travenol Labs., Inc. v. Abbott Labs.,*
    1987 U.S. Dist. LEXIS 10300 (N.D. Ill. June 17, 1987)............................................7, 10

*Commodity Futures Trading Comm'n v. Weintraub,*
    471 U.S. 343 (1985)........................................................................................................11

*Constar Int'l, Inc. v. Continental Pet Techs., Inc.,*
    2003 U.S. Dist. LEXIS 21132 (D. Del. Nov. 19, 2003)..................................................10

*Corning, Inc. v. SRU Biosystems, L.L.C.,*
    223 F.R.D. 189 (D. Del. 2004)..........................................................................................6

*Duplan v. Deering Milliken,*
    397 F. Supp. 1146 (D.S.C. 1974).....................................................................................10

*Graco Children's Products, Inc. v. Regalo International LLC,*
    1999 US Dist. LEXIS 11392 (E.D. Penn. 1999) .......................................................11, 12

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.,*
    115 F.R.D. 308 (N.D. Cal. 1987)......................................................................................11

*In re In-Store Advertising Sec. Litig.,*
    163 F.R.D. 452 (S.D.N.Y. 1995) ......................................................................................11

*Lans v. Digital Equip. Corp.,*
    252 F.3d 1320 (Fed. Cir. 2001).........................................................................................10

*Lugosh v. Congel,*
    219 F.R.D. 220 (N.D.N.Y. 2003) ...............................................................................6, 7, 8

*In re the Regents of the University of California,*
    101 F.3d 1386 (Fed. Cir. 1996).........................................................................................10

*Telectronics Proprietary Ltd. v. Medtronic, Inc.*
    836 F.2d 1332 (Fed. Cir. 1988).........................................................................................11

*Walsh v. Northrop Grumman Corp.*,
165 F.R.D. 16 (E.D.N.Y. 1996) ................................................................................6, 7, 8

*Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*,
No. 01 C 4366, 2003 U.S. Dist. LEXIS 13816 (N.D. Ill. Aug. 7, 2003) ........................11

Pursuant to the Court's January 10, 2006 Order, Defendants Amazon.com, Inc., Amazon Services, Inc., and Overstock.com, Inc. submit this brief regarding Plaintiffs BTG International, Inc. ("BTG") and Tucows Inc.'s ("Tucows") assertion of the common interest privilege.

## INTRODUCTION

Plaintiff Tucows assigned the patents-in-suit to Plaintiff BTG.    Pursuant to the assignment, BTG has sole control over the commercialization of the patents, while Tucows simply receives a percentage of the money generated by BTG.  Tucows disclosed to BTG many documents that BTG and Tucows are now withholding based on their assertion of the common interest privilege, and the Court has requested briefing on whether the common interest privilege should apply in this case.  The common interest privilege does not apply here because BTG and Tucows have not formed a joint legal enterprise, instead they merely have a commercial business relationship in which litigation is only one non-controlling aspect.  Moreover, Tucows has no say in whether BTG licenses, sells, or litigates the patents, and Tucows has no input in the licensing negotiations or litigation strategy.   Under these circumstances, the common interest privilege does not apply as a matter of law.

## FACTUAL BACKGROUND

### I.    Ownership of the Patents-In-Suit

The two patents-in-suit were filed on September 20, 1995 and issued in 1998.  The only company involved during the prosecution phase of the patents was Infonautics Corporation.  In a reverse merger between Infonautics and Tucows, the surviving entity (d/b/a Tucows) acquired all Infonautics' assets and liabilities, including the patents in suit.

Tucows never cared about the patents it acquired.  It never tried to value them, it never sought to license them to anyone, it never approached anyone about selling them, it never investigated potential infringers, and it never tried to enforce the patents in any way.  ■

1

[REDACTED] In fact, instead of using the patented technology, Tucows runs its affiliate programs through a third party, Cowabunga.

[REDACTED] Tucows does not even know whether it has ever used the patented technology.

[REDACTED]

BTG and Tucows eventually discussed "commercializing" the patents. BTG's sales pitch explained that BTG specialized in finding technology, developing a marketing strategy, and then commercializing the technology through licensing.

[REDACTED] attached as Exhibit C, at BTG026378. For the patents-in-suit, BTG's proposed strategy was to "contact prospects" and to "license, sell, or litigate." *Id.* at BTG026385. Thus, BTG proposed entering into a business relationship to make money off of the patents, and litigation was merely one possible aspect of the business relationship.

After the presentation by BTG, Tucows agreed to assign its rights to the patents (which were not being used or enforced) in exchange for a percentage of any cash that BTG could get from its commercialization efforts.

2





[REDACTED]

## II.    BTG's Commercialization Efforts

BTG's first commercialization attempts were simply to offer to sell the patent portfolio. BTG approached several companies between Summer 2003 through Spring 2004. After it began trying to sell the patents, BTG collected the documents in question from Tucows in November 2003. *See* Declaration of Maria Raponi, attached as Exhibit F, ¶¶ 3-5. It then embarked on a licensing approach for commercializing the patents.

[REDACTED]

Overstock.com refused to license the patents. Having failed in its attempts to commercialize the patents via sale or licensing, BTG tried the third method of commercializing the patents: litigation. In September 2004, BTG filed suit for patent infringement against

Overstock.com and Amazon.com (as well as Netflix.com and Barnes&Noble.com who have since settled).

Further illustrating that litigation is just one of several approaches used by BTG to commercialize the patents, BTG has recently entered into discussions to sell the patents. Specifically, BTG is in negotiations with Intellectual Ventures, a Seattle-based company for $5 million plus a 15% revenue share for any future license fees Intellectual Ventures derives from the patents. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████ [REDACTED]

## III.   Plaintiffs' Assertion of Privilege

All of the documents Tucows possessed regarding the patents in suit were turned over to BTG. In its privilege log, BTG withheld approximately 270 documents, pursuant to a claim of attorney-client privilege, that were prepared by or for Infonautics or Tucows in the 1994-98 timeframe, ████████████████████████ [REDACTED] *See* selected pages from BTG's Privilege Log, attached as Exhibit H. While Tucows may have had a claim of attorney-client privilege to these documents prior to the assignment to BTG, the privilege was waived once Tucows disclosed the documents and communications to BTG. Now, BTG claims that a "common interest" protects these documents.

Plaintiff also withheld approximately 95 documents, pursuant to a claim of attorney-client privilege and/or common interest privilege, ████████████████████████ ████████████████████████ [REDACTED] *See* Exhibit H. As demonstrated below, the common interest privilege does not apply to any of these documents.

**ARGUMENT**

**I.    Scope of the Common Interest Privilege**

The common interest privilege is an exception to the general rule that disclosure to a third

party waives the attorney-client privilege. *Corning, Inc. v. SRU Biosystems, L.L.C.*, 223 F.R.D.

189, 190 (D. Del. 2004).  The common interest privilege serves as a rare expansion of the

attorney-client privilege, which "should be strictly confined within the narrowest possible limits

underlying its purpose." *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y.

1996).

For the common interest privilege to apply, the two parties (i.e Tucows and BTG) must

share interests that are "identical, not similar, and [are] legal, **not solely commercial**." *Corning,

Inc. v. SRU Biosystems, LLC*, 223 F.R.D. 189, 190 (D. Del. 2004)(emphasis added).  The parties

must be pursuing a common legal goal.  *Id*; *see also In re Application of the FTC for Order

Compelling Avrett Free & Ginsberg*, No. M18-304, 2001 U.S. Dist. LEXIS 5059 at * 9 ("The

parties...must have demonstrated cooperation in formulating a common legal strategy.")

(Exhibit I attached hereto).

Even if the parties to a commercial agreement anticipate litigation, the common interest

privilege does not apply.  Where "the common enterprises embarked on a business mission,

though there is concern about the presence of litigation, the common interest privilege will not be

applicable." *Lugosh v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003).

Further, the privilege applies only to documents and communications made in the course

of the ongoing enterprise.  *In re Application of the FTC for Order Compelling Avrett Free &

Ginsberg*, No. M18-304, 2001 U.S. Dist. LEXIS 5059 at * 9 (S.D.N.Y. Apr. 19, 2001) ("only

communications made in the course of an ongoing legal enterprise ... are protected.").

Documents and communications created before the common interest existed are not covered by

6

the common interest privilege. *See Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 U.S. Dist.
LEXIS 10300 at * 6-7 (N.D. Ill. June 17, 1987).

## II.    The Common Interest Privilege Does Not Apply

### A.    The PACA Does Not Create a Common Interest

The common interest privilege does not apply to protect the documents in question from
production.

[REDACTED]

The privilege does not apply where the parties embarked on a business mission, even if
litigation is contemplated as a part of that business mission. *See Lugosh* 219 F.R.D. at 238;
*Walsh*, 165 F.R.D. at 18. In *Walsh*, for example, the parties entered a business arrangement
whereby one party agreed to give business and financial advice to the other. *Id.* In the parties'
written agreement, it was discussed that litigation was a possibility, but one that would try to be
avoided. *Id.* The Court ruled that the parties had an ongoing business relationship where
litigation was only one concern, and therefore the common interest privilege did not apply. *Id.*

[REDACTED]

Litigation is also discussed as part of the business plan, but only as a back up plan where sale or

7

license negotiations fail.

████████████ [REDACTED] Thus, the parties' relationship is solely commercial and the common interest doctrine does not apply. *See Lugosh* 219 F.R.D. at 238; *Walsh*, 165 F.R.D. at 18.

Further, Tucows turned the documents over to BTG in 2003, well before any lawsuit was filed. At that time, BTG intended to commercialize the patents by securing license agreements from third parties. *See* Exhibit G. Thus, Tucows turned over the documents in question as part of the business agreement whereby BTG was to make money from the patents in any number of ways, the initial way being license negotiations. Only after such efforts failed did BTG move on to a different strategy for commercialization by bringing a lawsuit. Because the original disclosure by Tucows occurred well before any legal proceedings had commenced, the common interest privilege does not apply. *See In re Application of the FTC for Order Compelling Avrett Free & Ginsberg*, No. M18-304, 2001 U.S. Dist. LEXIS 5059 at * 9 (S.D.N.Y. Apr. 19, 2001).

In *Avrett Free & Ginsberg*, the court states that "only communications made in the course of an **ongoing legal enterprise** … are protected." *Id.* (emphasis added). At the time of disclosure, Tucows and BTG had an ongoing business enterprise,[1] but not an ongoing legal enterprise. The *Avrett Free & Ginsberg* court emphasizes that a business arrangement that has litigation as one concern cannot support the common interest privilege. *Id.* Accordingly, the common interest privilege does not apply.

---

[REDACTED]

8

Even if the relationship between Tucows and BTG could somehow be considered an ongoing legal enterprise, the common interest still privilege does not apply. For the privilege to apply, the parties must demonstrate their cooperation in forming a common legal strategy. *See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995).

[REDACTED]

**B.    The Reversionary Interest Created in the PACA No Longer Exists**

[REDACTED]

## C.    BTG's Previous Arguments Are Not Persuasive

The cases cited by BTG in a previous letter to the Court do not provide any legal basis for the Court to uphold BTG's claim of privilege. *See* BTG Letter Brief dated June 21, 2005. In alleging that Tucows has the same legal interest as BTG in having the patents be valid and enforceable, BTG cited *In re the Regents of the University of California*, 101 F.3d 1386 (Fed. Cir. 1996); *Constar Int'l, Inc. v. Continental Pet Techs., Inc.*, 2003 U.S. Dist. LEXIS 21132 (D. Del. Nov. 19, 2003) (Exhibit K hereto); and *Baxter Travenol Labs., Inc. v. Abbott Labs.*, 1987 U.S. Dist. LEXIS 10300 (N.D. Ill. June 17, 1987). In each of these cases, however, the courts ruled a common interest existed where the parties were working together to develop and obtain patents, not where the patents issued long before the parties had a relationship, and the parties' relationship relates solely to the commercialization of those existing patents. Thus, these three cases do not support BTG's claims of privilege.

Further, the simple fact that both Tucows and BTG may have an interest in the patents being valid does not create a common interest sufficient to support the privilege. In fact, the seminal common interest privilege case, *Duplan v. Deering Milliken*, 397 F. Supp. 1146, 1175 (D.S.C. 1974), holds that disclosure of confidential information to an exclusive licensee of a patent constitutes waiver because such a licensee holds a purely commercial interest. Certainly

---

[2] The only reason Tucows was made a party to this suit is because the Court ordered that BTG either produce the documents in question or add Tucows as a party. *See* order dated July 6, 2005. Because Tucows no longer has a reversionary interest in the patents, and because Tucows assigned of all of its right, title and interest in the patents, Tucows has no standing to bring any claims in this suit and should be dismissed. *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1328 (Fed. Cir. 2001).

10

an exclusive licensee has an interest in the patents-in-suit being valid, but the *Duplan* court held that such a common interest is commercial and does not support the common interest privilege.

BTG also cited *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D. Cal. 1987). In this case, however, the court found a common interest existed where the parties "anticipated joint litigation." *Id.* at 310. ███████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████████

████████████ [REDACTED]

## III.    The Attorney-Client Privilege Was Not Transferred to BTG

Perhaps knowing that no common legal interest exists between BTG and Tucows, BTG has previously asserted that the PACA transferred not only the patents-in-suit, but also the attorney-client privilege. The law is clear, however, that the attorney-client privilege does not pass with a mere patent assignment. *See Telectronics Proprietary Ltd. v. Medtronic, Inc.* 836 F.2d 1332, 1336 (Fed. Cir. 1988) (affirming district court holding that assignment of a patent does not transfer attorney-client relationship); *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, No. 01 C 4366, 2003 U.S. Dist. LEXIS 13816 (N.D. Ill. Aug. 7, 2003) (Exhibit L hereto); *In re In-Store Advertising Sec. Litig.*, 163 F.R.D. 452, 458 (S.D.N.Y. 1995). Indeed, it takes more than a mere patent assignment to transfer the attorney-client privilege, as the "authority to assert and waive the corporation's attorney-client privilege follows the passage of control of the corporation." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 349 (1985).

---

[3] As previously discussed, Tucows was only added to the litigation in response to the Court's previous Order. It is clear now that Tucows should be dismissed after having assigned away all of its rights and being without a reversionary interest.

11

During the June 10, 2005 meet-and-confer, BTG cited only *Graco Children's Products, Inc. v. Regalo International LLC*, 1999 US Dist. LEXIS 11392 (E.D. Penn. 1999) (Exhibit M hereto), as authority for the proposition that BTG acquired the attorney-client privilege via the PACA. *Graco* is readily distinguishable, because in that case an entire division of the assignor was transferred, including patents, all assets and liabilities (such as goodwill, IP rights, several factories in the US and Mexico, working capital and brand names). Here, by contrast, BTG did not receive control over Tucows or any division of Tucows — BTG merely received an assignment of patents. Thus, it is clear that any attorney-client privilege owned by Tucows has not been transferred to BTG.

## IV.    Other Privilege Issues

Several other privilege issues remain to be resolved. The Court's January 10, 2006 Order required BTG to produce a number of specific documents. BTG decided not to comply with the Court's Order by withholding one of the documents without giving any explanation. *See* January 24, 2006 letter from BTG's counsel, attached as Exhibit N. Defendants request that BTG comply with the Court's Order and produce the remaining document.

The Court ordered production of the documents after an in camera inspection. This inspection was prompted by Defendants' challenge of numerous claims of privilege made by BTG. The Court inspected 36 total documents — 12 representative documents from the categories of "Communications with Technical Experts," "Communications with Marketers," and "Internal Communications." These 36 documents represented only a fraction of the total documents in the three categories. *See* Letter dated September 16, 2005, attached as Exhibit O (listing all documents in the three categories). Despite the Court's ruling that 25 of the 36 representative documents were NOT privileged, BTG has not produced any of the remaining documents from the three categories. Defendants request that BTG produce all non-privileged

12

documents, or that the Court inspect the remaining documents to determine if any valid privilege exists.

## CONCLUSION

BTG and Tucows have a common interest in commercializing the patents in suit, and this interest is purely commercial. When Tucows disclosed the documents in question to BTG, Tucows did not care whether BTG licensed, sold, or litigated the patents, so long as Tucows got cash for the patents that it did not use or enforce. Litigation was only one aspect of the parties' business agreement, and it was a fallback position if licensing negotiations failed. Thus, the common interest privilege does not apply and all documents and communications shared between BTG and Tucows are discoverable. This applies not only to documents created before the Patent Assignment (at least entry Nos. 1-264), but also to any documents created afterwards and shared by BTG and Tucows, as well as all communications between BTG and Tucows.

BOUCHARD MARGULES & FRIEDLANDER, P.A.

*/s/ John M. Seaman*

Dated: February 3, 2006

David J. Margules (#2254) [dmargules@bmf-law.com]
John M. Seaman (#3868) [jseaman@bmf-law.com]
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500
 *Attorneys for Defendant Overstock.com, Inc.*

OF COUNSEL:

Glenn A. Ballard, Jr.
John F. Luman, III
BRACEWELL & GIULIANI LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002-2781
(713) 223-2300

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2006, I caused the foregoing document to be

electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing

to the following:

Steven J. Balick, Esquire [sbalick@ashby-geddes.com]
John G. Day, Esquire [jday@ashby-geddes.com]
ASHBY & GEDDES
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
  *Attorneys for Plaintiffs, BTG International, Inc., Infonautics Corporation, and Tucows Inc.*

John W. Shaw, Esquire [jshaw@ycst.com]
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
  *Attorneys for Defendants Amazon.com, Inc. and Amazon Services, Inc.*

I further certify that on February 3, 2006, I caused a copy of the foregoing document to be

served by e-mail on the above-listed counsel, and that a copy was served on the following non-

registered participants by e-mail:

Niall A. MacLeod, Esquire [NAMacLeod@rkmc.com]
Michael A. Collyard, Esquire [MACollyard@rkmc.com]
ROBINS, KAPLAN, MILLER & CIRESI, LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
  *Attorneys for Plaintiffs, BTG International, Inc., Infonautics Corporation, and Tucows Inc.*

Kristin L. Cleveland, Esquire [kristin.cleveland@klarquist.com]
KLARQUIST SPARKMAN LLP
One World Trade Center
121 S.W. Salmon Street, Suite 1600
Portland, OR 97204
  *Attorneys for Defendants Amazon.com, Inc. and Amazon Services, Inc.*

BOUCHARD MARGULES & FRIEDLANDER, P.A.

*/s/ John M. Seaman*

Dated: February 3, 2006

David J. Margules (#2254) [dmargules@bmf-law.com]
John M. Seaman (#3868) [jseaman@bmf-law.com]
222 Delaware Avenue, Suite 1400
Wilmington, Delaware 19801
(302) 573-3500
*Attorneys for Defendant Overstock.com, Inc.*