# EXHIBIT A

# REDACTED

# EXHIBIT B

# REDACTED

# EXHIBIT C

# REDACTED

# EXHIBIT D

# REDACTED

# Exhibit E

# REDACTED

# Exhibit

# F

12-12-05   03:52PM   FROM-Tucows                           4165356875          T-680   P.002/003   F-219

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BTG INTERNATIONAL INC., INFONAUTICS CORPORATION, AND TUCOWS INC., <br><br> Plaintiff, <br><br> v. <br><br> AMAZON.COM, INC., AMAZON SERVICES, INC., NETFLIX, INC., BARNESANDNOBLE.COM INC., BARNESANDNOBLE.COM LLC, AND OVERSTOCK.COM, INC., <br><br> Defendants. | Civil Action No. 04-1264 SLR |

### DECLARATION OF MARIA RAPONI

Maria Raponi declares as follows:

1. I submit this declaration in support of Plaintiffs' letter brief submission to the Court regarding the storage of documents in Tucows Inc.'s ("Tucows") King of Prussia facility.

2. I am currently employed by Tucows as the Facility Coordinator. I held that same position during the Tucows/Infonautics merger.

3. On November 6, 2003 I traveled to the Tucows' King of Prussia facility to gather documents and ship them to Tucows' Toronto facility. Documents were stored at this facility and at least 460 boxes of Infonautics documents were stored at an Iron Mountain facility in Pennsylvania.

4. Infonautics documents at the King of Prussia facility were stored in an interior file room with cement block walls and no windows. Some documents pertaining to Infonautics' board minutes, WorldCom, and employees' personal information were also kept in a

MP3 20160624.1


DEFENDANT'S EXHIBIT

approximately seven to ten file cabinets located on a wall along side the storage room. Inside the storage room, documents were kept in file cabinets and in boxes on top of the file cabinets.

5.    At the time I went to the King of Prussia facility in November 2003, Kevin Gillan, a former Infonautics and Tucows employee who became an Alacritude employee after Tucows sold its eLibrary business to Alacritude, helped me determine the types of Infonautics documents in some boxes and also helped me label the boxes so I could ship them to Tucows' Toronto facility. Neither of us substantively reviewed the documents while we were doing this. We were simply doing this so we could organize them in some way and ship them off.

6.    To the best of my knowledge, while I was at the King of Prussia facility, nobody other than myself and Mr. Gillan, accessed the documents in the facility.

I declare under penalty of perjury and to the best of my knowledge that the foregoing is true and correct.

Dated: December 12, 2005

_____
Maria Raponi

MP3 20160624.1                              2

PAGE 3/3 * RCVD AT 12/12/2005 3:01:31 PM [Central Standard Time] * SVR:MP-RIGHTFAX/5 * DNIS:612 * CSID:4165356875 * DURATION (mm-ss):00-38

# EXHIBIT G

# REDACTED

# EXHIBIT H

# REDACTED

# Exhibit

# I

LEXSEE 2001 US DIST LEXIS 5059

IN RE APPLICATION OF THE FEDERAL TRADE COMMISSION FOR AN ORDER COMPELLING AVRETT FREE & GINSBERG TO COMPLY WITH A SUBPOENA FOR DOCUMENTARY MATERIAL

Misc. No. M18-304 (RJW)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2001 U.S. Dist. LEXIS 5059; 50 Fed. R. Serv. 3d (Callaghan) 139; 2001-1 Trade Cas. (CCH) P73,288*

April 19, 2001, Decided
April 19, 2001, Filed

**DISPOSITION:** [*1] FTC's motion to compel production of documents granted and Avrett's motion for protective order denied.

**JUDGES:** Robert J. Ward, U. S. D. J.

**OPINIONBY:** Robert J. Ward

**OPINION:**

### MEMORANDUM DECISION AND ORDER

Petitioner, the Federal Trade Commission ("FTC"), moves pursuant to *Rules 37(a) and 45(c)(2)(B), Fed. R. Civ. P.*, for an order directing a New York advertising agency, Avrett Free & Ginsberg ("Avrett") to comply with a subpoena issued in connection with Federal Trade Comm'n v. Rexall Sundown, Inc., No. 00 Civ. 7016 (S.D. Fla. filed July 19, 2000), an action pending in the United States District Court for the Southern District of Florida. Avrett cross-moves for a protective order pursuant to *Rule 26(c), Fed. R. Civ. P.*, claiming an attorney-client privilege. For the following reasons, the FTC's motion to compel is granted and Avrett's motion for a protective order is denied.

### BACKGROUND

In the Florida litigation, the FTC alleges that Rexall Sundown, Inc. ("Rexall") made false and unsubstantiated claims to consumers about Cellasene, a purported treatment for cellulitis. The FTC and Rexall are currently in the fact discovery phase of the litigation. See Declaration of Stacy A. [*2] Feuer ("Feuer Decl.") P 3. Avrett is a non-party that served as Rexall's advertising agency for Cellasene, preparing print, radio, and television advertising for the product. See id. P 4. During the Cellasene campaign, Avrett did not employ its own in-house regulatory counsel.

Deborah Shur Trinker has been employed as Rexall's Vice President of Regulatory Affairs and Assistant General Counsel, with primary responsibility for assuring that Rexall product labeling, packaging, marketing, and advertising are in full compliance with all statutory and regulatory requirements. See Declaration of Deborah Shur Trinker ("Trinker Decl.") PP 2-3. While employed by Rexall, Ms. Trinker reviewed advertising materials prepared by Avrett for a variety of products. She discussed with Avrett legal issues associated with draft advertising materials and advised Avrett on the general legal parameters for advertising dietary supplements. In addition, she advised Avrett about the potential legal objections that television networks might have concerning advertisements. Her objective was to facilitate the preparation of non-misleading, substantiated, and lawful advertisements, and to minimize the creation [*3] of materials that would be rejected for legal reasons. See id. P 5.

Thomas James, Avrett's Executive Group Account Director, stated that, as a general policy, Avrett forwarded draft advertising material to its clients for the purpose of review by the clients' attorneys. Avrett relied on the advice of its clients' attorneys to ensure that all legal and regulatory requirements were met. This advice typically took the form of annotations and modifications made by the clients' attorneys directly on draft advertising material. Avrett maintained these drafts in strict confidence. See Declaration of Thomas James ("James Decl.") P 3.

In the case of Cellasene in particular, Ms. Trinker stated that Avrett and Rexall worked collaboratively to



Case 1:04-cv-01264-SLR    Document 386-2    Filed 02/03/2006    Page 13 of 20

Page 2
2001 U.S. Dist. LEXIS 5059, *; 50 Fed. R. Serv. 3d (Callaghan) 139;
2001-1 Trade Cas. (CCH) P73,288

produce truthful and substantiated advertising. Ms. Trinker communicated her input to Rexall and Avrett through the modification of Avrett's draft advertisements. See Trinker Decl. P 6. She conducted her review to assure that all legal and regulatory requirements were met. In addition, once the FTC investigation into Cellasene began on April 12, 1999, when the FTC issued the first of several Civil Investigative Demands on Rexall, Ms. Trinker [*4] had the additional objective of minimizing Rexall's exposure to liability in litigation with the FTC. See id. PP 7, 9.

On January 26, 2001, the FTC served Avrett with a Subpoena for the Production of Documentary Material, issued by the United States District Court for the Southern District of New York. See Feuer Decl. P 5. Shortly before the deadline for Avrett to produce responsive documents, an attorney representing Rexall, Edward F. Glynn, asked whether the FTC would consent to Avrett's withholding of certain documents on the basis of the attorney-client privilege. The FTC declined and informed Mr. Glynn that Rexall would have to seek judicial intervention to prevent the production of the documents. See id. P 6. Rexall did not do so. See id. P 7.

On February 28, Avrett produced approximately 722 pages of documents, but withheld fifteen documents, each a draft advertisement containing Ms. Trinker's handwritten notes. Avrett asserted that these documents were protected by the attorney-client privilege. See id. P 8. The FTC and Avrett consulted one another in a failed effort to resolve the dispute about these fifteen documents. See id. PP 9-10. This proceeding [*5] followed.

**DISCUSSION**

Although Avrett did not have its own counsel for regulatory matters, it asserts that the draft advertisements requested by the FTC are protected by the attorney-client privilege because Avrett and Rexall had a common legal interest in the Cellasene advertising campaign. The FTC counters that Avrett has no standing to assert the attorney-client privilege and that the common interest rule does not apply here.

"The attorney-client privilege generally forbids an attorney from disclosing confidential communications that pass in the course of professional employment from client to lawyer." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). Furthermore, the burden of establishing the existence of the attorney-client privilege always rests on the party asserting it. See *id. at 244*. The party must establish the relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which the protection is claimed. See *id. at 243*.

The joint defense privilege, more commonly known as the common [*6] interest rule, is an extension of the attorney-client privilege. See id. This rule does not provide an independent basis for establishing the existence of an attorney-client relationship. Rather, it is an exception to the general rule that the privilege is waived when confidential information is communicated to a third party. If the third party and the client share a common legal interest, the rule applies and the privilege is not waived. See, e.g., *Strougo v. BEA Assocs.*, 199 F.R.D. 515, 2001 U.S. Dist. LEXIS 3816, 2001 WL 332922, at *3 (S.D.N.Y. 2001); *United States v. Agnello*, 135 F. Supp. 2d 380, 2001 U.S. Dist. LEXIS 3633, 2001 WL 310423, at *1 (E.D.N.Y. 2001); *United States v. United Techs. Corp.*, 979 F. Supp. 108, 111 (D. Conn. 1997).

The first obstacle Avrett faces in invoking the attorney-client privilege and the common interest rule is that it has not established that it had an attorney-client relationship with Ms. Trinker. "The key, of course, to whether an attorney/client relationship existed is the intent of the client and whether he reasonably understood the [communications] to be confidential." *United States v. Dennis*, 843 F.2d 652, 657 (2d Cir. 1988). [*7] Although Avrett produced an affidavit describing its general policy of working with its clients' attorneys, it has not established that it intended Ms. Trinker to act as its attorney, or that it reasonably understood its communications with her to be confidential.

Instead of presenting evidence that may show that Avrett had an attorney-client relationship with Ms. Trinker, Avrett argues that it had such a relationship by virtue of its common interest with Rexall. This argument fails because the common interest rule is not an independent source of the attorney-client privilege, as Avrett attempts to use it. Avrett has not cited, and the Court has not found, a single case applying the common interest rule in such circumstances. n1 In any event, the Court is not convinced that Avrett and Rexall shared a common legal interest in the Cellasene advertising campaign.

---

n1 Rexall is Ms. Trinker's client, and therefore, is the only entity in a position to assert the common interest rule. In other words, if the FTC sought to discover from Rexall confidences between Rexall and Ms. Trinker on the ground that disclosure to Avrett waived the attorney-client privilege, Rexall would be in a position to argue that it had a common legal interest with Avrett. However, Rexall is not a party to this proceeding.

[*8]

At its core, "the common interest doctrine applies when multiple persons are represented by the same attor-

Case 1:04-cv-01264-SLR   Document 386-2   Filed 02/03/2006   Page 14 of 20

Page 3
2001 U.S. Dist. LEXIS 5059, *; 50 Fed. R. Serv. 3d (Callaghan) 139;
2001-1 Trade Cas. (CCH) P73,288

ney. In that situation, communications made to the shared attorney to establish a defense strategy remain privileged as to the rest of the world." *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 446 (S.D.N.Y. 1995) (citations omitted). In addition, the common interest rule "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *Schwimmer*, 892 F.2d at 243 (citations omitted). The latter situation has been described as follows:

> A community of interest exists among different persons or separate corporations where they have an identical legal interest . . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. The fact that there may be an overlap of a commercial and legal interest for a third party does not negate the effect of the legal interest in establishing a community [*9] of interest.

*Strougo*, 199 F.R.D. 515, 2001 U.S. Dist. LEXIS 3816, *8-9, 2001 WL 332922, at *3 (citations omitted). "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." *North River Ins. Co. v. Columbia Cas. Co.*, 1995 U.S. Dist. LEXIS 53, No. 90 Civ. 2518, 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995).

Only communications made in the course of an ongoing legal enterprise, and intended to further the enterprise, are protected. See *Schwimmer*, 892 F.2d at 243. However, it is not necessary that there be actual litigation in progress for the common interest rule to apply. See *id.* at 244. The parties among whom information is shared must have a common legal interest - they must have demonstrated cooperation in formulating a common legal strategy. See *Bank Brussels Lambert*, 160 F.R.D. at 447. The rule "does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation." *Id.*

As in all communications allegedly privileged under the attorney-client relationship, "a claim resting on the common interest rule requires [*10] a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." See *Schwimmer*, 892 F.2d at 244. Finally, the Second Circuit has warned that expansions of the attorney-client privilege under the common interest rule should be "cautiously extended." *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999).

Avrett places great reliance on In re Jenny Craig, Inc., No. 9260 (F.T.C. May 16, 1994) (attached to Avrett's reply brief as Exhibit A). In that case, the FTC sought documents from Jenny Craig Inc.'s ("JCI") advertising agency, J. Walter Thompson ("JWT"). The documents at issue contained handwritten attorneys' notes, memos to clients, and handwritten "interlineation" by attorneys on advertisements, drafts, and scripts. JWT agreed to provide legal review of JCI's proposed advertisements to ensure that they were in full compliance with the law. After an FTC investigation commenced against JCI, JCI sought legal litigation-related advice from JWT's in-house counsel and JCI's own outside counsel. The parties' respective attorneys consulted one another about the FTC investigation. [*11]

The FTC argued that the attorney-client privilege was waived when JWT and JCI sent each other the relevant documents. Rejecting this argument, the Administrative Law Judge found that the parties had a common interest: first, JWT's attorneys communicated with JCI's attorneys to discuss JCI's legal strategy in response to the FTC investigation; second, JWT had a legal interest in JCI advertisements because advertising agencies may be subject to FTC enforcement proceedings. Therefore, JWT and JCI could both use the same attorney work product without waiving the attorney-client privilege.

Several cases rejecting an application of the common interest rule are instructive in demonstrating the limited scope of the rule. In *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16 (E.D.N.Y. 1996), an employee of Salomon Brothers was asked in a deposition to reveal discussions between Salomon and Northrop Grumman. Salomon asserted the common interest rule as to information which Salomon obtained from its attorneys to defeat the contention that disclosure of the information to Northrop waived the privilege. See *id.* at 18. The court rejected an application of the rule [*12] in those circumstances. First, the court believed that the common interest rule is limited to confidences shared by one party with the attorneys of another party, not confidences shared with a party's attorneys, and then with another party. See *id.* Second, Salomon was advising Northrop on financial and other business strategies, and although there was plainly a mutual concern about possible litigation, "that does not transform their common interest and enterprise into a legal, as opposed to commercial, matter." *Id.* at 19.

In *Bank Brussels Lambert*, supra, the company, a member of a banking consortium, circulated a letter from its attorney among other members of the banking group.

2001 U.S. Dist. LEXIS 5059, *; 50 Fed. R. Serv. 3d (Callaghan) 139;
2001-1 Trade Cas. (CCH) P73,288

The letter concerned the viability of a potential transaction and included a concern about possible litigation. When the banking consortium subsequently brought suit, the defendants sought to obtain the letter, claiming that its disclosure to the bank group waived the attorney-client privilege. The court held that the banks had no common legal strategy:

> While each member shared a concern about the threat of shareholder litigation, there is no evidence that they [*13] formulated a joint legal strategy to deal with the possibility. Coudert Brothers [Bank Brussel Lambert's counsel], for example, represented only BBL and was not retained to represent the Bank Group as a whole or any of its other members. Nor is there any suggestion that counsel from that firm coordinated its legal efforts with attorneys for any other Bank Group member.

*160 F.R.D. at 448.*

The present case most closely resembles those cases where courts have recognized that a business strategy which happens to include a concern about litigation is not a ground for invoking the common interest rule. The Court does not dispute that Ms. Trinker's handwritten notes on Avrett's draft advertisements constitute legal advice. In addition, it is clear that both Avrett and Rexall were concerned about the consequences of failing to comply with applicable law and regulations. However, this is simply not enough to transform their mutual commercial interest in the Cellasene advertising campaign into a coordinated legal strategy. Ms. Trinker reviewed Avrett's draft advertisements for the purpose of determining their legality because Avrett and Rexall had a financial interest [*14] in seeing that the Cellasene advertising campaign was not blocked by legal obstacles. Avrett and Rexall's joint enterprise was commercial and an element of making that enterprise succeed was ensuring that advertisements were compliant. While Avrett received legal advice from Ms. Trinker that presumably assured Avrett that it would not be subject to legal action based on the advertisements, this benefit was ancillary to the business relationship.

In addition, the Court is not swayed by the fact that Avrett, as a general policy, relies on all of its clients' counsel for legal advice. An extension of the common interest rule for that reason would mean that Avrett has an attorney-client privilege with each and every one of its clients' counsel even though it has not retained any of them. The common interest rule, which must be construed narrowly, does not sanction such a result.

**CONCLUSION**

For the foregoing reasons, the FTC's motion to compel production of documents is granted and Avrett's motion for a protective order is denied.

It is so ordered.

Dated: New York, New York

April 19, 2001

Robert J. Ward

U. S. D. J.

# EXHIBIT J

# REDACTED

# Exhibit

# K

LEXSEE 2003 US DIST LEXIS 21132

CONSTAR INTERNATIONAL, INC., CHEVRON PHILLIPS CHEMICAL
COMPANY, LP, and CHEVRON RESEARCH & TECHNOLOGY COMPANY,
Plaintiffs, v. CONTINENTAL PET TECHNOLOGIES, INC., Defendant.
CHEVRON PHILLIPS CHEMICAL COMPANY, LP and CHEVRON RESEARCH
& TECHNOLOGY COMPANY, Cross-claim Plaintiffs, v. CONSTAR
INTERNATIONAL, INC., Cross-claim Defendant.

Civil Action No. 99-234-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 21132

November 19, 2003, Decided

**PRIOR HISTORY:** *Crown Cork & Seal Tech. Corp. v. Cont'l Pet Tech. Inc.*, 232 F. Supp. 2d 294, 2002 U.S. Dist. LEXIS 22792 (D. Del., 2002)

**DISPOSITION:** [*1] Motion to compel production of documents denied.

**COUNSEL:** Donald F. Parsons, Jr., Esquire and Karen Jacobs Louden, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL, Wilmington, Delaware. Of Counsel: Dale M. Heist, Esquire, Kathleen Milsark, Esquire, and Joseph D. Rossi, Esquire of WOODCOCK WASHBURN LLP, Philadelphia, Pennsylvania, for Constar International, Inc., Plaintiff.

Richard L. Horwitz, Esquire and David E. Moore, Esquire of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware. Of Counsel: Douglas A. Freedman, Esquire, Kenneth G. Schuler, Esquire, Sasha A. Mayergoyz, and Michael Faris, Esquire of LATHAM & WATKINS LLP, Chicago, Illinois. Glen P. Belvis, Esquire, Helen A. Odar, Esquire, and K. Shannon Mrksich, Esquire of BRINKS HOFER GILSON & LIONE, Chicago, Illinois, for Continental PET Technologies, Inc., Defendant.

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**
    MEMORANDUM OPINION

Wilmington, Delaware

**Farnan, District Judge**

    Pending before the Court is the Motion to Compel of Defendant Continental [*2] Pet Technologies, Inc. for the Production of Documents Subject to Constar's Assertion of the Common Interest Doctrine (D.I. 298). For the reasons discussed, the Court will deny the motion.

**BACKGROUND**

    In 1999, Plaintiff Constar International, Inc. ("Constar") n1 initiated this action against Continental Pet Technologies, Inc. ("Continental") alleging that Continental was infringing upon *U.S. Patent No. 5,021,515* (the "'515 patent"). Continental has moved 1) to compel several documents on Constar's privilege log, 2) to compel documents responsive to document requests 119-120, 122-126, 128-130, and 3) to compel all other materials withheld by Constar based on the common interest doctrine.

    n1 Constar was substituted for Crown Cork & Seal Technologies Corporation as the named plaintiff by stipulation of the parties on January 22, 2003. (D.I. 275).

    Constar contends that all of the withheld documents are privileged communications between Constar's former counsel and PLM's former counsel. Constar responds that [*3] it is only withholding four of the documents in question based on work product privilege. Constar asserts that these documents were communications between Constar's former patent counsel and PLM's former counsel and were made "in anticipation of the present



Case 1:04-cv-01264-SLR    Document 386-2    Filed 02/03/2006    Page 19 of 20

Page 2
2003 U.S. Dist. LEXIS 21132, *

lawsuit." Constar's Response, at 2. Constar contends that Continental has not meet its burden to obtain disclosure of work product.

Constar asserts multiple objections to Continental's general request for material responsive to requests 119-120, 122-126, and 128-130. Constar contends that some of the documents are privileged and asserts that it has not waived its attorney client or work product privilege with respect to those documents. Constar also objects to the relevance, breadth, burden, vagueness, and duplicity of the requests. Constar asserts that Continental has not addressed these objections, and therefore, its request is not ripe.

Constar further contends that Continental's request for all materials withheld under the common interest doctrine is too broad and covers materials which Constar is not required to disclose.

Continental responds that Constar has not demonstrated it is entitled to the protections of the attorney [*4] client privilege and that any possible attorney-client privilege or work product privilege related to these requests has been waived by Constar's failure to previously make a specific objection.

**DISCUSSION**

**I. The Common Interest Attorney Client Privilege**

If information is communicated to an attorney in the presence of a third party, usually the attorney-client privilege does not protect the disclosure of that communication. The common interest doctrine creates an exception to this general rule. Under the common interest doctrine, communications made when multiple clients consult an attorney on matters of common interest are still privileged against third parties. *Cavallaro v. U.S., 284 F.3d 236, 249 (1st Cir. 2002)*. Communications made by a party or the party's lawyer to an attorney representing another in a matter of common interest are also privileged. *Id.* The doctrine allows "attorneys facing a common litigation opponent [to] exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege." *Schachar v. American Academy of Opthalmology, Inc. 106 F.R.D. 187, 191 (D. Ill. 1985).* [*5] "A community of interest exists among different persons or separate corporations where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice." *Duplan Corp. v. Deering Milliken, Inc., 397 F. Supp. 1146, 1172 (D.S.C.1975).*

**II. Application of the Common Interest Doctrine in this Case**

**A. The Privilege Log Documents**

"A community of legal interests may arise between parties jointly developing patents; they have a common legal interest in developing the patents to obtain greatest protection and in exploiting the patents." *Baxter Travenol Laboratories, Inc. v. Abbott Laboratories, 1987 U.S. Dist. LEXIS 10300, 1987 WL 12919, 1 (N.D. Ill. 1987).* Constar contends that documents 933, 983, 1014, 1022, 1026, and 1332 were privileged communications between Constar's counsel and counsel for PLM and dealt with "patent applications under which [Constar and PLM] shared a common legal interest under the 1988 cross-license." Constar's Response, at 2. Constar asserts that Documents 1420, 1476, 1488, and 1489 are work product created in anticipation of the present litigation and dealing [*6] with the common interest of the cross-license. Based on Constar's assertions, the Court finds that Constar's documents are privileged communications between attorneys about a common legal interest. n2

---

n2 If requested by Continental, the Court will conduct an in camera review of a random sampling of the documents at issue.

---

**B. Disputed Document Requests**

Continental asserts that Constar has waived attorney-client and work product protections with respect to document requests 123-126, 128, and 130. According to Constar, because Continental only asserted that it could not disclose documents under a "common interest," and did not assert an underlying independent privilege, Constar waived the attorney-client privilege with respect to documents responsive to these requests. While a general objection may constitute a waiver of privilege, "whether a waiver has actually occurred requires the Court to consider the circumstances surrounding the assertion of [the] general objection to the production of privileged documents. [*7] " *High Tech Communications, Inc. v. Panasonic Co. 1995 U.S. Dist. LEXIS 4076, 1995 WL 133344, *2 (E.D. La. 1995).* Constar made a general objection to disclosing its privileged documents, and, in response to each request, objected to the disclosing "common interest" documents responsive to that request. On this record, the Court finds that it is clear that Constar was asserting the common interest attorney-client and work product privileges, and Constar has not waived its privilege objections.

Additionally, as stated in section A, attorney communications on common legal interests between Constar and others are privileged. Privileged communications between Constar and others, even if responsive to re-

quests 119, 120, 122, 123, 124, 125, 126, 128, 129, 130, need not be produced.

However, communications with third parties that do not fall under the common interest doctrine are not privileged. Depending on the circumstances, negotiations can be adversarial or cooperative. See *Power Mosfet Technologies v. Siemens AG, 206 F.R.D. 422, 426 (E.D. Tex. 2000)*. For this reason, the Court is reluctant to broadly determine that either all or none of documents responsive to document requests [*8] 119 and 120 are privileged. Additionally, while parts of the other requests target legal discourse between companies and attorneys, some communications responsive to these requests may not be privileged because they may be business discourse.

Constar has raised objections unrelated to privilege with respect to Continental's requests and before any disclosure will be ordered by the Court, Continental must address these objections in order to be entitled to a log of the withheld documents.

C. General Request for Common Interest Documents

Constar broadly contends that it is entitled to all common interest materials. For the reasons discussed previously, attorney communications on common legal interests between Constar and others are privileged, and therefore, Continental is not entitled to the requested materials.

## CONCLUSION

For the reasons discussed, the Motion to Compel of Defendant Continental Pet Technologies, Inc. for the Production of Documents Subject to Constar's Assertion of the Common Interest Doctrine will be denied.

An Order consistent with this Memorandum Opinion will be entered.

## ORDER

At Wilmington, this 19th day of November 2003, for the reasons [*9] discussed in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that the Motion to Compel of Defendant Continental Pet Technologies, Inc. for the Production of Documents Subject to Constar's Assertion of the Common Interest Doctrine (D.I. 298) is **DENIED.**

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE