IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTG INTERNATIONAL INC., | ) | **REDACTED PUBLIC VERSION** |
| INFONAUTICS CORPORATION, | ) | |
| AND TUCOWS INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 04-1264 SLR |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC. AMAZON | ) | |
| SERVICES, INC., and | ) | |
| OVERSTOCK.COM, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE BRIEF ON THE COMMON INTEREST PRIVILEGE

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
Telephone: 302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*                                        *Attorneys for Plaintiffs*

Ronald J. Schutz
Jake M. Holdreith
Niall A. MacLeod
Michael A. Collyard
Stephanie L. Adamany
Robins, Kaplan, Miller & Ciresi LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500

Dated: February 21, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BTG INTERNATIONAL INC., INFONAUTICS CORPORATION, AND TUCOWS INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 04-1264 SLR |
| v. | ) ) ) | |
| AMAZON.COM, INC. AMAZON SERVICES, INC., and OVERSTOCK.COM, INC. | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' RESPONSE BRIEF ON THE COMMON INTEREST PRIVILEGE**

Plaintiffs BTG International Inc. ("BTG"), Infonautics Corporation ("Infonautics"), and Tucows Inc. ("Tucows") submit this response to Defendants' Brief on the Common Interest Privilege.

**INTRODUCTION**

Seven months ago—and after full briefing by the parties—this Court found that a community of interest exists between BTG and Tucows. *See* July 6, 2005 Order (D.I. 157). Despite the Court's Order, and Tucows and Infonautics being made indispensable parties to this litigation as a result of it, defendants have insisted on rearguing this issue to the Court every chance they get. In any case, defendants' admission in their opening brief is dispositive of the issue in Plaintiffs' favor:

**REDACTED**

establishing a community of interest between BTG and Tucows.  Defendants' thirteen pages of

briefing are nothing more than a mere regurgitation of the arguments and case citations they

submitted the first time around.  The only difference is that now they admit     **REDACTED**

                     ; they claim—with no authority whatsoever and contrary to the testimony of

the Plaintiffs—

                **REDACTED**

                                        Not only is defendants' argument factually and

legally wrong, it fails to consider the fact that Plaintiffs now have a joint defense agreement

against defendants' declaratory judgment counterclaims—the same common interest privilege

the defendants have employed throughout this litigation.  As defendants themselves admit,

Plaintiffs had a common interest in the patents-in-suit and that community of interest continues

today.

## BACKGROUND

As the Court may recall from BTG's June 21 and June 28, 2005 briefing, on October 10,

2002, Tucows and BTG entered into the Patent Assignment and Commercialization Agreement

(PACA), which among other things, assigned the patents in suit to BTG.  *See*  **REDACTED**  A.  The

PACA contains several provisions which create a common interest between BTG and Tucows

with respect to the validity, enforceability and infringement of the assigned patents.


                **REDACTED**

**REDACTED**

BTG only asserted the common interest doctrine over documents and communications exchanged after the PACA was executed on October 10, 2002. It has not asserted the doctrine for communications or documents exchanged before this date.

## ARGUMENT

### I. The Court decided this issue on July 6, 2005.

On July 6, 2005, the Court ordered:

> "5. It is my view, however, that if the termination provisions of the PACA create for Tucows a legal interest identical to that of plaintiff in this litigation, then Tucows should be deemed indispensable party to the litigation. Therefore, on or before July 18, 2005, plaintiff must either produce the documents exchanged between it and Tucows, or join Tucows to the litigation."

*See* July 6 Order, p.3. As such, Tucows and Infonautics were added as indispensable parties to this litigation and defendants took full discovery of them including depositions of their CEO, General Counsel and technical personnel, interrogatories, document requests and requests for admission. Although the common interest issue was already decided by the Court, defendants insisted on raising it again at the November 2, 2005 discovery hearing—after they took full discovery of Tucows and Infonautics. And although Your Honor told defendants at that time that it was not "inclined to go back over this issue again," Hearing Transc., p. 8:18-19 (emphasis added), the defendants ignored the Court's concern and raised it again in their January 9, 2006 briefing on documents held at Tucows' King of Prussia facility. *See also* Hearing Transc. p. 33:

14-16 ("I'm not really interested in reviewing the decision I made that led to the joinder of
Tucows and Infonautix" [sic]).  Because this issue has already been decided by the Court, and
Plaintiffs complied with that Order, Plaintiffs request that the defendants' briefing be dismissed
and the Court's previous ruling be adhered to.

II.          REDACTED

                                          favor.

Defendants admit that           REDACTED

when it assigned them to BTG.  *See* Defendants' Brief, p.3.  Defendants make this admission
because Plaintiffs demonstrated in their June 21 and June 28 briefing that

                          REDACTED


Additionally, as defendants claimed in the past, the PACA gave Tucows a property interest to the
patents.  For example, during the April 20 hearing, Counsel for the defendants stated:

> We have obtained from BTG a copy of the agreement that purports
> to assign the patents, but the agreement on its face is somewhat
> ambiguous and the defendants have some serious questions as to
> whether or not

                     REDACTED

                        party.

                  Defendants' admission of          REDACTED

REDACTED

                  ; executed should be dispositive of the common interest issue
here because these reassignment rights create for Tucows the identical legal interest that BTG
has—that the patents be found valid, enforceable and infringed.[1]  Because Tucows and BTG
have this identical legal interest, there is a community of interest between them and no waiver

---

[1] Because defendants admit that
REDACTED
briefs on the issue.  *See* Exs.

REDACTED
Instead, it refers the Court to its June 21 and June 28 letter

can be found for documents they exchanged after the date that the identical legal interest was created. *See In re Regents of The University of California,* 101 F.3d 1386, 1390 (Fed. Cir. 1996) (the disclosure of privileged information to a third party sharing an identical legal interest with respect to the subject of the privileged communication does not constitute waiver, and, instead, the information remains protected). Additionally, because defendants admit       **REDACTED**         **REDACTED**                          they can't claim that Tucows' interest in the patents was solely commercial and not legal.[2]     Therefore, based on defendants' admission alone, a community of interest between BTG and Tucows was created with the PACA.

   **III.**                    **REDACTED**

Tucows and BTG drafted the PACA and their interpretation of its terms governs. Contrary to defendants' assertions, both

**REDACTED**

. Then, on January 9, 2006,

BTG's Vice President, Scott Williams testified that

**REDACTED**

Ex. F, p. 60: 4-10.   Thus, defendants' assertion that       **REDACTED**

**REDACTED**                 , entirely without merit.

---

[2] Once again, because of defendants' admission that      **REDACTED**           and in the interest of brevity, BTG does not <u>reargue</u> that Tucows has more than a commercial interest in the patents. Instead it refers the Court to its June letter briefs where these issues were discussed in great detail. .   **REDACTED**

Moreover, even if **REDACTED** which
Tucows does not claim to be the case—defendants cite no authority whatsoever to claim that the
interest somehow evaporates retroactively from when it was originally created. Such a rule
would fly in the face of preservation of privilege after the termination of a privileged
relationship.

Even further, defendants' argument doesn't address the fact that the parties are co-
plaintiffs in this litigation. BTG and Tucows now have a common interest in asserting the
patents against defendants and defending counterclaims of invalidity. Therefore, the common
interest doctrine still applies to documents and communications exchanged between BTG and
Tucows as part of their joint litigation efforts in this case.

## IV.    BTG's and Tucows' contemplation of litigation further supports their identical legal interest in the patents.

Defendants' theories that the common interest does not apply here because the documents
were exchanged in advance of this litigation or because the parties did not have a joint legal
strategy are nonsensical. Courts have held that a clear anticipation of joint litigation, while not
required, supports a finding of an identical legal interest. *See Hewlett-Packard Co. v. Bauch &
Lomb Inc.,* 115 F.R.D. 308, 310 (N.D. Cal. 1987). Contrary to defendants' assertions, BTG and
Tucows clearly contemplated litigation in this instance.

First, because Tucows and BTG had an identical legal interest in the patents being found
valid, enforceable and infringed, litigation was undoubtedly contemplated and was an inherent
part of the parties' relationship. Moreover, litigation was contemplated by the PACA itself.

**REDACTED**

REDACTED

Not only did these provisions contemplate litigation, they prove the

REDACTED

### V.    The common interest exception applies to all documents and communications containing privileged subject matter exchanged after the PACA was signed regardless of their creation date.

Defendants once again argue that the common interest doctrine cannot apply to documents created before the execution date of the PACA, even if those documents were exchanged between Tucows and BTG after the October 10, 2002 execution date. In doing so, the defendants once again completely mischaracterize the facts and law of the *Baxter* case to claim such a rule exists. In *Baxter*, the documents at issue were exchanged at a time when the parties had no common interest at all. *See Baxter Travenol Labs., Inc. v. Abbott Labs.,* 1987 U.S. Dist. LEXIS 10300 at * 6-7 (N.D. Ill. June 17, 1987). That scenario is very different than the present case where documents created before October 10, 2002, were not exchanged between BTG and Tucows until after that date—i.e., after the common interest arose. Defendants themselves acknowledge that BTG collected the relevant documents in November 2003, well after the PACA was signed. Defendants' Brief, p. 4.

### VI.    Other Privilege Issues

Defendants raise two additional issues pertaining to the Court's January 10, 2005 Order. First, BTG produced all of the documents it was ordered to produce except document Bates numbered BTG PV008702. BTG told defendants that it believes this document contains privileged information but agreed to produce it if defendants agree that the production is on a

non-waiver basis. *See* Ex. G. BTG still has not heard back from defendants. Therefore, BTG should not be required to produce any more documents.

Second, the Court did not order a categorical production of documents as defendants suggest. Instead, the Court specifically looked at the documents submitted for in camera review and made a decision on the particular documents. It even found documents across categories to be privileged. As such, the court could not have ordered a categorical production in this instance. Ordering a categorical production of privileged documents as defendants suggest disregards the importance of privilege entirely and the maintenance of privilege up to its proper limit as substantially important to the administration of justice. *See In re The Regents of the Univ. of Cal.*, 101 F.3d at 1387.

## CONCLUSION

BTG and Tucows have an identical legal interest in the validity, enforceability and infringement of the patents-in-suit. Defendants themselves agree by admitting that

**REDACTED**

As such, the common interest doctrine applies to all documents exchanged between BTG and Tucows after the October 10, 2002 PACA regardless of when the documents were created. And there can be no waiver of privilege from the exchange of documents or communications after that date. Plaintiffs therefore respectfully request that the Court find that the common interest doctrine applies to the privileged communications at issue between BTG and Tucows.

ASHBY & GEDDES

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
Wilmington, Delaware 19801
Telephone: 302-654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiffs*

*Of Counsel:*

**ROBINS, KAPLAN, MILLER & CIRESI LLP**
Ronald J. Schutz
Jake M. Holdreith
Niall A. MacLeod
Michael A. Collyard
Stephanie L. Adamany
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500

Dated: February 13, 2006

166626.1

9

# EXHIBIT A

# REDACTED

# EXHIBIT B

# REDACTED

# EXHIBIT C

# REDACTED

# EXHIBIT D

# REDACTED

# EXHIBIT E

# REDACTED

# EXHIBIT F

# REDACTED

# EXHIBIT G



3800 LASALLE PLAZA
800 LASALLE AVENUE
MINNEAPOLIS, MN 55402-2015
TEL: 612-349-8500 FAX: 612-339-4181
www.rkmc.com

ATTORNEYS AT LAW

STEPHANIE L. ADAMANY
612-349-8946
800-553-9910
SLAdamany@rkmc.com

February 7, 2006

**VIA FACSIMILE**

Christopher A. Shield, Esq.
Bracewell & Giuliani LLP
711 Louisiana Street, Suite 2900
Houston, TX 77002-2781

    Re:   BTG International Inc. v. Amazon.com, et al
          Our File No.: 122234.0001

Dear Chris:

    This responds to your email of February 6 inquiring about BTG's production of documents identified in the Court's January 10 Order. This letter confirms that all documents identified in that Order were produced except for one document - item no. 1565 on BTG's privilege log. While we disagree with the Court's ruling on this document and believe the document contains privileged information, we will produce the document on a non-waiver basis, with your agreement that no privilege is waived as a result of the production. If we cannot obtain your agreement, we will be have to appeal the Court's ruling with respect to that document. Please let us know your position on this matter.

          Very truly yours,

          ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

          Stephanie L. Adamany

SLA/jw

ATLANTA    BOSTON    LOS ANGELES    MINNEAPOLIS    NAPLES    SAINT PAUL    SANTA ANA    WASHINGTON, D.C.

MP3 20167323.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of February, 2006, the attached **REDACTED**

**PUBLIC VERSION OF PLAINTIFFS' RESPONSE BRIEF ON THE COMMON**

**INTEREST PRIVILEGE** was served upon the below-named defendants at the address and in

the manner indicated:


Josy W. Ingersoll, Esquire                                        <u>HAND DELIVERY</u>
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Jeffrey S. Love, Esquire                                         <u>VIA FEDERAL EXPRESS</u>
Klarquist, Sparkman, LLP
One World Trade Center, Suite 1600
121 S.W. Salmon Street
Portland, OR  97204

John M. Seaman, Esquire                                          <u>HAND DELIVERY</u>
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE  19801

John F. Luman, III, Esquire                                      <u>VIA FEDERAL EXPRESS</u>
Bracewell & Giuliani LLP
711 Louisiana Street, Suite 2300
Houston, TX 77002-2781


*/s/ Tiffany Geyer Lydon*

_____
Tiffany Geyer Lydon